# Exhibit 1

# CONSTRUCTION CONTRACT

**THIS CONTRACT**, made as of the 1st day October 2016 between **ALL - BORO REHAB CONSTRUCTION CORP.**, a New York corporation with a principal office at 260 Doughty Boulevard, New York 11096 (the "Contractor") and **Nechemiah Hoch** with an address at 72-72 141 ST., Flushing NY 11367 (collectively, the "Owner").

**PREMISES**: 72-72 141 ST. Flushing, NY 11367 (hereinafter referred to as the "Premises").

1. **TIME OF COMMENCEMENT AND COMPLETION**:

1. **CONSTRUCTION OF PREMISES**: Upon the terms and conditions hereinafter set forth, The Contractor will immediately, subject to and contingent upon the issuance of all necessary permits and approvals from the NYC Department of Buildings of Owner's Plans (as such term is defined below), commence excavation and construction upon the Premises, of a one-family residential structure pursuant to (i) **Sandi Hacohen** *architectural design plans consisting of 6 pages dated September 14, 2016, as formerly approved by the NYC Department of Buildings* (the "Plans"), a copy of which has been initialed by the parties and shall be deemed a part of this Contract, and (ii) the specifications prepared by Contractor, detailing on a line item basis the materials, scope of work, and pricing/allowances of all such work and materials, (hereinafter referred to as the "Specifications"), both annexed hereto as **Schedule "B"** which shall be initialed by the parties hereto and shall also be deemed part of this Contract, (the Plans and Specifications annexed hereto as Schedule "B" collectively hereinafter referred to as, the "Contract Specifications"). The Owner acknowledges that there are express exclusions carved out of the Contract Specifications, (the "Exclusions"), and it is anticipated that Owner will make its own purchases of some or all of such Exclusions. The Exclusions and the approximate estimated cost of Owner's expected purchases of some such Exclusions are more particularly described in **Schedule "D"** which shall be initialed by the parties hereto and shall also be deemed part of this Contract. Planned construction start date to be on or about December 1st 2014.

2. **CONTRACT SUM:** SEVEN HUNDRED FOURTEEN THOUSAND SEVEN HUNDRED EIGHTEEN ($714,718.00) Dollars (the "Contract Price") shall be payable from Owner to the Contractor for the construction of the improvement on the Premises, as set forth in the attached payment schedule, **Schedule "A"** (the "Payment Schedule"). In addition to the foregoing, Owner shall pay additional monies, if applicable, as per each requested and accepted Change Order (as such term is defined herein), if any, in accordance with Paragraph 5 herein, The Owner shall pay for the actual cost of preparation of the survey of the Premises.

3. **PAYMENTS:** Payments shall be made timely in accordance with the attached Payment Schedule. The Payment Schedule and Contract Specifications are intended as a

listing of all the work and materials included in the Contract and to outline the materials, the major items of work and to schedule the payments upon completion of each portion thereof. Provided Contractor has completed its work or a percentage of the work described on one of the line items listed on the Payment Schedule in accordance with the Contract Specifications in a good workmanlike manner and is otherwise in compliance with the terms of this Agreement, the payments due as per this Agreement shall be payable within three (3) business days from the date of request or receipt of a requisition from the Contractor. As an illustration of the prior sentence, if the Contractor properly completed $1/3^{rd}$ of the total work described as "Framing 2nd Fl./Roof" on one of the line items listed on the Payment Schedule, Contractor may immediately request payment which represents $1/3^{rd}$ of the total number contemplated by such line item on the Payment Schedule, it being understood by the parties hereto that the contractor can request payment prior to the total completion of a line item on the Payment Schedule so long as the Contractor has completed in accordance with the terms of this Agreement a percentage of the work contemplated by said line item and is acting in good faith by continuing the discharge of its obligations hereunder. It is understood that said payments shall be made payable directly to the Contractor or other entity as authorized by the Contractor in writing on the corresponding payment requisition.

**4.     SUBSTITUTIONS**: The Contractor may substitute any item of material, fixture, equipment or appliance specified herein or shown on the Plans or Specifications if the item originally specified shall be completely unavailable through regular commercial sources, provided that any such substitution shall be substantially equivalent or superior, (including, without limitation, quality, style and performance), to the item for which it has been substituted. The Contractor shall use reasonable efforts to notify Owner prior to the installation of any substituted items if such individual item exceeds $1,000.00 in cost. The Contractor and Owner shall in good faith determine equivalency or superiority in substitutions. Notwithstanding anything to the contrary contained in this paragraph 4 herein, in the event of (i) a substitution of an item's color or style or tensile strength and/or (ii) any item is over $3,500.00 in value, Contractor shall first obtain Owner's written consent of such substitution, which consent shall not unreasonably be withheld.

