UNITED STATES DISTICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x

JUAN CARLOS INTERIANO, Individually, and JUAN
CARLOS INTERIANO, as assignee of ALL-BORO
REHAB CONSTRUCTION CORP., ALL BORO
GROUP, LLC, and ALL-BORO CONSTRUCTION
GROUP, INC.,

                       Plaintiffs,

        -against-

ARCH SPECIALTY INSURANCE COMPANY,

                    Defendant.

---------------------------------------------------------------- x

Case No.: 23-cv-00238-PKC-AYS

---

## DEFENDANT ARCH SPECIALTY INSURANCE COMPANY'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

---

ROBINSON & COLE LLP
666 Third Avenue, 20th Floor
New York, New York 10017
Telephone: (212) 451-2900
Facsimile: (212) 451-2999

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 1

    A.   The Accident ....................................................................................... 1

    B.   The Policy ........................................................................................... 2

    C.   Tender Correspondence and Litigation............................................... 3

ARGUMENT .................................................................................................................. 6

I.   THE ARCH POLICY DOES NOT COVER THE ALL BORO ENTITIES FOR LIABILITY STEMMING FROM INTERIANO'S INJURY................................... 6

    A.   ABR Violated the Terms of the Arch Policy. ..................................... 7

    B.   ABR's Claims Fall Squarely Within a Policy Exclusion..................... 9

II.  ARCH APPROPRIATELY ISSUED A TIMELY DENIAL TO BOTH ABR AND ABC.. 10

III. PLAINTIFFS' PROCEDURAL MANEUVERING DOES NOT VITIATE ARCH'S COVERAGE DENIAL TO ABR. ....................................................................... 13

    A.   Plaintiffs' Second "Tender" to Arch Served No Legitimate Purpose Because They Knew Arch Already Denied Coverage, and Suggests Plaintiffs' Intent to Manipulate Section 3420. ..................................... 15

    B.   Plaintiffs' Consolidation of the Lawsuits Shortly After Their Second "Tender" to Arch Further Suggests Manipulation of Section 3420, and Indicates That They Understood the Import of Arch's Coverage Denial............ 17

CONCLUSION.............................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*47 Mamaroneck Ave. Corp. v. Hartford Fire Ins. Co.*,
  50 A.D.3d 952 (2d Dep't 2008) ............................................................................10

*Adams v. Perry's Place*,
  168 A.D.2d 932 (4th Dep't 1990) .........................................................................15

*Atl. Cas. Ins. Co. v. Coffey*,
  548 F. App'x 661 (2d Cir. 2013) ..........................................................................15

*Blue Ridge Ins. Co. v. Jiminez*,
  7 A.D.3d 652 (2d Dep't 2004) ..............................................................................17

*Century Sur. Co. v. EM Windsor Constr. Inc.*,
  No. 16-cv-4196 (PAE), 2017 WL 5952706 (S.D.N.Y. Nov. 29, 2017) ................20

*Charney v. Commonwealth Land Title Ins. Co.*,
  215 A.D.2d 152 (1st Dep't 1995) .........................................................................13

*Country-Wide Ins. Co. v. Preferred Trucking Servs. Corp.*,
  22 N.Y.3d 571 (2014) .....................................................................................18, 19

*DeSantis Bros. v. Allstate Ins. Co.*,
  244 A.D.2d 183 (1st Dep't 1997) .........................................................................18

*Excelsior Ins. Co. v. Antretter Contracting Corp.*,
  262 A.D.2d 124 (1st Dep't 1999) .........................................................................18

*Markevics v. Liberty Mutual Ins. Co.*,
  97 N.Y.2d 646 (2001) ...........................................................................................10

*Maxum Indem. Co. v. A One Testing Labs., Inc.*,
  150 F. Supp. 3d 278 (S.D.N.Y. 2015) ..................................................................17

*Maxum Indem. Co. v. Oxford Interior Corp.*,
  443 F.Supp.3d 348 (E.D.N.Y. 2020) ....................................................................20

*Mu Yan Lin v. Burlington Ins. Co.*,
  No. 11 CIV. 33(PGG), 2012 WL 967633 (S.D.N.Y. Mar. 21, 2012)....................18

*Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*,
  86 N.Y.2d 685 (1995) ...........................................................................................12

*QBE Ins. Corp. v. Jinx-Proof Inc.*,
  22 N.Y.3d 1105 ....................................................................................................................17

*Realm Nat. Ins. Co. v. Hermitage Ins. Co.*,
  8 A.D.3d 110 (1st Dep't 2004) ............................................................................................15

*Sena v. Nationwide Mut. Fire Ins. Co.*,
  224 A.D.2d 513 (2d Dep't 1996) .........................................................................................12

*St. Charles Hosp. & Rehab. Ctr. v. Royal Globe Ins. Co.*,
  18 A.D.3d 735 (2d Dep't 2005) ...........................................................................................18

