UNITED STATES DISTICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------------- x

JUAN CARLOS INTERIANO, Individually, and JUAN : 
CARLOS INTERIANO, as assignee of ALL-BORO : Case No.: 23-cv-00238-PKC-AYS
REHAB CONSTRUCTION CORP., ALL BORO : 
GROUP, LLC, and ALL-BORO CONSTRUCTION : 
GROUP, INC., : 
                 : 
           Plaintiffs, : 
                 : 
      -against- : 
                 : 
ARCH SPECIALTY INSURANCE COMPANY, : 
                 : 
           Defendant. : 

--------------------------------------------------------------------- x

---

**PLAINTIFF JUAN CARLOS INTERIANO, INDIVIDUALLY, AND
JUAN CARLOS INTERIANO, AS ASSIGNEE OF ALL-BORO REHAB
CONSTRUCTION CORP., ALL BORO GROUP, LLC, AND
ALL-BORO CONSTRUCTION GROUP, INC.'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT ARCH SPECIALTY INSURANCE COMPANY'S
MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)**

---

VOGRIN & FRIMET, LLP
150 Broadway, Suite 1200
New York, New York 10038
Tel: (212) 513-1075
Fax: (212) 346-9063

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES..................................................................................................iii

INTRODUCTION...............................................................................................................1

STATEMENT OF FACTS AS ALLEGED.........................................................................2

    I.     THE POLICY.........................................................................................7

ARGUMENT.......................................................................................................................9

    I.     LEGAL STANDARD.............................................................................9

    II.    THE COURT SHOULD DISREGARD EXHIBITS THAT ARE NOT
           ATTACHED TO OR REFERENCED IN THE COMPLAINT.............................9

    III.   ARCH'S MOTION TO DISMISS SHOULD BE DENIED BECAUSE
           IT FAILED TO COMPLY WITH THE STRICT REQUIREMENTS OF
           SECTION 3420(d)(2)..........................................................................10

          A.     Section 3420(d)(2) Requires An Insurer to Deny Coverage
                   "As Soon As Is Reasonably Possible".......................................10

          B.     The July 20, 2017 Disclaimer Failed to Comply with
                   New York Law and Section 3420...............................................12

                i.     Arch's July 20, 2017 Letter Was Not Clear and
                       Specific As     Required Under New York Law.............................12

                ii.    When Arch Purports to Have Denied Coverage as to
                      AB Rehab, There Was No Claim Against AB Rehab....................15

          C.     Arch Is Prohibited from Denying Coverage to AB Rehab
                   Because The January 20, 2020 Disclaimer Did Not Comply
                   With Section 3420.....................................................................16

    IV.   THE NEW YORK LIMITATION ENDORSEMENT IS AMBIGUOUS,
           UNCONSCIONABLE, AND RENDERS THE POLICY ILLUSORY...............17

          A.     The New York Limitation Endorsement Is Ambiguous and Its
                   Application Raises Significant Factual Questions .......................17

          B.     The New York Limitation Endorsement Is Unconscionable......................19

      C.     The New York Limitation Endorsement Renders the Coverage Illusory...........................................................................22

V.    ARCH WAS OBLIGATED TO DEFEND PLAINTIFF BASED ON THE FACTS ALLEGED IN THE COMPALINT..................................................22

VI.   PLAINTIFF REQUESTS PERMISSION TO REPLEAD....................................23

CONCLUSION.......................................................................................................................23

# **TABLE OF AUTHORITIES**

Cases                                                                                              Page(s)

*All City Ins. Co. v. Pioneer Ins. Co.*, 194 A.D.2d 424 (App. Div. 1st Dept. 1993)......................15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)........................................................................9

*Atl. Cas. Ins. Co. v. Joney Constr. Corp.,*
   2007 U.S. Dist. LEXIS 97434 (E.D.N.Y. 2007)...............................................................11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)...............................................................9

*Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*,
   151 F. Supp. 3d 287 (E.D.N.Y. 2015).............................................................................9

*Burlington v. NYC Transit Auth.*, 29 N.Y.3d 313 (2017)....................................................17

*Century Sur. Co. v. EM Windsor Constr. Inc.,*
   2017 U.S. Dist. LEXIS 196190 (S.D.N.Y. 2017)............................................................16

*CGS Indus., Inc. v. Charter Oak Fire Ins. Co.*, 720 F.3d 71 (2d Cir. 2013)...............................23

*Chizniak v. Certainteed Corp.*,
   No. 1:17-CV-1075 (FJS/ATB), 2020 U.S. Dist. LEXIS 17020,
   (N.D.N.Y. Jan. 30, 2020)..........................................................................................20

*City of New York v. W. Heritage Ins. Co.*,
   2015 U.S. Dist. LEXIS 52280 (E.D.N.Y. 2015)............................................................17

*Colonial Penn Ins. Co. v. Pevzner*,
   1999 N.Y. App. Div. LEXIS 11547 (App. Div. 2d Dep't 1999).....................................11

*Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136 (2d Cir. 2014)...............................22

*Excelsior Ins. Co. v. Antretter Contr. Corp.*,
   262 A.D.2d 124 (App. Div. 1st Dep't 2001)...................................................................11

*First Fin. Ins. Co. v. Jetco Contr. Corp.,* 1 N.Y.3d 64 (2003)......................................................11

*General Acci. Ins. Group v. Cirucci,* 46 N.Y.2d 862 (1979)......................................................13

*Gillman v. Chase Manhattan Bank*, 73 N.Y.2d 1 (1988).....................................................20

*Hous. Cas. Co. v. Prosight Specialty Ins. Co.*, 462 F. Supp. 3d 443 (S.D.N.Y. 2020)................18

Page(s)

*Int'l Paper Co. v. Cont'l Cas. Co.*, 35 N.Y.2d 322 (1974)............................................................18

*Kopec v. Coughlin*, 922 F.2d 152 (2d Cir. 1991)........................................................................10

*Kosierowski v. Madison Life Ins. Co.*,
    31 A.D.2d 930, 931 (App. Div. 2nd Dept. 1969).................................................................20

*Lighton Indus. v. Alllied World Nat'l Assurance Co.*,
    348 F. Supp. 3d 167 (E.D.N.Y. 2018)...............................................................................20

*Maxum Indem. Co. v. Oxford Interior Corp.*, 443 F.Supp.3d 348 (E.D.N.Y. 2020)....................15