**5.     CHANGE ORDERS**:

A.     The Owner may, from time to time, request changes in the Plans or Specifications. Any requested changes to the Plans may first require architectural services to be obtained by the Owner at Owner's own cost. Requests for changes to Plans and/or Specifications must be made to the Contractor in writing. Any such changes of plans, construction, location, materials or installations shall require the execution of a change order by the Contractor and the Owner ("Change Order"). A Change Order shall define the work to be performed, the materials to be utilized and state the price therefore, state whether there will be an increase or decrease in the Contract Price as a result of the work to be performed and state whether more time will be required to complete construction as a result of such Change Order. Where there is an increase in the Contract Price, such excess cost shall constitute a contract extra ("Contract Extra") for which payment shall be made to the Contractor upon Owner's authorization and Contractor's acceptance of such

Change Order. Where there is a decrease in the Contract Price, such reduced cost shall be credited to Owner off the Contract Price. The Contractor in its sole discretion may object to a Change Order for any reason including without limitation where the requested Change Order materially affects the exterior, the structural integrity of the single family home (as contemplated herein by the Plans; the "Home" or the "Structure"), or causes significant delay to the construction of the Home, or will render materials already purchased and/or labor already performed by Contractor wasted and of no further value to the completion of the Home. Any items which the Owner shall procure other than through the Contractor shall be the Owner's sole responsibility and the Contractor shall not be obligated to install the same unless provided for in this Agreement or, if not in this Agreement, the parties shall specifically agree otherwise in a writing signed by both Owner and Contractor, (without limitation see Specifications for examples of Owner acquired items that Contractor is required to install as part of the Contract Price). Notwithstanding anything to the contrary contained in this paragraph 5 herein, Owner shall not be obligated to pay any Contract Extra unless Owner executes the Change Order setting forth the amount which may be confirmed by e-mail. Any Change Orders approved by both parties hereto as more particularly described in this paragraph 5 herein, shall be deemed incorporated into and subject to all the terms of this Agreement.

      B.    From time to time the situation may arise where beyond both parties control, a Change Order must be made on the spot without the ability to actually price the requested Change Order before its implementation and or to otherwise follow the aforementioned written procedures for a Change Order (hereinafter referred to as an "Instant Change Order"). In the event of an Instant Change Order, the Contractor shall use reasonable efforts to provide the Owner its best estimate of the cost(s) of such Instant Change Order, provided however, that as soon as practically possible after implementation of such Instant Change Order, the Contractor shall confirm the actual price of the Instant Change Order to the Owner at which time the Owner shall (i) confirm the price thereon by signing the fully completed written Change Order, and (ii) comply with all the other applicable procedures contained in this paragraph 5 herein. Further to the foregoing sentence, in the event there is any dispute between Owner and the Contractor as to the actual price of the Instant Change Order after the same has been implemented, the parties should immediately pursue and be subject to the dispute resolution procedures described in paragraph 21 hereinbelow.

**6.**    **LOCATION AND GRADING**: The location of the Home and the grading about and around the Home are governed by the Contract Specifications, and as such the Contractor is not free to change these. The Structure shall be located on the lot as shown on the Plans annexed hereto as **Schedule "B"**. However, the Contractor may, in its discretion, but upon notice to Owner, locate and orient the structure on the Premises and determine specific grades and elevations to meet municipal requirements and conform to topographical and other site conditions, provided same does not materially change the design or size of the house being constructed on the Premises.

7. **OWNER'S SELECTIONS**: As of the date hereof, Owner has ordered the Contract Extras set forth in **Schedule "C"** which schedule may be amended from time to time as the project proceeds by having both parties hereto initial any such modifications. **Schedule "C"** shall set forth whether the specified Contract Extras are included in the Contract Price or if there is any additional charge. Such additional charge shall be paid to Contractor upon completion of the work or a percentage of the work, (as more particularly described in paragraph 3 hereinabove with respect to percentage of work completed), contemplated by said Contract Extra.

Contractor will from time to time notify Owner that Owner must make selections of color, size, and or style as to specific items included in this Contract from the Contractor's sample or selection charts, ("Selection Notice"). Subsequent to Contractor's service of such Selection Notice, Owner shall be required to make such selections as listed on the Selection Notice as soon as practical, but in no event, more than Ten (10) days from receipt of the Selection Notice. If the Owner shall not make such selections as required or within the time set forth in Paragraph 7 herein, Owner authorizes Contractor to make the selection on Owner's behalf. All selections shall be subject to actual availability but in no event shall any substitute be of lesser quality as more particularly described in paragraph 5 hereinabove.

If the Owner shall make any item selection pursuant to the Selection Notice for which the cost exceeds the applicable pricing/allowance set forth in the Specifications, (**Schedule "B"**), the excess cost shall be a Contract Extra subject to the terms hereof. Credit shall be due to Owner off the Contract Price for the portion of a pricing allowance not used, if any, subject to the terms of paragraph 5 herein.