*Sulner v. G.A. Ins. Co. of New York*,
  224 A.D.2d 205 (1st Dep't 1996) .........................................................................................12

*Travelers Indem. Co. v. Patino*,
  No. 21 CIV. 2510(LGS), 2022 WL 3701506 (S.D.N.Y. Aug. 26, 2022) ..............................20

*Webster ex rel. Webster v. Mount Vernon Fire Ins. Co.*,
  368 F.3d 209 (2d Cir. 2004) ................................................................................................18

*Zappone v. Home Ins. Co.*,
  55 N.Y.2d 131 (1982) ..........................................................................................................18

**Statutes**

New York Insurance Law § 3420 ......................................................................................... *passim*

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ..................................................................................5

Defendant Arch Specialty Insurance Company ("Arch"), through its attorneys Robinson & Cole LLP, respectfully submits this memorandum of law pursuant to Federal Rule of Civil Procedure 12(b)(6), in support of its request for entry of a judgment and order dismissing Plaintiffs' complaint in its entirety.

## PRELIMINARY STATEMENT

Plaintiffs – whose claims for coverage were appropriately denied under the clear terms of the applicable Arch insurance policy – now seek to pursue coverage by fabricating an ambiguity in Arch's coverage denial, with the aim of artificially triggering the protective provisions of New York Insurance Law § 3420 ("Section 3420").

As a matter of law, the Arch liability policy does not cover any of the All Boro entities for liability stemming from underlying plaintiff Juan Carlos Interiano's ("Interiano") injury. Thus, any purported claims the All Boro entities assigned to Interiano are meritless, and this coverage action should be dismissed in its entirety.

## STATEMENT OF FACTS

### A. The Accident

By contract dated October 1, 2016, Nechemiah "Jonathan" Hoch and Henna Hoch hired All-Boro Rehab Construction Corporation ("ABR") to build a residence at 72-72 141st Street, Flushing, New York (the "Project"). (Declaration of Lawrence Klein ("Klein Dec.") at Ex. 1, Construction Contract.) ABR subcontracted certain portions of the Project to Drexler Land Development, Inc. ("Drexler"). (Klein Dec. at Ex. 2, Complaint ("Cpl.") at ¶ 17.) On or about February 6, 2017, Drexler employee Interiano was injured while working on the Project when Drexler's president struck Interiano's foot with an excavator (Klein Dec. at Ex. 2, Cpl. Ex. R, Inquest Transcript at pp. 5-7).

Interiano filed a personal injury action in the New York Supreme Court for Queens County, bearing Index No. 702376/2017 (Klein Dec. at Ex. 2, Cpl. Ex. A). Although Interiano was injured in the course of his employment with Drexler, a subcontractor of ABR, he named a related entity, All Boro Construction Group, Inc. ("ABC") as a defendant in the lawsuit and not ABR. *Id.*

### B.    The Policy

Arch issued commercial general liability ("CGL") Policy No. AGL0032630-01 (the "Policy" or "Arch Policy") to named insured ABR, effective January 1, 2017, to January 1, 2018. Neither of ABR's related entities, ABC, nor All Boro Group, LLC ("ABG"), qualify as named or additional insureds on the Policy.

The Policy's insuring agreement provides that Arch "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (Klein Dec. at Ex. 3, Arch Policy at p. 67, Form CG 00 01 12 07 at Page 1 of 16.)

The Policy also contains an endorsement titled "New York Limitation Endorsement – Work Done on Your Behalf by Uninsured or Underinsured Subcontractors," which reads, in relevant part, as follows:

>   **A. Section IV – Commercial General Liability Conditions** is amended by the addition of the following conditions:
>
>   1.  You will obtain agreements, in writing, from all "subcontractors" for each and every job that you employ a "subcontractor", pursuant to which the "subcontractor(s)" will be required to defend, indemnify and hold you harmless, and any other Named Insured under this policy for whom the "subcontractor" is working, for any claim or "suit" for "bodily injury", "property damage" or "personal and advertising injury" arising out of the work performed by the "subcontractor".
>
>   2.  Certificates of Insurance for Commercial General Liability coverage written on standard Insurance Services Office, Inc. (ISO) forms, or their equivalent, with limits equal to or greater than $1,000,000, will be obtained by you from

all "subcontractors" prior to commencement of any work performed for any insured.

**3.** You, and any other Named Insured under this policy for whom the "subcontractor" is working, will be named as additional insured on all of the "subcontractors" Commercial General Liability policy(ies). Each Certificate of Insurance referenced in Paragraph 2. above will show this additional insured designation.