*Nationwide Mut. Ins. Co. v. Steiner*, 199 A.D.2d 507 (App. Div. 2d Dep't 1996)........................11

*Republic Franklin Ins. Co. v. Pistilli*, 16 A.D.3d 477 (App. Div. 2005)......................................15

*Squires v. Robert Marini Builders*, *Inc.*, 293 A.D.2d 808 (App. Div. 3d Dep't 2002).................11

*Striker Sheet Metal II Corp. v. Harleysville Ins. Co.*,
    2018 U. S. Dist. LEXIS 15892 (E.D.N.Y. Jan. 31, 2018)..................................................23

*Thomas J. Lipton, Inc. v. Liberty Mut. Ins. Co.*, 34 N.Y.2d 356 (1974)......................................22

*Truax v. State Farm Ins. Cos.,* 101 Misc. 2d 1031 (Sup. Ct. 1979)............................................20

*W. 16th St. Tenants Corp. v. Pub. Serv. Mut. Ins. Co.*,
    290 A.D.2d 278 (App. Div. 1st Dep't 2002).....................................................................11

*Ward v. Corbally, Gartland & Rappleyea,*
    207 A.D.2d 342 (App. Div. 2d Dep't 1994)........................................................................11

Statutes                                                            Page(s)

NY CLS Ins § 3420..........................................................................................................*passim*

NY CLS Ins § 3420(d)(2).........................................................................................................10

Rules                                                                    Page(s)

Fed. R. Civ. P. 12(b)(6)...........................................................................................................1, 9

Other Sources                                                    Page(s)

1 New Appleman Insurance Bad Faith Litigation § 3.02(c) (2nd 2022)......................................18

Plaintiff Juan Carlos Interiano, Individually, ("Interiano") and Juan Carlos Interiano, as assignee of All-Boro Rehab Construction Corp. ("AB Rehab"), All Boro Group, LLC ("AB Group"), and All-Boro Construction Group, Inc. ("AB Construction") (collectively, "Plaintiff") hereby submits this Opposition to Defendant Arch Insurance Company's ("Arch") Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) ("Motion to Dismiss"). Plaintiff respectfully requests that this Court deny Arch's Motion to Dismiss in its entirety for the reasons set forth below.

## INTRODUCTION

Arch's Motion to Dismiss ignores the numerous factual questions presented by Plaintiff's claims and ignores the main issues presented by this litigation - Arch's failure to comply with the requirements of New York Insurance Law § 3420 ("Section 3420") and its unconscionable and illusory policy condition that allows it to purportedly escape all liability based solely on the actions of another insurer.  Plaintiff is an injured party faced with an unsatisfied judgment against a company insured by Arch, for which Arch has denied coverage. This is precisely the type of party Section 3420 is intended to protect.

Arch's Motion to Dismiss primarily asserts that it should be granted because there is no coverage under the Arch Policy for AB Rehab, AB Group and AB Construction (hereinafter, "All Boro Entities"). Arch incorrectly asserts that there is no "coverage" for the liability flowing from Plaintiff's injuries. However, more precisely, it has denied coverage based on the failure of another insurer (to which Arch tendered the claim) to accept coverage for Arch's insured, thus, allegedly triggering an exclusion under the Arch policy.  It is this convoluted chain of events, rather than any actions by Arch's insured, which results in Arch's claim that a policy condition has not been satisfied. At a minimum, there are clear factual questions as to the application of this condition and what efforts Arch took to secure coverage under the other policy.

Arch only secondarily asserts that it complied with Section 3420. However, it is the enforcement of policy conditions and exclusions which is specifically within the scope of Section 3420. It is precisely Arch's failure to comply with Section 3420 that precludes Arch from enforcing this condition. As discussed further below, Arch's July 20, 2017 coverage letter was not a proper denial as to Arch's Named Insured, AB Rehab. Its failure to comply with Section 3420 in the January 20, 2020 denial letter vitiates its coverage defenses and leaves it liable to Plaintiff for damages.

Even assuming that Arch complied with Section 3420, the provision that Arch relies on to deny coverage is ambiguous, unconscionable and/or illusory as it permits Arch to deny coverage solely based on another carrier's coverage position, whether such position is correct or not.

Arch's claims that Plaintiff is somehow "manipulating" Section 3420 are inappropriate and frivolous. Arch abandoned its insured based on the application of an obscure and unconscionable provision. Further, Section 3420 is expressly intended to protect both insureds and injured parties by requiring insurers to provide clear, detailed, and timely coverage positions to allow for appropriate corrective actions for the pursuit of valid claims. It is Arch that was manipulating its investigation to deny coverage solely based on the coverage position of another insurer.

## STATEMENT OF FACTS AS ALLEGED

Plaintiff, Juan Carlos Interiano ("Interiano") was injured while working on a job site located in Flushing, New York. *See* Complaint ¶ 12 (ECF Dkt. 1-1, p. 6 of 207). Interiano filed two separate and distinct lawsuits against different, but related, entities to recover for his personal injuries. The first lawsuit was filed on February 18, 2017 against AB Construction and Jonathan and Henna Hoch (collectively, "the Hoch's"). *Id.* at ¶ 20. The second lawsuit was filed on October 3, 2019 against AB Rehab and AB Group. *Id.* at ¶ 39 (ECF Dkt. 1-1, p. 9 of 207).

For the February 18, 2017 lawsuit against AB Construction and the Hoch's, there were a series of tenders between the respective parties' insurance companies. In relevant part, on May 30, 2017, Arch tendered the claim to Northland Insurance Company ("Northland")[1], the insurer for Drexler Corp (a sub-contractor). *Id.* at ¶ 24-34 (ECF Dkt. 1-1, pp. 7 – 9 of 207). Arch acknowledged that the lawsuit was filed against AB Construction, yet believed they were improperly named. *See* Complaint and Exhibit C attached thereto, (ECF Dkt. 1-1, p. 44 of 207).

On June 23, 2017, Northland disclaimed coverage for Arch's tender only as to the claim tendered for AB Construction.[2] Northland stated:

> There is no coverage under the policy for the contractual liability claim being made against Drexler by the Hochs and [AB Construction] based upon the contractual liability exclusion and the contractual liability limitation quoted above.
> …
> Based on the foregoing, the Hochs and [AB Construction] would qualify as additional insureds under this endorsement, but only to the extent that, the injury or damage is caused by acts or omissions of Drexler or Drexler's subcontractor in the performance of their work to which the "written contract requiring insurance" applies. Furthermore, the Hochs and [AB Construction] do not qualify as an additional insured with respect to their independent acts or omissions.
>
> Despite, their status as additional insureds coverage is barred by the following exclusions.