Selection of materials, fixtures and equipment as more particularly described in the Contract Specifications shall be from Contractor's designated suppliers, and or samples and or a selection chart, (which shall be provided to Owner at or prior to the service of the Selection Notice), and services and work shall be supplied by Contractor or subcontractors selected or approved by Contractor, provided same are duly licensed and fully insured in accordance with the terms herein. Notwithstanding the foregoing sentence in this paragraph 7 herein, Owner may make its own selections outside of Contractor's designated suppliers, and or samples and or selection chart, provided, however, that should the cost exceed the pricing/allowance set forth in the Specifications, the excess cost shall be borne by the Owner in accordance with the terms hereinabove.

4

9. **CERTIFICATE OF OCCUPANCY UPON COMPLETION**: Upon completion of the House, Contractor shall cooperate with Owner and or his agents in Owner's application with the NYC Building Department to obtain a final certificate of occupancy for the Premises including without limitation delivering to Owner "as built" construction drawings, if any that may be required by NYC and or NYC Building's Department in order to obtain the Certificate of Occupancy and any other drawings or documents that may be in the possession of Contractor in connection with the excavation and construction of the House on the Premises;. Contractor agrees that it will use reasonable efforts to finish the Structure in a good workmanlike and timely manner in accordance with usual and customary industry standards. Notwithstanding the foregoing, the Contractor shall not be responsible for any delays beyond its control, including without limitation those caused by weather conditions, other acts of God, war, insurrection, strike or other labor disruption or dispute, unavailability of suitable materials or labor through regular commercial sources, delays due to the NYC DOB, acts of the Owner, the Owner's failure or neglect to duly perform hereunder, or any other cause not reasonably within Contractor's control.

All portions of the Premises, if any, which are disturbed in the course of construction, shall be properly graded by the Contractor. If construction is completed at a time when weather conditions prevent proper grading, such work shall be done by the Contractor as soon as practicable, weather conditions permitting. Upon completion of the House, Contractor shall cause all debris to be removed from the Premises and the Home to be broom swept.

10. **PROGRESS PAYMENTS AFTER COMPLETION OF LINE ITEM ON THE PAYMENT SCHEDULE**:

Upon completion of any line item on the Payment Schedule, as annexed hereto as **Schedule "A"** and made a part hereof, (hereinafter referred to as a "Completed Line Item"). Owner shall make progress payments subject to Contractor's compliance with the following:

    A.    Contractor shall give notice to the Owner not less than Five (5) days prior to the anticipated date for the Completed Line Item. Owner shall have the right to inspect the Premises and all the improvements thereon regarding the Completed Line Item together with any of their agents prior to making the next additional progress payment as listed on **Schedule "A"** annexed hereto (said next additional progress payment as described in this sentence herein and any progress payments to be made thereafter shall hereinafter collectively be referred to as "Line Item Completion Progress Payments").

5

  B. As a condition precedent to Owners obligation to make a Line Item Completion Progress Payment, the Contractor shall:

(i) Disclose to Owner the required governmental permit(s) and approval(s) for such Completed Line Item, if any, and deliver copies of same if requested by Owner;

(ii) Assign and deliver to the Owner any and all warranties, instruction manuals, and guarantees as may have been provided by any manufacturer or supplier of any item of material or any piece of equipment, fixture or appliance included in the Contract Specifications which were installed in the Premises pursuant to such, Completed Line Item other than those specifically supplied by the Owner;

(iii) Deliver to Owner evidence that there are no liens, violations, or encumbrances against the Premises other then the Permitted Exceptions as listed on **Schedule "E"** annexed hereto, including, without limitation, lien waivers, lien releases or any other reasonable proof required by the Owner, Owner's counsel, Owner's lender or title company; and

  C. Upon Contractor's compliance with the terms outlined in this paragraph 10(A) and (B) herein, Owner shall:

Immediately make payment in full to Contractor of any and all amounts outstanding with respect to the Completed Line Item, (as set forth in **Schedule "A"** herein), including any Contract Extras which may have been applicable to the Completed Line Item. provided, however that Owner shall be permitted to hold back an amount for (i) any items on the Payment Schedule not completed, and (ii) open punch list items as more particularly described in paragraph 11 hereinbelow.

## 11. INCOMPLETE ITEMS:

(A) Upon finishing a Completed Line Item, Owner together with Owner's representative, (if any), may inspect the Premises and all improvements thereon with the Contractor regarding such Completed Line Item to determine if there are any incomplete items of work or items which have been improperly done or not completed as per the Contract Specifications in connection with the work required to have been completed in order to trigger a Line Item Completion Progress Payment (hereinafter the "<u>Defective Work</u>"). In the event that such inspection reveals Defective Work which materially

6

deviates from the Contract Specifications ("Material Defective Work"), the corresponding Line Item Completion Progress Payment shall be delayed upon notice to the Contractor until such time that all such Material Defective Work is cured and otherwise repaired to the satisfaction of the Owner and Owner's representative, it being understood that upon notice of such Material Defective Work, (i) Contractor shall work diligently to properly correct and cure any and all such Material Defective Work, (ii) in no event shall Contractor have more than One Hundred and Eighty (180) days to correct and cure such Material Defective Work.