**B.** The following exclusion is added to Paragraph **2. Exclusions of Section I – Coverage A – Bodily Injury and Property Damage Liability and Paragraph 2. Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability**:

This insurance does not apply to any claim, "suit", demand or loss that alleges "bodily injury", including injury to any "worker", "property damage" or "personal and advertising injury" that in any way, in whole or in part, arises out of, relates to or results from operations or work performed on your behalf by a "subcontractor", unless such "subcontractor":

**1.** Has in force at the time of such injury or damage a Commercial General Liability insurance policy that:

**a.** names you and any other Named Insured as an additional insured;

**b.** provides an each-occurrence limit of liability equal to or greater than $1,000,000; and

**c.** provides coverage for you for such claim, "suit", demand or loss; and

**2.** Has agreed in writing to defend, indemnify and hold harmless you and any other Named Insured under the policy for any claim or "suit" for "bodily injury" to any "worker" arising out of the work performed by such subcontractor, to the fullest extent allowed by law.

(Klein Dec. at Ex. 3, Arch Policy at p. 57, Form 00 AGL0120 33 05 14 at Page 1 of 16.)

## C.    Tender Correspondence and Litigation

By letter dated May 30, 2017, Arch wrote to Drexler's insurer, Northland Insurance Company ("Northland"), and advised that Northland was required to provide a defense and

indemnification for the lawsuit.[1] (Klein Dec. at Ex. 2, Cpl. Ex. C.) In its letter, Arch identified ABR as its insured, explained that ABR hired Drexler to perform work at the Project where Interiano sustained his injury, and pointed out that Drexler was contractually obligated to procure primary non-contributory additional insurance coverage on behalf of ABR. *Id.* Arch copied ABR on the letter, *and* expressly noted that Interiano improperly named ABC but not ABR as defendant *Id*.

Northland denied coverage by letter dated June 23, 2017. (Klein Dec. at Ex. 2, Cpl. at Ex. F.) Northland's denial letter begins, "[t]his letter acknowledges receipt of your tender of defense and indemnity of **All Boro Rehab Construction Corp** in the matter of <u>Juan Carlos Interiano v. All Boro Construction Group, Inc., Jonathan Hoch and Henna Hoch</u>, venued in Queens County, New York." *Id.* (Bolding added, underlining in original). Northland cited multiple reasons for its denial, and copied ABR in its letter. *Id*.

Following Northland's denial, by letter dated July 20, 2017, Arch denied defense and indemnification to both ABR and ABC. (Klein Dec. at Ex. 2, Cpl. at Ex. I.) Arch's letter opened by stating:

> Arch Specialty Insurance Company ("Arch") is the general liability carrier for **All-Boro Rehab Construction Corp. ("All-Boro")**. We acknowledge receipt of the captioned summons and complaint whereby All-Boro Construction Group, Inc. ("All Boro Construction") is named as a direct defendant. … Please be advised that we have reviewed this claim and **have determined that no coverage is available for All Boro, All Boro Construction or any purported additional insureds** under All Boro's policy with Arch. **Accordingly, we hereby disclaim coverage for this matter which is explained in detail below**.

*Id.* at pp. 1-2 (emphases added).

---

[1] The parties, including Northland itself, refer to Northland as both "Northfield" and "Northland." For consistency and ease of reference, we use "Northland" throughout.

Arch's letter continued to explain that ABC was not an insured under the Policy, was not entitled to coverage, and that accordingly, Arch would not retain defense counsel for ABC at an upcoming hearing. With respect to ABR, Arch's letter further explained:

> Arch's investigation reveals that the Plaintiff was an employee [of] All Boro's sub, Drexler Corp. ("Drexler"). Drexlers' Commercial General Liability Carrier, Northland Insurance ("Northland") has denied our tender requesting coverage under the Drexler policy. It is clear at this point that **the conditions of the New York Limitation Endorsement – Work Done On Your Behalf by Uninsured or Underinsured Subcontractors were not met therefore there is no coverage for this matter under the Arch Policy**.

> Although there is no formal suit pending against All Boro at this time, should one be presented, Arch would likely have no duty to defend or have any obligation to indemnify All Boro in this matter under the Arch Policy based on the New York Limitation Endorsement – Work Done On Your Behalf by Uninsured or Underinsured Subcontractors form. Should suit be filed against All Boro we request that you forward all applicable legal documents to Arch so we can review the pleadings and supplement our coverage position **if necessary**. To the extent you provide such information and documents, Arch reserves the right to alter, modify or otherwise supplement is [*sic*] coverage position **should such addition[al] information so warrant**.

*Id.* at p. 7 (emphases and alteration added).

By order dated December 12, 2017, Interiano was granted a default judgment against ABC. (Klein Dec. at Ex. 2, Cpl. Ex. J.) On October 3, 2019, Interiano filed a second personal injury action against ABR and ABG. (Klein Dec. at Ex. 2, Cpl. Ex. M.) By letter dated October 17, 2019, counsel for Interiano forwarded to Arch a copy of the summons and complaint in the second personal injury action. (Klein Dec. at Ex. 2, Cpl. Ex. O.)