*See* Complaint and Exhibit F attached thereto (ECF Dkt. 1-1, pp. 56, 58 of 207). Northland goes on to list a number of exclusions that it claims apply to preclude coverage for AB Construction. *Id.* p. 58-62 of 207.

---

[1] As indicated in Arch's Motion, the parties, including Northland itself, refer to Northland as "Northfield" and "Northland." To be consistent, we use Northland throughout. *See* Arch's Motion to Dismiss. at p. 4, fn. 1.

[2] The Northland denial refers to AB Construction as "All Boro." For the sake of consistency, we refer to it solely as AB Construction. The Northland denial does state that the tender is "on behalf of All Boro Rehab Construction Corp" but then proceeds to solely discuss the claim and tender as to "All Boro Construction Group, Inc." *See* Complaint and Exhibit F attached thereto (ECF Dkt. 1-1, p. 54 of 207).

On July 20, 2017, after receiving the letter from Northland, Arch sent a letter to AB Rehab

and AB Construction. *See* Complaint and Exhibit I attached thereto (ECF Dkt. 1-1, pp. 86 of 207).

Arch denied coverage as to AB Construction as it was not an insured under its policy. *Id.* p. 93 of

207. Arch' s position as to AB Rehab is not clear from its correspondence. Arch stated:

> Arch's investigation reveals that the plaintiff was an employee Al Boro's sub,
> Drexler Corp. ("Drexler"). Drexlers' Commercial General Liability Carrier,
> Northland Insurance ("Northland") has denied our tender requesting coverage
> under the Drexler policy. It is clear at this point that the conditions of the New York
> Limitation Endorsement - Work Done On Your Behalf by Uninsured Or
> Underinsured Subcontractors were not met therefore there is no coverage for this
> matter under the Arch Policy.

*Id.*

As noted above, Northland stated that AB Construction (not AB Rehab as claimed by Arch)

had contracted with Drexler and Northland had denied as to AB Construction. Arch's letter states

that when it is referring to "All Boro Construction Group, Inc." it will utilize the abbreviation "All

Boro Construction" without a hyphen. However, when it is referring to "All Boro Rehab

Construction Corp." it will utilize the abbreviation of "All-Boro" with a hyphen. Based on

Northland's letter, Northland did not deny any coverage to AB Rehab. By using the abbreviation

"All Boro" it appears that Arch may be referring to AB Rehab (i.e. it meant to utilize "All-Boro"),

however, the information in this paragraph would then be incorrect as Northland never denied

coverage to AB Rehab.[3]

Even assuming that this statement was meant to apply to AB Rehab, unlike its statement

with regard to AB Construction, Arch did not unequivocally deny coverage against AB Rehab

(which had not been sued), but specifically left open the possibility that should a formal suit be

---

[3] In Northland's tender denial as to AB Construction, they are referred to as "All Boro" without
the hyphen. *See* Complaint and Exhibit F attached thereto (ECF Dkt. 1-1, p. 54 of 207).

filed against AB Rehab (and an actual claim against AB Rehab be presented) Arch would consider coverage. Arch stated:

> Although there is no formal suit pending against [AB Rehab] at this time, should one be presented, Arch would *likely* have no duty to defend or have any obligation to indemnify ABR in this matter under the Arch Policy based on the New York Limitation Endorsement - Work Done On Your Behalf by Uninsured Or Underinsured Subcontractors form. Should suit be filed against ABR we request that you forward all applicable legal documents to Arch so we can review the pleadings and supplement our coverage position if necessary...

> (emphasis added). *See* Complaint and Exhibit I attached thereto (ECF Dkt. 1-1, p. 93 of 207).

On October 3, 2019, Interiano filed a different complaint against AB Rehab and AB Group. *See* Complaint ¶ 38-40 (ECF Dkt. 1-1, p. 9 of 207). Based on the new lawsuit, on October 17, 2019, Interiano's counsel tendered the defense and indemnity obligations to Arch and Armour Risk Management ("Armour"), the Third-Party Administrator for Arch, for the October 3, 2019 lawsuit. *See* Complaint ¶ 43-46 (ECF Dkt. 1-1, p. 10 of 207).

On December 10, 2019, Armour sent a letter only to Interiano's counsel stating that Arch disclaimed coverage and denied liability as to the claims asserted against AB Group because it is not an insured under the policy. *See* Complaint ¶ 48-50 (ECF Dkt. 1-1, p. 10 of 207). That letter, on its face was not copied or sent to AB Group as required by Section 3420. While it states that Arch "has disclaimed coverage" it does not reference, incorporate or attach any other correspondence or explanation for the denial.

On January 10, 2020, Interiano moved to consolidate the second personal injury action against ABR and ABG with the first action for the sake of convenience. *See* Complaint ¶ 41 (ECF Dkt. 1-1, p. 9 of 207).

On January 20, 2020, over 90 days after it received the tender of the suit against AB Rehab, Armour, on behalf of Arch, issued its first disclaimer of coverage regarding AB Rehab. The letter disclaimed coverage and denied liability under the Arch Policy's New York Limitation Endorsement–Work Done On Your Behalf By Uninsured Or Underinsured Subcontractors. *See* Complaint ¶ 51-54 (ECF Dkt. 1-1, p. 11 of 207). This correspondence was also not sent or copied to AB Rehab or AB Group. *Id.* In addition, while it states that Arch "has disclaimed coverage" (in the past tense) it does not reference, incorporate or attach any other correspondence or explanation for the denial. Unlike the earlier response to the original lawsuit, there is also no allegation that Arch tendered the lawsuit against AB Rehab and AB Group to Northland. Therefore, unlike the tender of the suit AB Construction, which was denied by Northland, there are no factual assertions in this correspondence that the claim was actually denied by Northland. The January 20, 2020 correspondence was the first and only disclaimer of coverage as to AB Rehab by Arch, it was made without any denial of a tender by Northland, over 90 days after notice of the suit and it also does not appear to have been sent to Arch's Named Insured, AB Rehab or AB Group as required by Section 3420.