(B)  With respect to the forgoing paragraph (i.e. paragraph 11(A) herein), if an inspection reveals Defective Work that is not Material Defective Work, a list of such incomplete items of work or items which have been improperly done shall be made and signed by the parties (hereinafter, the "Line Item Punch List"). Each item on the Line Item Punch List shall be assigned a cost of remediation ("Item Cost"). Remedial work as specified on the Line Item Punch List shall be commenced immediately and completed as soon as reasonably practicable, subject to weather conditions and the availability of proper materials or labor required for such completion. but in no event shall take longer than One Hundred and Eighty (180) days as more particularly described hereinbelow.

    a.    Unless otherwise provided for in this Agreement, the required Line Item Completion Progress Payment, with respect to the uncompleted and open Line Item Punch List, shall still be made by Owner as set forth herein and shall not be delayed by reason of any open Line Item Punch List, provided, however, that so long as Owner adheres to the following procedures, Owner shall be entitled to withhold payment of the Line Item Completion Progress Payment equal to:

        (i)    the actual Item Cost(s), but not to exceed Five Thousand ($5,000.00) Dollars in the aggregate, it being understood by the parties hereto that should the Item Costs exceed Five Thousand ($5,000.00) Dollars in the aggregate, the unsatisfactory work will no longer be classified as Defective Work subject to Line Item Punch List status, but rather Material Defective Work, in which event Owner shall be entitled to hold back making the entire Line Item Completion Progress Payment with respect to the corresponding Completed Line Item,; and

        (ii)    Said Item Costs shall be released from Owner to Contractor upon proper completion of each item on a piecemeal basis. Without in any way limiting the effect of paragraph 21 hereinbelow to the entirety of this Agreement, if the parties

7

        cannot agree whether the open Line Item Punch List has been properly completed the parties agree to submit such dispute for final resolution to binding arbitration in accordance with the provisions of paragraph 21 hereinbelow.

    (iii)    The Contractor shall have no obligation whatsoever to complete any such open Line Item Punch List in the event that the Owner has not rendered payment in full of all Line Item Completion Progress Payments already due and owing, including without limitation, the Line Item Completion Progress Payment corresponding to the specific open Line Item Punch List, less the Items Cost holdback as described in this paragraph 11(B)(a)(i) hereunder.

b.    Notwithstanding anything to the contrary contained in this Paragraph 11(B) herein, in no event shall Owner be permitted to create or add to a Line Item Punch List, or withhold money from the Contract Price with respect to any such damage, defect or loss created or added to the Line Item Punch List, after such time as Owner has taken occupancy of the Home constructed by the Contractor, provided however, that in the following circumstance only, Owner may add create or add to a Line Item Punch List: Within 30 days of taking occupancy of the House/Improvement, Owner may add create or add to a Line Item Punch List so long as such addition to the Line Item Punch List was not caused by Owner for whatever reason whatsoever, including without limitation, Owner's use and occupancy of the House and or through normal wear and tear therein.

c.    If Contractor has not completed the Line Item Punch List Items within One Hundred and Eighty (180) days of the creation of the Line Item Punch List, Owner shall deliver written notice thereof to Contractor. If Contractor has not properly completed said outstanding Line Item Punch List Items within One Hundred and Eighty (180) days of said notice, Owner shall have the right to hire their own contractor to complete the open Punch List Items, it being understood that Owner's replacement contractor shall be immediately paid from the monies held back by the Owner in accordance with paragraph 11 herein and to the extent that the funds held back by Owner were insufficient to pay such contractor, Contractor shall be liable to pay such deficiency to Owner as damages.

8

**12. WARRANTY:** <u>THE HOUSING MERCHANT IMPLIED WARRANTY, AS SET FORTH IN SECTION 777-a OF THE NEW YORK GENERAL BUSINESS LAW, WILL APPLY TO THIS CONTRACT.</u> Notwithstanding the foregoing sentence, Contractor will provide a one (1) year warranty from the date the new certificate of occupancy is issued for the Premises on all labor, parts and materials, to the extent that such labor, parts and materials were included in the Specifications (as further described on Schedule "B" annexed hereto and made a part hereof), and will otherwise pass on to Owner any warranties made to Contractor. This paragraph 12 herein shall survive the last Substantial Completion Progress Payment, issuance of a permanent certificate of occupancy and completion of the Line Item Punch List.

**13. DEFAULT/REMEDIES:** In the event that the Owner shall be in material default under this Contract whether it is in respect (i) of their payment obligations to the Contractor, or (ii) to any of the other obligations to the Contractor as all set forth herein, the Contractor may, in addition to its other remedies in equity and/or at law, after thirty (30) days written notice to the Owner, during which time the Owner may cure any such default, stop all work and remove all tools, equipment, material and personnel from the Premises. Contractor shall not be obligated to recommence work in the event of such stoppage until and unless:

- A. Owner has cured any material default in full; and
- B. Owner shall have paid the actual additional cost incurred by Contractor in removing all labor and materials from the Premises and restoring the same prior to the re-commencement of work; and
- C. Notwithstanding anything to the contrary contained in this Paragraph 13(A)–(B), Contractor shall be permitted to pursue all its other remedies in equity and at law.