On January 10, 2020, Plaintiffs moved to consolidate the second personal injury action against ABR and ABG with the first action against ABC. In support of its motion, Plaintiffs' counsel stated:

> These actions **arise from the same occurrence** between and among the parties. The **issues of fact** which will arise upon the subsequent inquest of these actions **are substantially identical, if not the same**.

(Klein Dec. at Ex. 4, Aff. in Supp. of Plaintiffs' Motion to Consolidate.) (Emphases added).

By letter dated December 10, 2019, Arch denied coverage to ABG for the lawsuit. (Klein Dec. at Ex. 2, Cpl. Ex. P.) By letter dated January 20, 2020, Arch reiterated and reaffirmed its prior coverage denial to ABR (Klein Dec. at Ex. 2, Cpl. Ex. Q.)

By agreement dated February 25, 2020, ABR, ABC, and ABG assigned their putative rights against Arch to Interiano, on the condition that Interiano not pursue any All-Boro entities for collection of a judgment. (Klein Dec. at Ex. 2, Cpl. Ex. A at p. 15.) By order dated August 18, 2022, Interiano was awarded a judgment of $2,248,423.42 against ABR, ABC, and ABG collectively. (Klein Dec. at Ex. 2, Cpl. Ex. T.) The instant action ensued.

## ARGUMENT

### I. THE ARCH POLICY DOES NOT COVER THE ALL BORO ENTITIES FOR LIABILITY STEMMING FROM INTERIANO'S INJURY.

Judgment for Interiano was issued against three entities: ABC, ABG, and ABR. First, neither ABC nor ABG appear anywhere in Arch Policy, nor are there any endorsements or policy language that add those entities as named or additional insureds. Accordingly, not only are those entities not entitled to coverage under the Policy, but, because they are not insureds, Arch never had an obligation to disclaim as to them. *Markevics v. Liberty Mutual Ins. Co.*, 97 N.Y.2d 646, 648 (2001); *47 Mamaroneck Ave. Corp. v. Hartford Fire Ins. Co.*, 50 A.D.3d 952, 954 (2d Dep't 2008).

ABR is also not covered under the policy for two reasons: (a) ABR violated the terms of the Policy; and (b) ABR's claims fall squarely within a policy exclusion.

### A.    ABR Violated the Terms of the Arch Policy.

The Arch Policy contains an endorsement titled "New York Limitation Endorsement – Work Done on Your Behalf by Uninsured or Underinsured Subcontractors" (the "Subcontractor Endorsement"). That endorsement has two parts: the first adds conditions precedent to the commercial general liability coverage part of the Policy, while the second adds exclusions to the Policy. As quoted in the Statement of Facts, the Subcontractor Endorsement added three precedential conditions to coverage under the Policy:

> (1) ABR was required to obtain written agreements from all subcontractors requiring the subcontractor (in the instant case, Drexler) to defend and indemnify ABR for any claims or lawsuits alleging bodily injury;
>
> (2) ABR was required to procure CGL insurance with limits of at least $1,000,000, and provide Certificates of Insurance attesting to that coverage prior to beginning work; and
>
> (3) ABR was required to ensure that it be named as additional insured on Drexler's CGL policy.

The inclusion of these conditions precedent was not accidental. By their plain language, the conditions bespeak a clear intention to both eliminate coverage from the Arch Policy for bodily injury arising out of subcontractor activities, and appropriately transfer the risk of liability for those injuries to the insurance carrier responsible for covering the subcontractor's other commercial risks prior to beginning work on the Project.

Had ABR abided by the terms of the Arch Policy, the risk of bodily injury to Interiano, as a Drexler employee, would have been covered under Drexler's CGL policy with Northland. Instead, as explained in Northland's denial letter, ABR permitted its subcontractor, Drexler, to obtain insurance for the Project that:

> (1) Explicitly excluded coverage for any bodily injury claims for which Drexler agreed to indemnify another party via contract;

(2) Explicitly excluded coverage for both workers' compensation claims and employer's liability claims;

(3) Explicitly excluded coverage for bodily injury to employees, workers, or contracted persons of insureds.

(Klein Dec. at Ex. 2, Cpl. at Ex. F.)

In other words, ABR permitted Drexler to obtain CGL coverage that was in direct contravention to what was required by the Arch Policy. ABR's failure to follow the conditions precedent of the Arch policy created an entirely avoidable gap in coverage. Arch's Policy conditions do not inure just to the benefit of Arch – if followed properly, they would have eliminated, at the outset of the Project, the coverage gap the parties are currently litigating.