On July 11, 2022, Judge Muir granted Interiano a recovery against the All Boro Entities in the sum of $1,500,000.00 for his past and future pain and suffering and his past and future lost wages. *See* Complaint ¶ 56 (ECF Dkt. 1-1, p. 11 of 207). On August 18, 2022, the clerk entered a judgment in the sum of $2,248,423.42. *See* Complaint ¶ 58 (ECF Dkt. 1-1, p. 12 of 207).Counsel for Interiano served the August 18, 2022 Judgement on Arch and the present action ensued. *See* Complaint ¶ 62-63 (ECF Dkt. 1-1, p. 12 of 207).

# I. THE POLICY

Arch's denial of coverage is based on the New York Limitation Endorsement – Work Done on Your Behalf by Uninsured or Underinsured Subcontractors (hereinafter, "New York Limitation Endorsement"), contained in the Arch Policy. The relevant provisions state:

> A. Section IV – Commercial General Liability Conditions is amended by the addition of the following conditions:
>
> 1. You will obtain agreements, in writing, from all "subcontractors" for each and every job that you employ a "subcontractor", pursuant to which the "subcontractor(s)" will be required to defend, indemnify and hold you harmless, and any other Named Insured under this policy for whom the "subcontractor" is working, for any claim or "suit" for "bodily injury", "property damage" or "personal and advertising injury" arising out of the work performed by the "subcontractor".
> 2. Certificates of Insurance for Commercial General Liability coverage written on standard Insurance Services Office, Inc. (ISO) forms, or their equivalent, with limits equal to or greater than $1,000,000, will be obtained by you from all "subcontractors" prior to commencement of any work performed for any insured.
>
> 3. You, and any other Named Insured under this policy for whom the "subcontractor" is working, will be named as additional insured on all of the "subcontractors" Commercial General Liability policy(ies). Each Certificate of Insurance referenced in Paragraph 2. above will show this additional insured designation.
>
> **…**
>
> **B.** The following exclusion is added to Paragraph **2. Exclusions of Section I – Coverage A – Bodily Injury and Property Damage Liability and Paragraph 2. Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability**:
>
> This insurance does not apply to any claim, "suit", demand or loss that alleges "bodily injury", including injury to any "worker", "property damage" or "personal and advertising injury" that in any way, in whole or in part, arises out of, relates to or results from operations or work performed on your behalf by a "subcontractor", unless such "subcontractor":
>
> 1. Has in force at the time of such injury or damage a Commercial General Liability insurance policy that:
>     a. names you and any other Named Insured as an additional insured;

7

       b. provides an each-occurrence limit of liability equal to or greater than $1,000,000; and

       c. provides coverage for you for such claim, "suit", demand or loss; and

    2. Has agreed in writing to defend, indemnify and hold harmless you and any other Named Insured under the policy for any claim or "suit" for "bodily injury" to any "worker" arising out of the work performed by such subcontractor, to the fullest extent allowed by law.

*See* Complaint and Exhibit I attached thereto (ECF Dkt. 1-1, p. 91-92 of 207).

Here, the alleged "failure" is not with the insured's compliance with Parts A (1, 2 or 3). It certainly appears that the Arch insured had been named as an Additional Insured on the Northland Policy with the appropriate limits. The issue appears to be compliance with the Exclusion under Part B and specifically subpart 1(c). While Arch presents this as a condition precedent to the insurance, in fact the "failure" only occurs once Northland, as the insurer of Drexler Corp., fails to accept coverage. Northland specifically agreed that AB Construction (the only entity that was being sued) would qualify as an Additional Insured with the necessary coverage. *See* Complaint and Exhibit F attached thereto (ECF Dkt. 1-1, p. 58 of 207). This indicates that Part A was complied with. Arch instead claims that the failure of Northland to accept coverage violates Part B(1)(c) which requires that "the subcontractor" has in force "insurance which "provides coverage for such claim 'suit' demand or loss." Arch's denial entirely rests upon its application of this condition and the actions of Northland, an insurer for another entity which appears to be a "sub-contractor." Further, based on their respective coverage position letters, Arch and Northland disagree as to who Drexler Corp. subcontracted with based on their claimed "investigations." *See* Complaint and Exhibit C and Exhibit F attached thereto (ECF Dkt. 1-1, p. of 207 44 and 54 of 207 respectively).

<u>**ARGUMENT**</u>

## I.    LEGAL STANDARD

Arch requests that this Court dismiss Plaintiff's Complaint, yet fails to set forth the legal standard for determining a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). In order to avoid dismissal under Fed. R. Civ. P. 12(b)(6), a complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility where the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). By contrast, a pleading that only "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 570).

Since Plaintiff has plead factual content which allows this Court to draft a reasonable inference that Arch is liable, Plaintiff respectfully requests that this Court deny Arch's Motion to Dismiss.

## II.   THE COURT SHOULD DISREGARD EXHIBITS THAT ARE NOT ATTACHED TO OR REFERENCED IN THE COMPLAINT

On a Rule 12(b) motion, the court may consider "in addition to the pleading itself, documents that are annexed to or referenced in the complaint [and] documents that the plaintiff relied on in bringing the suit." *Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*, 151 F. Supp. 3d 287, 290-291 (E.D.N.Y. 2015). "Upon a motion to dismiss where materials outside the pleadings are offered, a district court should strictly adhere to the language of Rule 12(b).: Rule 12 (b) gives district courts two options when matters outside the pleadings are presented in response to a 12(b)(6) motion: the court may exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment…and afford all

parties the opportunity to present supporting material." *See Kopec v. Coughlin*, 922 F.2d 152 (2d Cir. 1991) (internal citations and quotations omitted).

In its Motion to Dismiss, Arch attached documents outside the pleadings, including Exhibit 1 (Construction Contract between the Hoch's and All-Boro Rehab Construction Corporation), Exhibit 3 (a copy of Arch's General Liability Policy issued to All-Boro Rehab Construction Corp), and Exhibit 4 (A copy of Raymond Ardito's January 10, 2020 Affirmation in Support of Juan Carlos Interiano's Motion for a Default judgment). Plaintiff objects to the consideration of these documents. There are numerous factual issues involved in the determination of the issues concerning the scope of the policy terms and Arch's investigation. Plaintiff is particularly limited here as they are an assignee and judgment creditor based on the failure of Arch, the insurer, to provide bargained-for coverage. Converting this motion to a motion for summary judgment prior to any discovery would be inappropriate and prejudicial.