In the event that the Contractor shall be in material default under any of its obligations to Owner under this Contract, the Owner may, in addition to its other remedies in equity and/or at law, after thirty (30) days written notice to the Contractor, during which time the Contractor may cure any such default, stop making any further payments whatsoever to Contractor. Owner shall not be obligated to recommence making payments to Contractor until and unless:

- A. Contractor has cured any material default; and
- B. Contractor shall have paid the actual additional cost(s) incurred by Owner due to Contractor's material breach; and
- C. Notwithstanding anything to the contrary contained in this Paragraph 12(A)–(B), Owner shall be permitted to pursue all its other remedies in equity and at law, including, without limitation the right to terminate this Contract.

9

Notwithstanding anything to the contrary in this Paragraph 13 of this Agreement herein, Owner shall reimburse Contractor for all of Contractor's expenses in connection with enforcing the Contract Documents, including, without limitation, all court costs, disbursements, and reasonable attorneys' fees incurred.

**14.   MODIFICATIONS**: The Owner hereby acknowledges that the Specifications and Plans annexed hereto as **Schedule "B"**, and made a part hereof are subject to minor modifications which may be necessary as the result of specific site conditions or to comply with requirements imposed from time to time by the Village of Cedarhurst, the County of Nassau, or other governmental authorities having jurisdiction over the Premises or construction, provided same (i) does not materially change the design or size of the house being constructed on the Premises and (ii) is signed off by both the Owner and Owner's architect, which signature shall not be unreasonably withheld. Contractor shall notify the Owner in writing in the event that any such minor modifications become necessary and Owner shall bear the expense of any such minor modifications.

**15.   CONTRACT DOCUMENTS**: In the event of any inconsistency or conflict among any of the provisions of the documents constituting this Contract, provisions of the documents shall control in the following order:

   A..   Specifications;
   B.    Plans; and
   C.    This Agreement.

Notwithstanding the foregoing, for purposes of layout, the Plans shall govern.

**16.   NO RECORDING**:   This Contract shall not be recorded. Any attempt by Owner to do so shall be deemed to be a material breach hereof.

**17.   OCCUPANCY AND USE**: Upon issuance of either a TCO or C/O Owner may move into the new area of Home while Contractor is still completing the open Line Item Punch List as more particularly described in paragraph 11 hereinabove. Concerning open Line Item Punch List items after Owner makes a Line Item Completion Progress Payment, Owner shall cooperate in good faith with Contractor in allowing Contractor to promptly finish outstanding Line Item Punch List items, including, without limitation, giving Contractor reasonable access to the Home during regular business hours. In furtherance of the prior sentence, should Owner not reasonably cooperate with Contractor, such act shall be deemed a material breach hereunder. Prior to completion of the Line Item Punch List, and after the Owner makes a Line Item Completion Progress Payment, Owner assumes the risk of damage to any goods or items that they may have stored on the Premises (outside the improvement(s) itself) and waives any and all claims against Contractor for any damage to such goods and/or items provided, however, that to the extent that such damage to goods and/or items was caused by Contractor's or its employee's or agents' negligence than Contractor shall be liable for such damage claim.

This paragraph 17 herein shall survive Owner's last Line Item Completion Progress Payment, issuance of a permanent certificate of occupancy and completion of the Line Item Punch List.

**18. CERTIFICATE OF OCCUPANCY:** INTENTIONALLY LEFT BLANK.

**19. RISK OF LOSS:** Risk of loss by fire or other casualty with respect to the Premises is upon the Owner unless such casualty was caused by Contractor or any of Contractors agents in which event risk of loss is solely upon the Contractor. Risk of loss by fire or other casualty with respect to the improvements, if any, shall be solely upon the Contractor up and until Owner takes final possession of the Premises. This paragraph 19 herein shall survive the last Line Item Completion Progress Payment, issuance of a permanent certificate of occupancy and completion of the Line Item Punch List.

**20. POSSESSION:** At or prior to the Owner's very last Line Item Completion Progress Payment, (hereinafter referred to as, the "Final Progress Payment"), the Contractor shall demonstrate to Owner that the Premises is free of all leases, tenancies, occupancies, claims of occupancy by any third party and any legal encumbrances whatsoever other than those Permitted Exceptions enumerated on **Schedule "E"** annexed hereto. Upon completion of the Home in accordance with the terms of this Agreement, Contractor shall deliver the Premise in broom clean condition solely limited to its own materials, debris and equipment and not that of others, and provided that Owner has secured a permanent C/O at that time, Owner shall take possession of the Premises and improvements thereon in accordance with the terms herein.