"A condition precedent is an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises." *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 690 (1995). "Express conditions must be literally performed, whereas constructive conditions, which ordinarily arise from language of promise, are subject to the precept that substantial compliance is sufficient." *Id.*

An insurer may deny a claim if an insured fails to abide by a condition precedent. *See Sena v. Nationwide Mut. Fire Ins. Co.*, 224 A.D.2d 513, 514 (2d Dep't 1996) (Plaintiffs' claim dismissed where "they present[ed] only procedural arguments intended to suggest that the defendant may be estopped from litigating the issue of the plaintiffs' noncompliance with the condition precedent of insuring their property to 100% of its actual replacement value," because "the policy 'as written' requires that the property be insured to 100% of its value. The plaintiffs have failed to offer any evidence that they complied with this contractual requirement. Their attempts to preclude the defendant from raising this defense a fortiori impermissibly seek to create coverage by estoppel") (alteration added); *Sulner v. G.A. Ins. Co. of New York*, 224 A.D.2d 205, 206 (1st Dep't 1996) ("Since plaintiff has conceded that she failed to perform a condition precedent under the insurance

policy, she is not entitled to collect for any loss to the valuable documents, and it is irrelevant whether the breach of the condition precedent was the cause of all or part of the water damage to the valuable documents or that the subject policy lacked a specific pronouncement that the lack of performance would result in a loss of coverage"); *Charney v. Commonwealth Land Title Ins. Co.*, 215 A.D.2d 152, 152 (1st Dep't 1995) ("Plaintiff mortgagee may not recover damages under a mortgage insurance policy where the conditions precedent to coverage have not been met.").

While Plaintiffs' complaint contains conclusory allegations that they complied with the Policy's conditions (*see*, *e.g.*, Klein Dec. at Ex. 2, Cpl. ¶¶ 71-73), that contention is refuted by the exhibits to the complaint – namely, the Northland tender denial, which indicates that ABR permitted Drexler to obtain CGL insurance in contravention of the Arch Policy's express requirements. (Klein Dec. at Ex. 2, Cpl. Ex. F; Klein Dec. at Ex. 3, Arch Policy at p. 57, Form 00 AGL0120 33 05 14 at Page 1 of 2.)

Arch's Policy conditions are not meant to function as a "gotcha" game to allow an insurer to sidestep legitimate policy obligations. As explained, *supra*, they were precedential requirements designed to properly transfer risk of this exact situation to Drexler's CGL carrier – the entity most appropriately situated to handle Drexler's risks, *e.g.*, <u>an injury to a Drexler employee caused by Drexler's own conduct</u> – *before* work on the Project began. Accordingly, ABR's failure took the instant incident out of the scope of the Arch Policy's coverage.

Because ABR violated the conditions precedent to coverage under the Arch Policy, it is not covered for liability stemming from Interiano's injury.

**B.    ABR's Claims Fall Squarely Within a Policy Exclusion.**

Separate and apart from the first half of the Subcontractor Exclusion, the second half sets forth exclusionary language that is triggered in the event the insured has not met certain prerequisites. As quoted in the Statement of Facts, those prerequisites are:

      (1)  Drexler must obtain a CGL policy that names ABR as additional insured;

      (2)  Drexler's CGL policy must provide a per-occurrence limit of coverage of at least $1,000,000;

      (3)  Drexler's CGL policy must provide coverage for the particular suit against ABR alleging bodily injury; and

      (4)  Drexler must agree in writing to defend and indemnify ABR, under Drexler's CGL policy, for the particular suit for which coverage is sought.

ABR's violation of these prerequisites is flagrant, as is made clear in Northland's coverage denial. As a result, the exclusion is triggered, and coverage is not available to ABR.

Because ABR is not covered under the Arch Policy, any purported claim it transferred to Interiano is meritless.

## II.    ARCH APPROPRIATELY ISSUED A TIMELY DENIAL TO BOTH ABR AND ABC.

By letter dated July 20, 2017, addressed to both ABR and ABC, Arch denied defense and indemnification to both entities. The very first paragraph of Arch's letter opened by stating:

> Arch Specialty Insurance Company ("Arch") is the general liability carrier for **All-Boro Rehab Construction Corp. ("All-Boro")**. We acknowledge receipt of the captioned summons and complaint whereby All-Boro Construction Group, Inc. ("All Boro Construction") is named as a direct defendant. … Please be advised that we have reviewed this claim and **have determined that no coverage is available for All Boro, All Boro Construction or any purported additional insureds** under All Boro's policy with Arch. **Accordingly, we hereby disclaim coverage for this matter which is explained in detail below**.

(Klein Dec. at Ex. 2, Cpl. Ex. I. at pp. 1-2.) (Emphases added).

To suggest, as Plaintiffs appear to, that this language is somehow ambiguous, stretches imaginative capacity. Established upfront in the first paragraph of its letter, Arch's denial is categorical, unambiguous, and conclusive: there is no coverage for ABR or ABC or any other purported additional insured with respect to the matter tendered.