## III.  ARCH'S MOTION TO DISMISS SHOULD BE DENIED BECAUSE IT FAILED TO COMPLY WITH THE STRICT REQUIREMENTS OF SECTION 3420(d)(2)

### A.  Section 3420(d)(2) Requires An Insurer to Deny Coverage "As Soon As Is Reasonably Possible"

Section 3420 (d)(2) provides**:**

> If under a liability policy issued or delivered in this state, an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within this state, it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant.

"As the Legislature's 1975 Budget Report on the bill that ultimately became section 3420 (d) noted, the purpose 'is to assist a consumer or claimant in obtaining an

expeditious resolution to liability claims by requiring insurance companies to give prompt notification when a claim is being denied.' (30-Day Budget Report on Bills, Bill Jacket, L 1975, ch 775)." *See First Fin. Ins. Co. v. Jetco Contr. Corp.,* 1 N.Y.3d 64, 68 (2003). "The purpose of section 3420 (d) was to protect the insured, the injured person, and any other interested party who has a real stake in the outcome, from being prejudiced by a belated denial of coverage." *Excelsior Ins. Co. v. Antretter Contr. Corp*., 262 A.D.2d 124, 127 (App. Div. 1st Dep't 2001).

The issue presented is whether Arch disclaimed "as soon as is reasonably possible." New York courts have held that a 30-day delay is unreasonable under Section 3420. *E.g. W. 16th St. Tenants Corp. v. Pub. Serv. Mut. Ins. Co.,* 290 A.D.2d 278, 279 (App. Div. 1st Dep't 2002) (defendant's 30-day delay is unreasonable under Section 3420); *First Fin. Ins. Co. v. Jetco Contr. Corp*., 1 N.Y.3d 64, 66 (2003) (48-day delay in disclaiming coverage was unreasonable as a matter of law); *Nationwide Mut. Ins. Co. v. Steiner*, 199 A.D.2d 507, 508 (App. Div. 2d Dep't 1996) (41-day delay in disclaiming coverage was unreasonable as a matter of law); *Squires v. Robert Marini Builders*, *Inc*., 293 A.D.2d 808, 810 (App. Div. 3d Dep't 2002) (42-day delay in disclaiming coverage was unreasonable as a matter of law); *Colonial Penn Ins. Co. v. Pevzner*, 1999 N.Y. App. Div. LEXIS 11547, *1 (App. Div. 2d Dep't 1999) (41-day delay in disclaiming coverage was unreasonable as a matter of law); *Atl. Cas. Ins. Co. v. Joney Constr. Corp.,* 2007 U.S. Dist. LEXIS 97434, *25 (E.D.N.Y. 2007) (41-day delay in disclaiming coverage was unreasonable as a matter of law); *Ward v. Corbally, Gartland & Rappleyea,* 207 A.D.2d 342, 344 (App. Div. 2d Dep't 1994) (two-month delay in disclaiming coverage was unreasonable as a matter of law). As discussed further below, as a matter of law, Arch failed to comply with the requirements of Section 3420 because it waited over 90 days to deny coverage for the claim based on the one and only lawsuit against AB Rehab and also filed to notify its own insured of the denial.

**B. The July 20, 2017 Disclaimer Failed to Comply with New York Law and Section 3420**

Arch waited over 90 days to deny coverage. Based on Section 3420 alone, it cannot enforce the New York Limitation Endorsement. Arch seeks to argue that it properly and timely disclaimed coverage as to AB Rehab on July 20, 2017 and asserts that Plaintiff's tender on October 17, 2019 was not actually a "tender" creating new obligations under Section 3420. *See* Arch's Motion to Dismiss at p. 16. Arch's argument is contrary to the facts as presented and New York law. Arch's purported denial as to AB Rehab on July 20, 2017 failed to comply with the specificity requirements under Section 3420 because it did not state with sufficient clarity that there would be no coverage for AB Rehab if a claim was asserted against it, nor the specific grounds for disclaimer. *See* Complaint and Exhibit I attached thereto (ECF Dkt. 1-1, p. 93 of 207). October 17, 2019, counsel for Interiano promptly forwarded the first and only lawsuit against AB Rehab and AB Group. *See* Complaint ¶ 44-46 (ECF Dkt. 1-1, p. 10 of 207). Additionally, the July 20, 2017 disclaimer was not proper as to AB Rehab because, at that time, there was no claim against AB Rehab. *See* Initial Complaint. As of July 20, 2017, Arch was not aware whether a lawsuit would be brought against AB Rehab, nor what causes of action would be asserted against it. It was not until over two years later that a claim was actually made against AB Rehab. As such, as a matter of law Arch failed to timely deny coverage based on the October 3, 2019 lawsuit and this Motion to Dismiss should be denied.

**i. Arch's July 20, 2017 Letter Was Not Clear and Specific As Required Under New York Law**

Arch's July 20, 2017 letter was not a proper denial of coverage as to AB Rehab under New York law because Arch left open the clear possibility coverage would be available if a lawsuit was

filed against AB Rehab and failed to specify the reasons it was denying coverage. Arch stated that it:

> …would *likely* have no duty to defend or have any obligation to indemnify [AB Rehab] in this matter … Should suit be filed against All Boro we request that you forward all applicable legal documents to Arch so we can review the pleadings and supplement our coverage position if necessary. To the extent you provide such information and documents, Arch reserves the right to alter, modify or otherwise supplement is coverage position should such addition information so warrant.

(emphasis added) *See* Complaint and Exhibit I attached thereto (ECF Dkt. 1-1, p. 93 of 207).

The statement that there would "likely" be no coverage is plainly not a clear and unambiguous denial. A "notice of disclaimer must promptly apprise the claimant with a high degree of specificity of the ground or grounds on which the disclaimer is predicated." *See General Acci. Ins. Group v. Cirucci,* 46 N.Y.2d 862, 864 (1979) (citing Ins. Law § 167, predecessor to §3420). Arch only stated:

> ...Drexlers' Commercial General Liability Carrier, Northland Insurance ("Northland") has denied our tender requesting coverage under the Drexler policy. It is clear at this point that the conditions of the New York Limitation Endorsement - Work Done On Your Behalf by Uninsured Or Underinsured Subcontractors were not met therefore there is no coverage for this matter under the Arch Policy.

*See* Complaint and Exhibit I attached thereto (ECF Dkt. 1-1, p. 93 of 207).