**21. DISPUTE RESOLUTION AND ARBITRATION:**

21.1 Unless otherwise specifically provided for in this Agreement, each dispute, controversy, claim or disagreement arising out of or relating to this Agreement (a "Dispute") shall be resolved in the following manner:

(a) First, after receipt of a written notice of a Dispute, the parties shall negotiate in good faith for a period of ten (10) days in an effort to resolve the Dispute; and

(b) Second, if the parties are still unable to resolve the Dispute within such ten (10) days period, the parties shall resort to the arbitration procedures set forth in Section 21.2 hereinbelow; and

(c) Third, any party to the Dispute shall be entitled to join any Dispute proceeding arising out of this Agreement with any other Dispute proceeding arising out of this Agreement.

21.2 Subsequent to the procedures of Section 21.1 hereinabove, and except as otherwise provided in this Section 21.2, any Dispute arising out of or relating to this Agreement shall be settled by arbitration as follows:

(a) Any Dispute shall be resolved by binding arbitration pursuant to the laws of the State of New York and, to the extent they do not conflict, the Commercial Arbitration Rules of the American Arbitration Association as in effect on the date so submitted (the "Act"), provided that the arbitration shall be conducted by a single arbitrator agreed to by the parties. If the parties cannot agree to a single arbitrator, either party may request the American Arbitration Association to select a single arbitrator in accordance with the procedures under the Act. The arbitration shall take place in Nassau County, New York, (or if no offices exist in Nassau County than in New York City, New York). Within ten (10) business days following the appointment of the arbitrator, each party shall state in writing their position concerning the Dispute supported by the reasons therefore with counterpart copies delivered to arbitrator. Neither position may include provision for punitive damages suffered or incurred by a party. If either party fails to timely submit its position, the position submitted by the other party shall be deemed correct, and the arbitration shall be deemed concluded in favor of the party that submitted its position papers. The arbitrator shall arrange for a simultaneous exchange of positions. The arbitrator shall select which of the two proposed positions most closely approximates his determination of the correct position and shall have no right to propose a middle ground or any modification of either of the two proposed positions. The position he chooses as most closely approximating his determination shall constitute the decision of the arbitrator and be final and binding upon the parties. In the event of a failure, refusal, or inability of the arbitrator to act, his successor shall be appointed by him, or, if he fails to do so within five (5) business days, as provided by the Act. The arbitrator shall attempt to decide the issue within ten (10) business days after his receipt of the proposed positions. Both parties shall share equally the fee and expenses of the arbitrator and the arbitration. Each party shall be responsible to pay it respective attorneys' fees and expense of counsel. The arbitrator shall have the right to consult with experts and competent authorities with factual information or knowledge concerning the Dispute and the fees of such authorities shall be shared equally by the parties.

(b) The arbitrator conducting any arbitration shall be bound by the provisions of this Agreement and shall not have the power to add to, subtract from, or otherwise modify such provisions. Owner and Contractor agree to sign all documents and to do all other things necessary to submit any such matter to

12

arbitration. Owner and Contractor further agree to, and hereby do, waive any and all rights they or either of them may at any time have to revoke their agreement hereunder to submit to arbitration and to abide by the decision rendered thereunder. Each of the arbitrators shall have at least ten (10) years' experience in the subject matter of the Dispute.

(c) Notwithstanding anything contained in this Section 21.2 to the contrary, both Owner and Contractor shall be entitled to (i) commence legal proceedings seeking such mandatory, declaratory or injunctive relief as may be necessary to define or protect their rights and enforce the obligations contained herein pending the settlement of a Dispute in accordance with the arbitration procedures set forth in this Section 21.2, (ii) commence legal proceedings involving enforcement of an arbitration decision or award arising out of this Agreement, and (iii) join any arbitration proceeding arising out of this Agreement with any other arbitration proceeding arising out of this Agreement.

**22. NOTICES**: Any notice required or permitted to be given hereunder shall be given in writing and shall be sent by certified mail, return receipt requested, postage pre-paid, or overnight delivery service to both the party to whom the same is directed at such party's address as set forth in this contract, and if to the Contractor, to Law Offices of Steve Naiman., 485 Madison Ave, Suite 1300, New York, New York 10022, Attention: Steve Naiman, Esq., and if to the Owner, to Nechemiah Hoch 72-72 141 st Flushing NY 11367. Any such notice shall be deemed to have been given after two (2) business days when so mailed, and after one (1) business day when so delivered into possession of the overnight delivery service, as the case may be.

**23. ASSIGNMENT OF THIS CONTRACT**: Neither party may assign this Contract without the prior written consent of the other. A transfer, sale or assignment of the majority stock or membership interest or partnership interest in a (a) corporate or limited liability company or partnership or (b) corporate or limited liability company or partnership general partner or managing member shall constitute an assignment of this Contract, which assignment or attempted assignment shall be void if made without the written consent of other party. No assignment of this Contract, whether or not permitted, shall be deemed to relieve or release the other party from any of its obligations (whether to be performed prior to or after the Owner makes a Line Item Completion Progress Payment) set forth herein.