Though under no obligation, because ABC was not an insured, Arch's letter continued to explain that ABC was not an insured under the Policy, was not entitled to coverage, and that accordingly, Arch would not retain defense counsel for ABC at an upcoming hearing. With respect to ABR, Arch's letter reproduced various provisions from the Policy, including nearly the entire Subcontractor Endorsement. Arch further explained:

> Arch's investigation reveals that the Plaintiff was an employee [of] All Boro's sub, Drexler Corp. ("Drexler"). Drexlers' Commercial General Liability Carrier, Northland Insurance ("Northland") has denied our tender requesting coverage under the Drexler policy. It is clear at this point that **the conditions of the New York Limitation Endorsement – Work Done On Your Behalf by Uninsured or Underinsured Subcontractors were not met therefore there is no coverage for this matter under the Arch Policy**.

*Id.* at p. 7 (emphasis added).

A denial of coverage need only be issued in a reasonable timeframe, lay out the exclusionary language, and explain how it applies. *Atl. Cas. Ins. Co. v. Coffey*, 548 F. App'x 661, 664 (2d Cir. 2013) ("New York courts have held that the disclaimer remains valid as long as it identified the applicable policy exclusion and set forth the factual basis for the insurer's position that the claim fell within a policy exclusion with sufficient specificity to satisfy the statutory mandate and purpose"); *Adams v. Perry's Place*, 168 A.D.2d 932, 932 (4th Dep't 1990) (disclaimer valid because it "identified the applicable policy exclusion and set forth the factual basis for the insurer's position that the claim fell within a policy exclusion with sufficient specificity to satisfy the statutory mandate and purpose" even though it misquoted the language of the exclusion); *Realm Nat. Ins. Co. v. Hermitage Ins. Co.*, 8 A.D.3d 110, 111 (1st Dep't 2004) (disclaimer valid even though it only partially quoted relevant exclusion).

To the extent Plaintiffs argue ambiguity in Arch's coverage denial, that argument likely emanates from their selective misreading of the following paragraph in the Arch letter:

> Although there is no formal suit pending against All Boro at this time, should one be presented, Arch would likely have no duty to defend or have any obligation to indemnify All Boro in this matter under the Arch Policy based on the New York Limitation Endorsement – Work Done On Your Behalf by Uninsured or Underinsured Subcontractors form. Should suit be filed against All Boro we request that you forward all applicable legal documents to Arch so we can review the pleadings and supplement our coverage position **if necessary**. To the extent you provide such information and documents, Arch reserves the right to alter, modify or otherwise supplement is [*sic*] coverage position **should such addition[al] information so warrant**.

(Klein Dec. at Ex. 2, Cpl. at Ex. I, p. 7.) (Emphases added). This paragraph does not introduce ambiguity into the denial.

First, this language appears after two prior paragraphs where Arch stated that it had: (1) "determined that no coverage is available for All Boro, All Boro Construction or any purported additional insureds under All Boro's policy with Arch," (2) that it "hereby disclaim[s] coverage for this matter," and (3) that "there is no coverage for this matter under the Arch Policy." No reasonable reader would conclude that this subsequent paragraph could negate Arch's denial of coverage.

Second, the fact that Arch used the phrase "would likely have no duty to defend or have any obligation to indemnify" does not turn a categorical denial into a simple reservation of rights. Arch used the word "likely" simply because it was noting that technically, a formal suit against ABR had not yet been initiated. If anything, Arch was communicating that adding ABR as a defendant in the personal injury action would not change the fact that the Subcontractor Endorsement applied to bar coverage for the loss.

Third, the fact that the letter invited the All Boro entities to forward legal documents to Arch in the event a formal suit was filed against ABR, does not introduce ambiguity into Arch's coverage denial. Arch makes clear that it would supplement its coverage position only "if necessary," and if "such addition[al] information so warrant[s]."

Arch's contemporaneous intent is plain – it is denying the claim based on its investigation, but also acknowledging that discovery of critical and heretofore unknown facts could compel revisiting its coverage position. Acknowledging this uncontroversial proposition does not make its denial ambiguous – rather, it put the onus on ABR to come forward with facts of sufficient gravity that they would compel Arch to reevaluate its coverage determination. ABR failed to do so.

Additionally, even if Plaintiffs argue that this language suggested a mere reservation of rights rather than a disclaimer (which it did not), such a reservation and a coverage disclaimer are not mutually exclusive. An insurer may simultaneously deny a claim and reserve its rights. *QBE Ins. Corp. v. Jinx-Proof Inc.*, 22 N.Y.3d 1105, 1107 ("disclaimer was effective even though the letters also contained 'reservation of rights' language," and even though "the letters contained some contradictory and confusing language"); *Blue Ridge Ins. Co. v. Jiminez*, 7 A.D.3d 652, 653 (2d Dep't 2004) (insurer may both disclaim coverage and reserve its rights); *See Maxum Indem. Co. v. A One Testing Labs., Inc.*, 150 F. Supp. 3d 278, 283 (S.D.N.Y. 2015) ("New York law permits insurers to provide their insureds with a defense subject to a reservation of rights to, among other things, later recoup their defense costs upon a determination of non-coverage").