Arch did not detail the specific aspect of the condition and/or exclusion it was relying on, nor the facts for its basis for the denial. The only reason provided was that Northland failed to accept their tender. The policy language does not state anything about the actions of an insurer. It rather refers to the "subcontractor" agreeing to "defend, indemnify and hold harmless" the Named Insured. In fact, quite clearly there was such an agreement in place with the "subcontractor" but the Northland appears to not be agreeing to honor it. This reasoning is not sufficiently clear to

apprise AB Construction or AB Rehab of the reasons for the disclaimer and perhaps allow it to determine how it might comply with these claimed conditions.

Further, Arch's "denial" as to AB Rehab was based on incorrect facts as Northland never denied as to AB Rehab, so it is impossible for the alleged policy "condition" to have been satisfied. It is clear based on the correspondence that Drexler's insurer, Northland, never denied to AB Rehab, only AB Construction. *See* Complaint and Exhibit F attached thereto (ECF Dkt. 1-1, p. 53 of 207). The assertion that Northland denied their tender to AB Rehab is absolutely an inaccurate statement. Northland denied Arch's tender only for AB Construction. *Id.* Northland's tender denial letter to Arch did not even discuss coverage for AB Rehab- who was not a party to any litigation initiated against Interiano. Northland only made a coverage determination as to the persons or entities named in the complaint and to whom there was a claim against – the Hochs and AB Construction. At no point was a coverage determination made against AB Rehab.

In fact, to the contrary, Arch is specifically advising that it will consider a claim against AB Rehab if one is filed. AB Rehab was certainly not advised that coverage would not be provided if it was sued but was specifically advised the opposite - it should forward such suit for consideration. As Northland had not specifically denied as to AB Rehab, then Arch was could certainly consider re-tendering the claim. It had certainly not stated that such a re-tender would be futile and it without question did not provide any such analysis to its insureds or the claimant.

The remainder of the letter specifically advises that Arch is reserving all of its rights including that it would be engaging in "further investigation." *See* Complaint and Exhibit I attached thereto (ECF Dkt. 1-1, p. 93 of 207). As to AB Rehab, this letter is nothing more than a reservation of Arch's right to disclaim coverage *in the future* should a claim against AB Rehab be presented. The law under Section 3420 is clear that "a written reservation of an insurer is not a

substitute for the required notice of disclaimer." *All City Ins. Co. v. Pioneer Ins. Co.*, 194 A.D.2d 424, 424 (App. Div. 1st Dept. 1993); *See also Republic Franklin Ins. Co. v. Pistilli*, 16 A.D.3d 477, 478 (App. Div. 2005) (reservation of rights letter not sufficient disclaimer under Section 3420). [4]

### ii. When Arch Purports to Have Denied Coverage as to AB Rehab, There Was No Claim Against AB Rehab

At the time of Arch's purported July 20, 2017 denial to AB Rehab, there was no claim against AB Rehab nor any pending lawsuit against it. While Arch's May 20, 2017 tender to Northland asserts that AB Construction was improperly named, that does not change the clear fact that AB Rehab was not a named defendant to the litigation and no claim was being asserted against it. None of the cases cited by Arch support its proposition that it's a denial prior to any lawsuit, or claim made, against an entity is appropriate. This is separate and distinct from a situation wherein a lawsuit is already pending against an insured or other entity, and before receiving a formal tender, an insurer learns of the facts of the lawsuit and disclaims coverage. *E.g. Maxum Indem. Co. v. Oxford Interior Corp.*, 443 F.Supp.3d 348, 352 (E.D.N.Y. 2020) (at the time the disclaimer was issued, there was already a lawsuit pending, albeit allegedly not formally tendered to the insurer). New York law is clear:

> an insurer's obligation to disclaim coverage as to a particular insured does not arise until that insured has provided notice of the occurrence or claim," *Webster ex rel. Webster v. Mount Vernon Fire Ins. Co.*, 368 F.3d 209, 214 (2d Cir. 2004), an insurer cannot learn of grounds for disclaimer as to a particular insured, for purposes of § 3420(d), until that insured has given notice of its claim. Indeed, "an insurer can hardly be said to have sufficient facts to issue a disclaimer before the insured has provided notice, because the insurer has no reason to anticipate that an insured will

---

[4] Arch's claims that Plaintiff is somehow "manipulating" Section 3420 simply ignore this invitation to file a corrected lawsuit which actually is the entire purpose of the statute.

seek coverage until it is actually so notified." *Id.* at 216. Thus, the clock begins to run on an insurer's duty to disclaim only after an insured has provided notice.

*Century Sur. Co. v. EM Windsor Constr. Inc.,* 2017 U.S. Dist. LEXIS 196190, *26 (S.D.N.Y. 2017).

On July 20, 2017, Arch could have had no reason to anticipate that a claim would be filed against AB Rehab, or that Interiano would seek coverage for such a claim. It was not until over two (2) years later that a claim was submitted against ABR in which coverage would be sought.

As discussed above, as of July 20, 2017, Northland had not denied coverage as to AB Rehab, only AB Construction.

Arch's attempt to assert it disclaimed coverage as to AB Rehab on July 20, 2017, although there was no formal suit pending or anticipated against AB Rehab, and although Northland had not yet disclaimed as to AB Rehab, is unsupportable by New York law. Arch relied on Northland's tender denial as the sole basis for its purported decision to deny coverage for ABR. However, as of July 20, 2017, Northland had not yet denied coverage as to AB Rehab. The tender by Interiano's counsel on October 17, 2019 was the one and only tender as to AB Rehab.

### C.    Arch Is Prohibited from Denying Coverage to AB Rehab Because The January 20, 2020 Disclaimer Did Not Comply With Section 3420

As shown above, Arch never declined coverage as to AB Rehab on July 20, 2017. There was only one tender as to AB Rehab concerning the personal injury action – the October 17, 2019 tender. *See* Complaint at ¶ 43-46 (ECF Dkt. 1-1, p. 10 of 207). Arch waited nearly ninety-five (95) days to disclaim coverage for the tender for ABR's claim - January 20, 2020. Further, it failed to comply with Section 3420 by not notifying AB Rehab or AB Group of the disclaimer.