**24. GENERAL PROVISIONS:**

(a) This Contract and the Schedules and Exhibits annexed hereto constitute the entire Contract between the parties hereto and any all prior

understanding, representations, agreements and contracts, written or oral, are merged herein, and no statement, representation, claim or warranty not set forth herein or the Schedules and Exhibits not annexed hereto shall be binding upon the party against whom the same may be asserted. The Contractor is not liable or bound in any manner by any statements, representations or information pertaining to the premises furnished by any real estate broker, agent, employee, servant or other person unless the same is specifically set forth in this Contract

(b)    Except as specifically provided otherwise herein, after Owner makes payment of the Final Progress Payment and the Contractor completes the open Line Item Punch List(s), Contractor shall be deemed to be in full compliance with all the terms and provisions hereof except those stated to survive hereunder or in a writing executed by the party to be charged at or prior to the Line Item Completion Progress Payment.

(c)    If any part or provision of this Contract shall be determined to be void, illegal or legally unenforceable by any Court of competent jurisdiction, then the same shall not affect the validity of any other part or provision of this contract, which, subject to such determination, shall remain in full force and effect as between the parties.

(d)    The provisions of this Contract may not be waived, changed, modified or discharged orally, but only by an agreement in writing signed by the party against which any waiver, change, modification or discharge is sought.

(e)    The captions or article titles contained in this Contract and the Index, if any, are for convenience and reference only and shall not be deemed a part of the text of this Contract.

(f)    The terms "hereof," "herein," and "hereunder," and words of similar import, shall be construed to refer to this Contract as a whole, and not to any particular article or provision, unless expressly so stated.

(g)    The Schedules and Exhibits annexed hereto are hereby incorporated in and made part of this Contract.

(h)    All words or terms used in this Contract, regardless of the number or gender in which they are used, shall be deemed to include any other number and any other gender as the context may require.

(i)    This Contract shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and permitted assigns, if any, but nothing contained herein shall be deemed a waiver of the provisions of Paragraph 23 hereof. None of the

provisions of this Contract are intended to be, nor shall they be construed to be, for the benefit of any third party.

(j) If a party is required to perform an act or give a notice on a date that is a Saturday, Sunday or national holiday, the date such performance or notice is due shall be deemed to be the next business day.

(k) This Contract is to be governed and construed in accordance with the laws of the State of New York, and any action shall be specifically venued and limited to the New York State Supreme Court, Queens County or the arbitration procedures as more particularly set forth in Paragraph 21 hereinabove.

(l) The terms "affiliates" and "subsidiaries" shall be given the same meaning as used in the broadest sense in any provision of the rules and regulations governing federal taxation and securities.

(m) Neither Contractor nor Owner may record this Contract or a memorandum of this Contract.

(n) The waiver by either party of the performance of any covenant, condition or promise shall not invalidate this agreement and shall not be considered a waiver of any other covenant, condition or promise. The waiver of a covenant, condition or promise shall not be a waiver of time for performing any other act or an identical act provided by law, and the provisions in this agreement for any remedy shall not exclude any other remedy unless such remedy is expressly excluded.

(o) The persons executing this Agreement expressly warrant to each other that they have full power and authority to do so.

(p) Multiple copies of this Agreement and certain related documents may be executed and delivered concurrently by the signatories to each such document. Each such fully executed copy shall be considered to be an original of such document.

**25. FURTHERCOOPERATION:** Owner shall reasonably cooperate with Contractor in completing the excavation and construction of the improvement to the Premises by executing and otherwise completing when necessary all filings with municipal entities for the general purpose of improving the Premises, or other such purposes consistent therewith. Contractor shall provide Owner with a copy of all filings made on Owner's behalf.

15

**26. WORKMANSHIP, PERMITS:** All materials are guaranteed to be as specified and as warranted by the manufacturer. All work will be completed in a good workmanlike manner according to standard industry practices. The materials and work will comply with applicable building codes and ordinances.

**27. SUBCONTRACTORS:** The Contractor may only engage subcontractors or other laborers who are duly licensed and properly insured to perform work, provided that the Contractor will continue to be completely (i) liable for, and (ii) responsible for the performance of all work under this Agreement including, without limitation, any work done by subcontractors, laborers and or such subcontractors'/laborers' agents. The Contractor shall not be required to contract with anyone to whom the Contractor has reasonable objection.

**28. INSURANCE:**
The Contractor will maintain, and, require subcontractors and any other laborers to maintain, the following insurance coverage:

    A.    Workers Compensation Insurance according to applicable New York State laws. If owner requests so in writing, Contractor shall prior to doing any work whatsoever hereunder provide Owner with Contractor's current certificate evidencing Contractor's workers compensation insurance.

    B    Contractor Liability Insurance in a sum of not less than $1,000,000.00 for individual claim /$2,000,000.00 for aggregate claim. Contractor is required to provide Owner with (i) Contractor's current certificate of liability insurance listing Owner as additional named insured, (ii) Contractor's, entire current Contractor Liability Insurance policy and conditions.