Because the Arch Policy does not cover ABR for liability flowing from Interiano's injury, and because the Arch denial was clear and unambiguous, Plaintiffs' lawsuit should be dismissed.

## III.    PLAINTIFFS' PROCEDURAL MANEUVERING DOES NOT VITIATE ARCH'S COVERAGE DENIAL TO ABR.

With respect to liability policies issued or delivered in New York state, Section 3420 requires an insurer to "disclaim liability or deny coverage for death or bodily injury" by giving "written notice as soon as is reasonably possible." N.Y. Ins. Law § 3420(d)(2). The disclaimer obligation arises when "the insurer has sufficient knowledge of facts entitling it to disclaim, or knows that it will disclaim coverage" – that is, the "timeliness of an insurer's disclaimer is

measured from the point in time when the insurer first learns of the grounds for disclaimer of liability or denial of coverage."[2] *Country-Wide Ins. Co. v. Preferred Trucking Servs. Corp.*, 22 N.Y.3d 571, 575 (2014).

While there is "no fixed yard-stick for determining a reasonable versus an unreasonable delay," New York courts have generally found that a "disclaimer of coverage issued within a month after the insurer obtains sufficient facts to form the basis of the disclaimer is, as a matter of law, reasonable." *Mu Yan Lin v. Burlington Ins. Co.*, No. 11 CIV. 33 (PGG), 2012 WL 967633, at *9 (S.D.N.Y. Mar. 21, 2012). *See also*, *St. Charles Hosp. & Rehab. Ctr. v. Royal Globe Ins. Co.*, 18 A.D.3d 735, 736 (2d Dep't 2005) (approximately one-month delay was reasonable); *DeSantis Bros. v. Allstate Ins. Co.*, 244 A.D.2d 183, 184 (1st Dep't 1997) (31 days was reasonable delay).

Further, delay "occasioned by a reasonably prompt, thorough, and diligent investigation of the claim does not render the insurer's disclaimer untimely, because an investigation is often necessary to determine whether there is any basis for disclaiming coverage." *Webster ex rel. Webster v. Mount Vernon Fire Ins. Co.*, 368 F.3d 209, 216 (2d Cir. 2004) (citing *Matter of Prudential Prop. & Cas. Ins. Co. (Mathieu)*, 213 A.D.2d 408, 408 (2d Dep't 1995)).

In effect, Section 3420 is a shield, meant to, *inter alia*, protect innocent insureds and allow them to expeditiously plan in the event their insurance company denies coverage for a loss. *See Excelsior Ins. Co. v. Antretter Contracting Corp.*, 262 A.D.2d 124, 127 (1st Dep't 1999) (the purpose of Section 3420 is "to protect the insured, the injured person, and any other interested party who has a real stake in the outcome, from being prejudiced by a belated denial of coverage. It was not intended to be a technical trap that would allow interested parties to obtain more than the coverage contracted for under the policy"); *Zappone v. Home Ins. Co.*, 55 N.Y.2d 131, 137

---

[2] Here, that was when Northland issued its disclaimer.

(1982) (in construing Section 3420's predecessor, "[l]iteral interpretation" of the statute is inappropriate where "to do so will occasion great inconvenience, or produce inequality, injustice or absurdity." Rather, the statute should be interpreted by "the court looking to the purpose of the legislation as a whole rather than its literal words.").

Plaintiffs' procedural strategy in this matter inappropriately refashions that shield into a sword with which to seize insurance coverage that they themselves relinquished in the first instance through their failure to abide by the Policy's terms. This strategy is not only cynically opportunistic – it fails as a matter of law.

### A.      Plaintiffs' Second "Tender" to Arch Served No Legitimate Purpose Because They Knew Arch Already Denied Coverage, and Suggests Plaintiffs' Intent to Manipulate Section 3420.

By letter dated May 30, 2017, addressed to Northland and copying ABR, Arch acknowledged receipt of the Interiano claim, identified Arch as general liability carrier for ABR, pointed out that the permits and contracts for the Project were issued to ABR, noted that the personal injury plaintiff improperly named ABC, and tendered the claim to Northland. (Klein Dec. at Ex. 2, Cpl. Ex. C.)

The first sentence of Northland's June 23, 2017 denial of Arch's tender begins, "[t]his letter acknowledges your tender of defense and indemnity **on behalf of All Boro Rehab Construction Corp** in the matter of <u>Juan Carlos Interiano v. All Boro Construction Group, Inc., Jonathan Hoch and Henna Hoch</u>, venued in Queens County, New York." *Id.* (Bolding added, underlining in original). Importantly, Northland's denial alerted Arch to the fact that ABR violated the conditions precedent to coverage under the Subcontractor Endorsement. Because the timeliness of an insurer's denial is "measured from the point in time when the insurer first learns of the grounds for disclaimer of liability or denial of coverage," *Preferred Trucking*, 22 N.Y.3d at 575, Arch's denial was timely, as it was issued on July 20, 2017 – within 30 days of Northland's denial.  As

explained in Argument Section II, *supra*, Arch's coverage denial also identified ABR as its insured, and clearly denied coverage to both ABR and ABC.