Arch's failure to disclaim coverage for nearly ninety-five (95) is unreasonable and violates Section 3420. While it is clear Arch failed to timely disclaim coverage, at the very least, whether

Arch's January 20, 2020 disclaimer violated Law Section 3420 is not proper to decide on a Motion to Dismiss. *City of New York v. W. Heritage Ins. Co*., 2015 U.S. Dist. LEXIS 52280, *5-6 (E.D.N.Y. 2015), *citing Hartford Ins. Co. v. County of Nassau,* 46 N.Y.2d 1028 (1979) ("Normally the question whether a notice of disclaimer . . . has been sent 'as soon as is reasonably possible' is a question of fact which depends on all the facts and circumstances, especially the length of and the reason for the delay", but a two month delay, with no explanation for the delay, is unreasonable as a matter of law.)

Based on the foregoing, Plaintiff respectfully request that this Court deny Arch's Motion to Dismiss. At a minimum, there are factually issues to be resolved concerning whether Arch complied with Section 3420 that cannot be resolved on a Motion to Dismiss.

## IV. THE NEW YORK LIMITATION ENDORSEMENT IS AMBIGUOUS, UNCONSCIONABLE, AND RENDERS THE POLICY ILLUSORY

### A. The New York Limitation Endorsement Is Ambiguous and Its Application Raises Significant Factual Questions

Even if Section 3420 does not bar application of the exclusions relied upon by Arch, there are significant questions as the interpretation and application of the exclusions in this instance. The exclusions are only triggered if the claim "arises out of, relates to or results from operations or work performed on your behalf by a 'subcontractor.'" *See* Complaint and Exhibit I attached thereto (ECF Dkt. 1-1, p. 92 of 207). Whether this accident arose out of "work performed on your behalf" is a question of fact. While Interiano was employed by Drexler, that does not mean that the accident necessarily arose out of work performed for Arch's insured. The law is clear in New York that an employment relationship alone is insufficient to conclude that the incident arose out of the work of the employer. *Burlington v. NYC Transit Auth.*, 29 N.Y.3d 313, 317 (2017). There is nothing in Arch's correspondence that indicated what investigation they did that confirmed this fact.

The meaning of the term "provides coverage" in subpart B(1)(c) is also ambiguous. Arch reads this meaning that the carrier must accept its duty to defend and indemnify without limitation. Application of an exclusion to deny coverage therefore triggers the clause. However, it is axiomatic that exclusions are to be narrowly interpreted. A carrier can find that the claim falls within the coverage provided but is nevertheless excluded by other policy conditions. A reasonable insured viewing the clause as a whole may construe it as meaning that their requirement was to provide access as an additional insured to the subcontractor's coverage, not guarantee that its subcontractor's insurer would accept coverage for every claim. In addition, the reference to "such claim" in that clause is also ambiguous as it is not clear what it is referring to. The clause above it says "any" claim which is broader. "Such claim" implies that it is only a subset of "any" claims.

Additionally, there are factual questions as to whether Arch foreclosed the possibility of other subcontractors being potentially liable. New York law is also clear that the duty to defend is a form of "litigation insurance" where the insured is relying upon the superior resources of the insurer in responding to a claim. *Int'l Paper Co. v. Cont'l Cas. Co.*, 35 N.Y.2d 322, 326 (1974). Pursuing claims for contribution against other potentially liable parties are generally considered to fall within the duty to defend. 1 New Appleman Insurance Bad Faith Litigation § 3.02(c) (2nd 2022); *See e.g. Hous. Cas. Co. v. Prosight Specialty Ins. Co.*, 462 F. Supp. 3d 443 (S.D.N.Y. 2020) (prosecution of a third-party action was part of the defense of main action). While Arch may claim that it would hope that a potential indemnitee agrees to accept coverage, it is essentially in a "win-win" situation. If the potential indemnitee accepts coverage, Arch need not worry about its primary obligations; if the indemnitee denies coverage for any reason, Arch can apply its exclusion and deny coverage to its insured. There are clear factual issues here as to what, if any, investigation Arch did to confirm the facts surrounding its tender to Northland and what efforts it took to confirm

whether Northland's position was valid. None of this is contained in its denial letter and simply cannot be inferred from the bare outline of the facts as alleged.

Finally, and perhaps most importantly, the facts as alleged indicate that despite the claims to the contrary, the insureds *have* complied with the terms of the Arch policy. They did obtain the necessary coverage and indemnity agreements from the subcontractor. It was the subcontractor's insurer that failed to honor those agreements and/or provided coverage that excluded certain claims. The failure of the subcontractor or its carrier to adhere to these agreements does not constitute a failure on the part of Arch's insured to comply with those conditions.

**B.     The New York Limitation Endorsement Is Unconscionable**

Even if Arch timely disclaimed coverage under Section 3420 (which it did not), the Subcontractor Endorsement Arch basis its coverage determination on is unconscionable. As Arch asserts, the New York Limitation Endorsement contains two parts: the first part adds conditions, and the second part adds exclusions.

Arch's Motion to Dismiss is the first time it stated, with specificity, the reasons for disclaiming coverage as to AB Rehab. The July 20, 2017 letter and January 20, 2020 letter fail to apprise AB Rehab the reason(s) and any facts it relied on to disclaimer coverage. Arch appears to assert that AB Rehab failed to comply with both conditions to the New York Limitation Endorsement and Exclusions. However, the only reason Arch previously provided for denying coverage was because Northland denied coverage- which seemingly only falls under the Subcontractor Endorsement's exclusions, which is unconscionable.

Under New York law, "[a]n unconscionable contract has been defined as one which 'is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms. (See 1 Corbin on Contracts, § 128,

p. 400.)' ( *Mandel v Liebman*, 303 NY 88, 94.)" *Gillman v. Chase Manhattan Bank*, 73 N.Y.2d 1, 10 (1988). Except in rare circumstance, a contract must be both procedurally and substantively unconscionable. *Id.* An insurance policy is "perhaps the prime example of a contract of adhesion." *Kosierowski v. Madison Life Ins. Co.*, 31 A.D.2d 930, 931 (App. Div. 2nd Dept. 1969). Certainly, there seems little doubt that the clause at issue was imposed by the insurer.