Prior to Contractor's commencement of work on the Premises, Owner shall purchase and maintain at all times general liability, builder's risk and casualty insurance coverage during the term of this Agreement for an amount of no less than $1,000,000.00 for individual claim /$2,000,000.00 for aggregate claim. A copy of said policy shall be delivered to Contractor before any work can be commenced at the Premises.

**29. STATUTORY REQUIREMENTS:** It is hereby agreed that this contract is subject to the statutes and regulations of the State of New York, The City of New York, Nassau County, and any other municipality or governmental agency having jurisdiction over the Premises and that the Contractor will strictly comply with all applicable terms thereof. Without in anyway limiting the foregoing, Contractor, at its own expense, shall promptly cure and completely remove any and all violations issued by any governmental authority against the Owner and or the Premises during the period of the excavation, and construction on the Premises provided same (i) was not caused by Owner, or (ii) was caused by Contractor's non-material breach of a governmental law, code or regulation,("Non-Material Code Violation"), it being understood by the parties hereto

that certain violations issued by such governmental agencies may be not be through the fault, malfeasance or misfeasance of the Contractor, but, rather, well-recognized ongoing efforts of NYC and NYS governmental agencies to issue such Non-Material Code Violations as a means to generate revenue for NYC and or NYS. With respect to the Non-Material Code Violations and the fines/penalties levied in connection therewith, these fines/penalties constitute the Owner's cost of doing business, it being agreed by the parties hereto that should a Non-Material Code Violation(s) be issued to the Owner/Contractor during the course of the project, Contractor shall make every good faith and reasonable effort to cure same without cost to Owner, provided however, in the event there is ultimately a fine or penalty levied with respect to such violation(s), Contractor in it's reasonable discretion may be permitted to pass on said cost(s) and or fine(s) to the Owner which Owner shall promptly pay without any credit to Owner off the Contract Price.

30. **OWNER'S POST C/O WORK TO PREMISES:** Owner represents that it may be doing additional work to the Premises after obtaining a C/O and taking possession of the Home, (hereinafter, the "Post C/O Work") including without limitation, building numerous partitions and an additional bathroom in the basement of the Structure, it being understood by the parties hereto that Owner shall (i) first secure the proper permits before commencing such work, and (ii) that Contractor shall have no involvement, responsibility or liability whatsoever with respect to the Post C/O Work. Notwithstanding anything to the contrary contained in this Agreement, Owner shall be fully liable and responsible for all such Post C/O Work, and to the extent that such Post C/O Work interferes with, damages, or otherwise adversely impacts Contractors prior completed work to the Premises, and so long as Contractor has had no involvement in such Post C/O Work, Contractor shall have no liability or obligation to repair same with respect thereto (and in no case shall Owner ever have any right to file an insurance claim on Contractor's Liability Insurance Policy).

31. **INDEMNIFICATION:**

**A.** The Contractor agrees to and shall indemnify, hold harmless and defend the Owner for any and all claims or liability due to any reason or cause whatsoever, whether accidentally, intentionally, negligently, and/or recklessly caused by the Contractor and/or its subcontractors and/or laborers, imposed by law upon the Owner for damages because of bodily injuries, including death at any time resulting therefrom, for any reason or cause whether accidentally, intentionally, negligently, and/or recklessly sustained by any person or persons or on account of damage to property arising out of or in consequence of the performance of the Contract Documents. This provision shall not be construed to require Contractor to indemnify Owner for bodily injury or property damage caused by the sole negligence of Owner.

**B.** The Owner agrees to and shall indemnify, hold harmless and defend the

17

Contractor for any and all claims or liability due to any reason or cause whatsoever, whether accidentally, intentionally, negligently, and/or recklessly caused by the Owner for damages because of bodily injuries, including death at any time resulting therefrom, for any reason or cause whether accidentally, intentionally, negligently, and/or recklessly sustained by any person or persons or on account of damage to property arising out of or in consequence of the performance of the Contract Documents. This provision shall not be construed to require Owner to indemnify Contractor for bodily injury or property damage caused by the sole negligence of Contractor.

**32.   SALES TAX:** The Owner shall be responsible for payment of sales tax, if applicable.

**33.   DRAFTING:** Each of the Parties hereto has had an opportunity to, and has, in fact, consulted with its own respective counsel in regard to the substance and drafting of this Agreement. Accordingly, no canon of construction concerning the interpretation of this Agreement shall be utilized, it being the intention of the Parties that this Agreement be considered to have been drafted mutually by all concerned Parties.

**IN WITNESS WHEREOF**, the parties have executed and delivered this agreement as of the date set forth above.

**CONTRACTOR:**

**ALL-BORO REHAB CONSTRUCTION CORP.**

By: _____
    Ira Rabinowitz, President

**OWNER(S) / OWNER(s):**

By: _____
    Nechemiah Hoch

18