In other words, despite Plaintiffs' procedural maneuvers, Arch's initial acknowledgement, Northland's denial, and Arch's denial, all made clear that the entity for which coverage was being discussed (and disclaimed) was ABR.

To the extent Plaintiffs argue that Arch's denial could not be valid because it pre-dated the tender of the formal lawsuit against ABR, such an argument is without merit. There is no requirement "that a disclaimer of coverage be preceded by a tender for the disclaimer to be valid." *Maxum Indem. Co. v. Oxford Interior Corp.*, 443 F.Supp.3d 348, 352 (E.D.N.Y. 2020). *See also*, *Century Sur. Co. v. EM Windsor Constr. Inc.*, No. (PAE) 16-cv-4196, 2017 WL 5952706 at *10-11 (S.D.N.Y. Nov. 29, 2017) (disclaimer pre-dating formal tender is not untimely); *Travelers Indem. Co. v. Patino*, No. 21 CIV. 2510 (LGS), 2022 WL 3701506, at *4 (S.D.N.Y. Aug. 26, 2022) (argument that disclaimer was vitiated "by disclaiming coverage before any action was initiated" was "misplaced" because in "disclaiming coverage based on the terms of the policy when it received the notice of occurrence, [the insurer] complied with its statutory obligation to disclaim coverage 'as soon as is reasonably possible.'") (Alteration added).

Knowing that Arch had already denied coverage to ABC and ABR for Interiano's claims, Plaintiffs nonetheless "tendered" again on October 4, 2019 (Klein Dec. at Ex. 2, Cplt. Ex. O) when ABR and ABG were named as defendants in the second lawsuit, despite the fact that their second complaint was, in substance, identical to their first complaint against ABC. (*Compare*, Klein Dec. at Ex. 2, Cpl. Ex. A, *with* Cpl. Ex. M.)

The record is devoid of any evidence as to why Plaintiffs would attempt to tender again if, as they did, they already knew the results of Arch's coverage investigation – and gives rise to the

reasonable inference that they only did so with the hopes of triggering a phantom obligation under Section 3420. This manipulation of a statutory scheme meant to protect innocent insureds should not be countenanced.

Because Arch appropriately and timely denied ABR and ABC's claims for coverage by letter dated July 20, 2017, Plaintiffs' second "tender" on October 3, 2019 was not a "tender" creating new obligations under Section 3420 – it was, in effect, simply a letter informing Arch, following its valid coverage denial, that the correct entities were now named as defendants. Furthermore, as explained below, Plaintiffs themselves moved to *consolidate* the two lawsuits because they adjudicated the same claim, based on the same injury, predicated on the same facts.

**B.     Plaintiffs' Consolidation of the Lawsuits Shortly After Their Second "Tender" to Arch Further Suggests Manipulation of Section 3420, and Indicates That They Understood the Import of Arch's Coverage Denial.**

Plaintiffs stress in their pre-motion letter that Interiano's lawsuit against ABC and against ABR and ABG are two separate lawsuits, giving rise to two separate obligations under Section 3420. (Dkt. No. 10.) Their contention, however, is belied by their own pleadings – in fact, in Plaintiffs' own motion to consolidate the lawsuit, they stated:

> These actions **arise from the same occurrence** between and among the parties. The **issues of fact** which will arise upon the subsequent inquest of these actions **are substantially identical, if not the same**.

(Klein Dec. at Ex. 4, Aff. in Supp. of Plaintiffs' Motion to Consolidate.) (Emphases added).

In other words, Plaintiffs selectively treat Interiano's lawsuit against ABC and against ABR and ABG as either separate lawsuits or one lawsuit depending on their aim. When it was for the purposes of conducting an inquest aimed at producing a judgment holding all three entities jointly and severally liable, it was one lawsuit. Now, for the purposes of evaluating the timeliness of a denial of coverage, Plaintiffs suddenly argue that it is two separate lawsuits with separate obligations. Plaintiffs cannot have it both ways.

Because ABR is not covered for liability flowing from Interiano's injury, and because Arch issued a clear and timely coverage denial to ABR, Plaintiffs' complaint should be dismissed.

## **CONCLUSION**

Given the foregoing, Arch respectfully requests that this Court enter a judgment and order dismissing Plaintiffs' complaint in its entirety.

Dated:  New York, New York
          April 7, 2023

By:      /s/ Lawrence Klein
         Lawrence Klein
         ROBINSON & COLE LLP
         666 Third Avenue, 20th Floor
         New York, New York 10017
         Telephone: (212) 451-2900
         Facsimile: (212) 451-2999
         Email: lklein@rc.com

         *Attorneys for Defendant*
         *Arch Specialty Insurance Company*

18