The issue of substantive unconscionability requires that the clause be unreasonably favorable to the other party. *See e.g. Chizniak v. Certainteed Corp.*, No. 1:17-CV-1075 (FJS/ATB), 2020 U.S. Dist. LEXIS 17020, at *21 (N.D.N.Y. Jan. 30, 2020). Arch cites no cases supporting its application of this clause. However, in the one case where this clause has been litigated, the clause was found not to apply because the court found that the subcontractor's carrier had improperly declined to accept coverage. *Lighton Indus. v. Alllied World Nat'l Assurance Co.*, 348 F. Supp. 3d 167, 195-96 (E.D.N.Y. 2018). In essence, Arch would have AB Rehab (or by extension its assignee/judgment creditor Interiano) litigate against Northland in order to establish the possibility of coverage by Arch. Arch's policy effectively incorporates not only Northland's policy but also the claim determination by Northland's claim department. Even incorporating the policy terms would be marginally fairer that what Arch has done, which is to require that Northland affirmatively accept that coverage exists (presumably without reservation). Even a completely erroneous denial by Northland is sufficient to insulate Arch from any duty to its insured.

Although not directly on point, the New York decision of *Truax v. State Farm Ins. Cos.,* 101 Misc. 2d 1031 (Sup. Ct. 1979) is instructive. There the court held that a "Suit Against This Company" clause which prohibited a declaratory judgment against the insurer was unconscionable as it interfered with the important obligation of the insurer to provide a defense by prohibiting the insured from seeking an early determination of the duty to defend. Here, the All Boro Entities

would have been required to litigate against Northland in order to establish an unequivocal right to defense and indemnity from Northland before Arch would consider providing any coverage. The "defense" promised by Arch's policy necessarily includes Arch's obligation to pursue other available coverage such as that from Northland. Arch's interest is not just misaligned with its insured, but completely in opposition. Arch benefits if the other carrier denies coverage and has no interest in pursuing that other coverage as it would trigger its own. This is not a "one-sided" agreement but openly antagonistic to its insured. [5]

Arch's determination that AB Rehab failed to comply with the Arch Policy's conditions and exclusions relies on unconscionable policy provisions**.** As Arch concedes, its coverage determination solely relied on Northland's denial letter. *See* Arch's Motion to Dismiss, p. 9 (solely relying on Northland tender denial letter to support to proposition that the All Boro Entities did not comply with the requirements of the Arch Policy). The New York Limitation Endorsement permits Arch to escape its liability under the Policy based *solely* on another carrier's determination, whether such determination is correct under the other policy. It effectively incorporates the exclusions and limitations of subcontractor's policy into Arch's coverage. Arch need not determine if another subcontractor, whose policy does provide coverage, was available because it simply needs a single subcontract's carrier to deny invoking the clause.

Plaintiff's Complaint states sufficient facts to withstand Arch's Motion to Dismiss. Arch's coverage determination only relied on one basis- Northland's tender denial. That, alone, is not sufficient to preclude coverage under the Arch Policy's terms and conditions. Additional discovery is required to determine whether that coverage determination was proper.

---

[5] "It is difficult to get a man to understand something, when his salary depends on his not understanding it." Upton Sinclair, I Candidate for Governor: And How I Got Licked.

### C.     The New York Limitation Endorsement Renders the Coverage Illusory

The New York Limitation Endorsement renders the coverage provided by Arch illusory. Essentially, the Endorsement operates to preclude coverage by Arch if another carrier does not assume Arch's obligations. Therefore, there is never going to be any coverage by Arch as a result of this endorsement because either the other carrier assumes coverage if they accept the tender, or Arch denies coverage if they do not. *See e.g Thomas J. Lipton, Inc. v. Liberty Mut. Ins. Co.*, 34 N.Y.2d 356, 361 (1974). Here, no matter what occurs, Arch has  no coverage. This is not what an insured would reasonably expect would be the impact of an exclusion. Based on the expansive reading given to the clause by Arch, any bodily injury claim involving work where any subcontractor was even remotely involved would fall within this exclusion. Selling this coverage to contractors essentially eliminates all jobsite coverage.

### V.     ARCH WAS OBLIGATED TO DEFEND PLAINTIFF BASED ON THE FACTS ALLEGED IN THE COMPALINT

Arch was not relieved of its duty to defend based on the Northland tender denial letter. "In New York, an insurer's duty to defend is 'exceedingly broad' and distinct from the duty to indemnify. The duty to defend is measured against the allegations of pleadings but the duty to pay is determined by the actual basis for the insured's liability to a third person. The duty [to defend] remains even though facts outside the four corners of [the] pleadings indicate that the claim may be meritless or not covered. Thus, an insurer may be required to defend under the contract even though it may not be required to pay once the litigation has run its course." *See Euchner-USA, Inc. v. Hartford Cas. Ins. Co*., 754 F.3d 136, 140 (2d Cir. 2014) (internal quotations and citations omitted). An insurer is obligated to provide a defense whenever the allegations in the complaint suggest a reasonable possibility of coverage. *Id. citing Automobile Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131,137 (2006). Thus, "[i]f the allegations of the complaint are even potentially within the

language of the insurance policy, there is a duty to defend." *CGS Indus., Inc. v. Charter Oak Fire Ins. Co.*, 720 F.3d 71, 82-83 (2d Cir. 2013); *see also Striker Sheet Metal II Corp. v. Harleysville Ins. Co.*, 2018 U. S. Dist. LEXIS 15892, *22-23 (E.D.N.Y. Jan. 31, 2018).

Absent the denial by Northland, Arch owed an immediate duty to defend the Complaint when tendered. Arch was not "investigating" the facts to establish coverage but was tendering to Northland in the hope that it denied coverage so that it could deny coverage based on the failure of a condition. Even if Arch was not obligated to indemnify Plaintiff, it was required to, at a minimum, provide a defense based on the allegations of the complaint. Arch clearly acted against the interests of its insured based on its denial of coverage.

## VI.    PLAINTIFF REQUESTS PERMISSION TO REPLEAD

Plaintiff asserts that it stated enough facts to state a claim for which relief is plausible on its face, and therefore, this requests that this Court deny Arch's Motion to Dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To the extent that this Court finds that it has not met its pleading requirements, Plaintiff requests permission to amend its pleading pursuant to Fed. R. Civ. P. 15(a)(2). Fed. R. Civ. P. 15(a)(2) provides that the court should freely give leave when justice so requires.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Arch's Motion to Dismiss or grant its permission to replead.

Dated: New York, New York
April 21, 2023

Respectfully submitted,

**VOGRIN & FRIMET, LLP**

BY: _____

George J. Vogrin
150 Broadway, Suite 1200
New York, NY 10038
Tel: 212-513-1075
gvogrin@vogrinfrimet.com
*Attorneys for Plaintiff*