UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
JUAN CARLOS INTERIANO, *individually*,
and JUAN CARLOS INTERIANO, *as assignee
of All-Boro Rehab Construction Corp., All-
Boro Group, LLC, and All-Boro Construction
Group, Inc.*,

                          Plaintiffs,

               - against -

ARCH SPECIALTY INSURANCE CO.,

                        Defendant.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
23-CV-238 (PKC) (AYS)

PAMELA K. CHEN, United States District Judge:

On November 30, 2022, Plaintiff Juan Carlos Interiano ("Plaintiff" or "Interiano"), individually and as assignee of All-Boro Rehab Construction Corp. ("All-Boro Rehab"), All-Boro Group, LLC ("All-Boro Group"), and All-Boro Construction Group, Inc. ("All-Boro Construction") (collectively, the "All-Boro Entities"), commenced an action against Defendant Arch Specialty Insurance Company ("Defendant" or "Arch") in Nassau County Supreme Court, seeking a judgment against Defendant for its denial of coverage as to Plaintiff's assignors, the All-Boro Entities, in connection with an underlying personal injury action. Defendant timely removed the action to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, and subsequently filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). For the reasons that follow, the Court grants in part and denies in part Defendant's motion.

# BACKGROUND

I.      **Factual Allegations**[1]

A.      **The Accident and the Parties**

On February 6, 2017, Plaintiff was injured while working at a construction site located at 72-72 141st Street in Flushing, New York (the "Premises").  (Dkt. 1-1 at ECF 6 ¶ 12.)[2]  Jonathan and Henna Hoch (the "Owners") owned the Premises and had hired All-Boro Rehab as contractor. (*Id.* at ECF 25 ¶¶ 7–22; *see also id.* at ECF 6 ¶ 13.)  Plaintiff's employer, Drexler Land Development, Inc. ("Drexler"), had been hired to perform construction work at the Premises as a subcontractor.  (*Id.* at ECF 6 ¶¶ 17–19.)  All-Boro Rehab was insured under Arch Specialty Insurance Company Policy Number AGL0032630-01 (the "Arch Policy") (*id.* at ECF 5–6 ¶¶ 4, 14–16),[3] while Drexler was insured under Northland Insurance Company Insurance Policy Number WS201958 (the "Northland Policy") (*id.* at ECF 6 ¶ 18).[4]

B.      **The Arch Policy**

Under the Arch Policy, Arch agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which [the Policy] applies," and "to defend the insured against any 'suit' seeking those damages."  (Dkt. 15-4 at ECF

---

[1] The following facts are derived from the Complaint, the exhibits attached thereto, and the Arch Specialty Insurance Company Policy under which All-Boro Rehab was insured, which the Court deems integral to the Complaint.  *See infra* at 11–12.

[2] Citations to "ECF" refer to the pagination generated by the Court's electronic docketing system and not the document's internal pagination.

[3] As discussed in more detail below, the Complaint includes conflicting information about whether All-Boro Group and All-Boro Construction were also insured under the Arch Policy.  *See infra* at 16–18.

[4] The parties and Northland refer to Northland as both "Northfield" and "Northland."  (*See, e.g.*, Dkt. 1-1 at ECF 76–85.)  For consistency, the Court uses "Northland" throughout.

68.)  However, the Policy states that Arch "will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." (*Id.*)

The Arch Policy also contains numerous endorsements and exclusions.  Relevant here is the "New York Limitation Endorsement – Work Done on Your Behalf by Uninsured or Underinsured Subcontractors" (the "New York Limitation Endorsement" or "Endorsement"), which adds certain conditions and exclusions to the Policy.  (*Id.* at ECF 58–59.)  Part A adds conditions requiring All-Boro Rehab to: (1) "obtain agreements, in writing, from all 'subcontractors' . . . , pursuant to which the 'subcontractor(s)' will be required to defend, indemnify and hold [All-Boro Rehab] harmless . . . for any claim or 'suit' for 'bodily injury' . . . arising out of the work performed by the 'subcontractor'"; (2) obtain "from all 'subcontractors' prior to commencement of any work performed" "Certificates of Insurance for Commercial General Liability coverage . . . with limits equal to or greater than $1,000,000";  and (3) "be named as additional insured on all of the 'subcontractors' Commercial General Liability policy(ies)." (*Id.* at ECF 58.)  Part B provides:

> This insurance does not apply to any claim, "suit", demand or loss that alleges "bodily injury", including injury to any "worker" . . . that in any way, in whole or in part, arises out of, relates to or results from operations or work performed on [All-Boro Rehab's] behalf by a "subcontractor", unless such "subcontractor":
>
> 1. Has in force at the time of such injury or damage a Commercial General Liability insurance policy that:
>
>     a. names [All-Boro Rehab] and any other Named Insured as an additional insured;
>     b. provides an each-occurrence limit of liability equal to or greater than $1,000,000; and
>     c. provides coverage for [All-Boro Rehab] for such claim, "suit", demand or loss; and
>
> 2. Has agreed in writing to defend, indemnify and hold harmless [All-Boro Rehab]

. . . for any claim or "suit" for "bodily injury" to any "worker" arising out of the
work performed by such subcontractor, to the fullest extent allowed by law.

(*Id.* at ECF 58.)  The Endorsement's definition of "worker" encompasses "any 'employee[.]'" (*Id.*
at ECF 59.)

### C.     The Underlying Actions and Tenders of Defense and Indemnification

On February 18, 2017, Plaintiff filed suit against All-Boro Construction and the Owners in
the Supreme Court of the State of New York, County of Queens, under Index No. 702376/2017 to
recover for the injuries he sustained as a result of the February 6, 2017 worksite incident.  (Dkt.
1-1 at ECF 6 ¶ 20, ECF 22–34.)  After All-Boro Construction and the Owners failed to answer,
reply, or otherwise appear, Plaintiff moved for default judgment on May 12, 2017. (*Id.* at ECF 7 ¶
24, ECF 36–42.)  On December 12, 2017, Judge Thomas D. Raffaele granted a default judgment
in favor of Plaintiff against All-Boro Construction and scheduled a damages inquest.  (*Id.* at ECF
9 ¶ 35, ECF 97.)  The order notes that the parties had stipulated to the withdrawal of the motion as
to the Owners.  (*Id.* at 97.)  Subsequently, Plaintiff filed a stipulation of discontinuance as to the
Owners.  (*Id.* at ECF 9 ¶ 37, ECF 104.)

On May 30, 2017, while the motion for default judgment was pending, Arch sent a letter
to Northland Insurance Company ("Northland") concerning the action.  (Dkt. 1-1 at ECF 7 ¶ 25,
ECF 44–46.)  Identifying itself as "the General Liability carrier for [All-Boro Rehab]," Arch
informed Northland that All-Boro Rehab had hired Drexler to perform construction work at the
Site, and that Drexler's employee, Interiano, had been injured "when the president of Drexler
accidently struck [him] with an excavator."  (*Id.* at ECF 44.)  Arch then explained that while
Plaintiff had filed suit against All-Boro Construction and the Owners, its investigation had
confirmed that "all the permits and contracts were issued to [All-Boro Rehab]" and that [Plaintiff]
had "improperly named [All-Boro Construction]."  (*Id.*)  The letter further explained that Arch's

"investigation reveals that Drexler was contractually obligated to procure primary, non-contributory additional insurance coverage on behalf of [All-Boro Rehab and the Owners] and is also required to defend and indemnify [All-Boro Rehab and the Owners] against any and all loss, liability, claims, damages, suits, expenses or counsel fees arising there from, as required in Drexler's contract with [All-Boro Rehab]."  (*Id.* at ECF 44–45.)  Finally, the letter stated: "It is [] [Arch's] position that [Northland] has a duty to defend [All-Boro Rehab] and the [O]wners as indemnitees under Drexler's policy."  (*Id.* at ECF 45.)

Northland responded to Arch's letter on June 23, 2017.  (*Id.* at ECF 7 ¶ 28, ECF 54–63.) The letter explained that while "All Boro" would qualify as an additional insured under the Northland Policy, there was no coverage for the claim at issue due to various policy exclusions. (*Id.* at ECF 54–63.)  One such provision limits the insurance's application to liability for "'bodily injury' . . . for which the insured is obligated to pay as damages by reason of the assumption of liability in a contract" in most circumstances.  (*Id.* at ECF 55–56 (noting that "[t]here is no coverage under the policy for the contractual liability claim being made against Drexler . . . based upon the contractual liability exclusion").)   Two other exclusions preclude coverage for bodily injuries sustained by Drexler's employees "arising out of and in the course of" their employment or "[p]erforming duties related to the conduct of the named insured's business[.]"  (*Id.* at ECF 59–62.)  As such, the Northland letter explained, coverage was precluded "[t]o the extent the claimed 'bodily injury' is to an 'employee' of [Drexler] arising out of and in the course of employment with [Drexler] or performing duties related to the conduct of [Drexler's] business[.]"  (*Id.* at ECF 59; *see also id.* at ECF 61.)  Finally, Northland noted that the policy only covered damages arising out of "Driveway, Parking Area or Sidewalk – paving or repaving" classifications, which further rendered the policy inapplicable.  (*Id.* at ECF 62.)

On July 20, 2017, Arch sent a letter to All-Boro Rehab and All-Boro Construction, stating that it had "reviewed [the] claim and [] determined that no coverage is available for All Boro, All Boro Construction or any purported additional insureds under All Boro's policy with Arch."[5] (Dkt. 1-1 at ECF 87; *see also id.* at ECF 8 ¶ 32 (alleging that "[i]n the July 20, 2017 letter correspondence . . . [Arch] denied its duty to defend and/or indemnity [sic] [All-Boro Rehab] and/or [All-Boro Construction").) The letter explained that "[a] review of the Arch Policy reveals that [All-Boro Construction] is not a Named Insured and does not qualify as a Named Insured." (*Id.* at ECF 93.) As such, "there is no coverage for [All-Boro Construction] under the Arch Policy." (*Id.*) The letter continues:

> Arch's investigation reveals that [Interiano] was an employee of All Boro's sub, Drexler. . . . Drexlers' [sic] Commercial General Liability Carrier, Northland[,] . . . has denied our tender requesting coverage under the Drexler policy. It is clear at this point that the conditions of the New York Limitation Endorsement . . . were not met[,] therefore there is no coverage for this matter under the Arch Policy.
>
> Although there is no formal suit pending against All Boro at this time, should one be presented, Arch would likely have no duty to defend or have any obligation to indemnify All Boro in this matter under the Arch Policy based on the New York Limitation Endorsement. . . . Should suit be filed against All Boro we request that you forward all applicable legal documents to Arch so we can review the pleadings and supplement our coverage position if necessary. To the extent you provide such information and documents, Arch reserves the right to alter, modify or otherwise supplement is [sic] coverage position should such addition [sic] information so warrant.

---

[5] In the letter, Arch indicates that it will refer to All-Boro Rehab as "All-Boro" and All-Boro Construction as "All Boro Construction." (*Id.* at ECF 87.) Nevertheless, there are portions of the letter that refer to "All Boro," presumably in reference to All-Boro Rehab. (*Id.*) In his opposition to the motion to dismiss, Plaintiff seems to indicate that this discrepancy renders the July 2017 letter ambiguous. (*See* Pl.'s Mem. of L. in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Br."), Dkt. 16, at 4.) Likewise, Plaintiff argues that Northland's reference to "All Boro" is a clear reference to All-Boro Construction, as opposed to All-Boro Rehab. (*Id.*) Thus, Plaintiff contends, Arch's statement that Northland denied coverage to All-Boro Rehab is incorrect. (*Id.* at 4.) However, this is a factual dispute that the Court cannot resolve on a motion to dismiss.

(*Id.* at ECF 93.)  Arch reaffirmed its basis for disclaiming coverage in a letter sent to the Owners' insurer on September 11, 2018.  (*Id.* at ECF 99–102.)

On October 3, 2019, Plaintiff filed a second action in the Supreme Court of the State of New York, County of Queens, under Index No. 716989/2019.  (*Id.* at ECF 9 ¶¶ 39–40.)  The complaint named All-Boro Rehab and All-Boro Group as defendants, but otherwise is virtually identical to that filed in the initial action.  (*Id.* (alleging that the complaint was filed to name All-Boro Rehab and All-Boro Group as defendants); *see also id.* ECF 24–34 (complaint in first underlying action); *id.* at ECF 106–16 (complaint in second underlying action).)  In January 2020, the actions were consolidated under Index No. 702376/2017 (hereinafter, the "Underlying Action").  (*Id.* at ECF 9 ¶ 41.)

Prior to the consolidation, on October 17, 2019, Plaintiff's counsel sent a letter tendering the defense and indemnity obligations for the October 2019 lawsuit to Arch and Armour, Arch's third-party administrator. (*Id.* at ECF 10 ¶ 44, ECF 135–53.)  On December 10, 2019, Armour responded to Plaintiff's counsel, stating that "Arch has disclaimed coverage and denied liability as to the claims asserted against [All-Boro Group] on the ground that it is not an insured on the subject policy." (*Id.* at ECF 10 ¶¶ 48–59, ECF 153.)  On January 20, 2020, Armour sent a letter concerning All-Boro Rehab, advising that "Arch has disclaimed coverage and denied liability as to the claims asserted against [All-Boro Rehab] in accordance with terms of the . . . New York Limitation Endorsement[.]"  (*Id.* at ECF 11 ¶¶ 51–53, ECF 156.)  Then, in February 2020, the All-Boro Entities assigned all rights to Plaintiff relating to claims in his underlying personal injury action, "including any judgments obtained by Interiano that the [All-Boro Entities], may have, or could have against [Arch] with respect to the Policy."  (*Id.* at ECF 13 ¶ 69, ECF 202–07 (assignment agreement).)

7

Following two damages inquests (*id.* at ECF 11 ¶ 55, ECF 160–80, 182), in July 2022, Plaintiff was awarded $1,500,000 in damages "for his past and future pain and suffering and his past and future lost wages" (*id.* at ECF 183). On August 18, 2022, judgment was entered in Queens County Supreme Court against the All-Boro Entities in the sum of $2,248,423.42. (*Id.* at ECF 185–86.) Plaintiff's counsel served the All-Boro Entities, Armour, Arch, and Northland with a copy of the judgment on August 25, 2022. (*Id.* at ECF 16 ¶¶ 92–93, ECF 190.) The judgment remained unsatisfied as of November 30, 2022. (*Id.* at ECF 13 ¶ 68.)

## II.    Procedural History

On November 30, 2022, Plaintiff, on behalf of himself and as assignee of the All-Boro Entities, commenced the present action against Defendant Arch in Nassau County Supreme Court under Index No. 616823/2022. (*See generally* Dkt. 1-1 at ECF 2–20.) Plaintiff asserts three causes of action against Arch: (1) breach of contract; (2) violation of New York Insurance Law Section 3420(a)(2); and (3) breach of implied covenant of good faith and fair dealing. (*See generally id.*)

After being served on December 14, 2022 (Dkt. 1-2 at ECF 2–3), Defendant removed the action to this Court by timely filing a notice of removal on January 13, 2023 (*see* Dkt. 1). On February 10, 2023, Defendant filed a pre-motion conference ("PMC") letter requesting to file a motion to dismiss. (Dkt. 9.) Plaintiff responded to Defendant's PMC request on February 17, 2023. (Dkt. 10.) Subsequently, the Court denied Defendant's PMC request as unnecessary and granted Defendant leave to file its anticipated motion. (*See* 3/8/2023 Docket Order.) The motion was fully briefed as of April 28, 2023. (*See* Dkts. 15–17.)

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). "In addressing the sufficiency of a complaint, [the court] accept[s] as true all factual allegations and draw[s] from them all reasonable inferences; but [the court is] not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). "Dismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000).

"The question on a motion to dismiss 'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *LM Ins. Corp. v. James River Ins. Co.*, No. 22-CV-7472 (ER), 2023 WL 5509264, at *3 (S.D.N.Y. Aug. 25, 2023) (quoting *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012)). When considering a Rule 12(b)(6) motion, the court must "test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief *without* resolving a contest regarding its substantive merits." *Glob. Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 155 (2d Cir. 2006). As such, courts typically "do not consider matters outside the pleadings in deciding a motion to dismiss for failure to state a claim." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*,

723 F.3d 192, 202 (2d Cir. 2013); *see also Goel v. Bunge, Ltd.*, 820 F.3d 554, 558–59 (2d Cir.

2016) ("Because a Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff,

taking no account of its basis in evidence, a court adjudicating such a motion may review only a

narrow universe of materials.").  However, in addition to the facts alleged in the complaint, the

court may also consider documents that are appended to the complaint, incorporated in the

complaint by reference, or integral to the complaint, as well as matters of which judicial notice

may be taken.  *Goel*, 820 F.3d at 559.  If the court considers any *extrinsic* material beyond the

aforementioned exceptions, "the motion shall be treated as one for summary judgment and

disposed of as provided in [Federal Rule of Civil Procedure] 56, and all parties shall be given a

reasonable opportunity to present all material made pertinent to such a motion . . . ." *Chambers v.

Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (emphasis added) (quoting Fed. R. Civ. P.

12(b)); *see also Nakahata*, 723 F.3d at 202–03 ("As indicated by the word 'shall,' the conversion

of a Rule 12(b)(6) motion into one for summary judgment under Rule 56 when the court considers

matters outside the pleadings is strictly enforce[d] and mandatory." (quoting *Glob. Network

Commc'ns, Inc.*, 458 F.3d at 155)).

## DISCUSSION

### I.    Materials Considered

As a threshold matter, the Court must determine which of the materials supplied by the

parties the Court should consider in deciding Defendant's motion.  In support of its motion to

dismiss, Defendant has submitted an attorney declaration with the following exhibits attached: (1)

the construction contract between the Owners and All-Boro Rehab (the "Construction Contract"),

dated October 1, 2016; (2) the Complaint; (3) the Arch Policy; and (4) Raymond Ardito's January

10, 2020 Affirmation (the "Ardito Affirmation") in Support of Juan Carlos Interiano's Motion for

10

a Default Judgment against All-Boro Rehab and All-Boro Group, which was previously filed in one of Plaintiff's underlying state court actions. (*See* Dkts. 15-1 to 15-5.)  Plaintiff objects to the consideration of any material other than the Complaint and argues that it would be inappropriate and prejudicial to convert the present motion to one for summary judgment prior to discovery. (Pl.'s Br. at 10.)

The Court finds that the Arch Policy is "integral" to the Complaint and thus appropriate to consider in adjudicating Defendant's motion.  A document is "integral" to the complaint where the complaint "relies heavily upon its terms and effect."  *Chambers*, 282 F.3d at 153 (internal quotation marks omitted) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)).  Here, the Arch Policy is referenced in the Complaint and is quoted extensively in numerous exhibits attached thereto.  *See, e.g.*, *id.* at 153 & 153 n.4 (concluding that contracts were "integral" to complaint where the complaint was "replete with references to the contracts and request[ed] judicial interpretation of their terms"); *see also Glob. Network Commc'ns, Inc.*, 458 F.3d at 157 ("In most instances where [the integral-to-complaint] exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls . . . .").  Indeed, the Arch Policy is "of vital importance to the Complaint" because "it is the document from which [Arch's] liability is alleged to rise."  *Pearson Cap. Partners LLC v. James River Ins. Co.*, 151 F. Supp. 3d 392, 402 (S.D.N.Y. 2015) (finding insurance policy "integral" to complaint because "the dispute between the [p]arties centers around whether the terms of the [p]olicy provide coverage to [p]laintiffs under the circumstances alleged").  Not only is the Arch Policy core to the dispute, but it is also the purported source of the rights assigned to Plaintiff.  Plaintiff cannot reasonably dispute that he had "actual notice" of the policy and "relied" on it in framing the Complaint, nor does he challenge the

authenticity of the policy Defendant attached.  *See Serrata v. Givens*, No. 18-CV-2016 (ARR), 2019 WL 1597297, at *3 (E.D.N.Y. Apr. 15, 2019); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("[E]ven if a document is integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." (internal quotation marks omitted)).  The Court therefore considers the Arch Policy in deciding this motion.

In addition, the Court may take judicial notice of the fourth exhibit, the Ardito Affirmation, for the limited purpose of establishing the fact of Plaintiff's personal injury litigation that resulted in the judgment that Plaintiff is seeking to enforce.  "[M]atters of which the Court takes judicial notice are not considered matters outside the pleadings; the Court may therefore consider them when adjudicating a motion to dismiss without converting the motion to dismiss into a motion for summary judgment."  *Pearson Cap. Partners LLC*, 151 F. Supp. 3d at 401.  However, the Court may only consider the Ardito Affirmation "to establish the fact of such litigation and related filings," "not for the truth of the matters asserted in the other litigation."  *Id.* (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)).

On the other hand, the Court declines to consider the Construction Contract, which is not explicitly referenced or quoted, nor relied upon, in the Complaint.  While it is possible that Plaintiff had notice of or even possessed the Construction Contract, "mere notice or possession is not enough."  *Pearson Cap. Partners LLC*, 151 F. Supp. 3d at 400.  Rather, "[a] plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion."  *Id.*  Because the Complaint does not mention or otherwise reference the Construction Contract, the Court cannot say that Plaintiff relied on the terms and effect of the Construction Contract when drafting the Complaint.  *See, e.g.*, *Christopher v. Glob. Aerospace, Inc.*, No. 21-CV-4453 (DG) (RER), 2022 WL 17775498, at *1

n.2 (E.D.N.Y. Aug. 5, 2022) (declining to consider document that was mentioned in one exhibit to the complaint because it "does not appear to have been relied upon in drafting the [c]omplaint, and therefore cannot be considered 'integral'").  Accordingly, the Court will not consider the Construction Contract in deciding the present motion.

Finally, the Court declines to convert Defendant's motion to dismiss into a motion for summary judgment.  "Conversion to a summary judgment motion is generally not appropriate unless the parties have had 'the opportunity to conduct appropriate discovery and submit additional supporting materials.'"  *LM Ins. Corp.*, 2023 WL 5509264, at *3 (quoting *Korova Milk Bar of White Plains, Inc. v. PRE Props., LLC*, No. 11-CV-3327 (ER), 2013 WL 417406, at *6 (S.D.N.Y. Feb. 4, 2013)).  Because it is unclear whether the parties have conducted any discovery in this case (*see* 3/27/2023 Docket Order (adjourning initial conference pending the resolution of Defendant's motion to dismiss)); 6/16/2023 Docket Order (same); 12/14/2023 Docket Order (same)), conversion would be inappropriate at this juncture.  *See LM Ins. Corp*, 2023 WL 5509264, at *4.

## II.  Defendant Arch's Motion to Dismiss

Plaintiff asserts three causes of action against Arch.  First, a breach of contract claim based on Arch's denial of coverage to the All-Boro Entities.  (Dkt. 1-1 at ECF 13–15 ¶¶ 70–86.)  As part of this claim, Plaintiff also asserts that Arch violated New York Insurance Law Section 3420(d)(2) by failing to "give written notice of the denial of coverage as soon as was reasonably possible." (*Id.* at ECF 13–14 ¶¶ 79–80.)  Plaintiff's second cause of action is a claim under New York Insurance Law Section 3420(a)(2) for the outstanding judgment.  (*Id.* at ECF 15–16 ¶¶ 87–95.) Third, Plaintiff alleges that Arch breached the implied covenant of good faith and fair dealing by denying coverage to and failing to defend and indemnify the All-Boro Entities in the Underlying Action.  (*Id.* at 16–19 ¶¶ 96–114.)

Defendant Arch moves to dismiss Plaintiff's Complaint in the entirety.  First, Defendant argues that the Arch Policy does not cover the All-Boro Entities for liability stemming from Plaintiff's injuries.   (Def.'s Mem. of L. in Support of Mot. to Dismiss, Dkt. 15-6 (hereinafter "Def.'s Br."), at 6–10.)  Second, Defendant argues that it issued a timely denial as to both All-Boro Rehab and All-Boro Construction.  (*Id.* at 10–13.)   Finally, Defendant accuses Plaintiff of "procedural maneuvering" to vitiate Arch's denial of coverage to All-Boro Rehab.  (*Id.* at 13–17.)[6]

### A.   New York Insurance Law

#### 1.   Section 3420(a)(2)

New York Insurance Law Section 3420(a)(2) "allows an injured party with an unsatisfied judgment against an insured party to sue the insurer for satisfaction of the judgment in some circumstances." *Cont'l Ins. Co. v. Atl. Cas. Ins. Co.*, 603 F.3d 169, 174 (2d Cir. 2010).  Prior to filing suit, the injured party must "obtain a judgment against the tortfeasor, serve the insurance company with a copy of the judgment[,] and await payment for 30 days."  *Commonwealth Land Title Ins. Co. v. Am. Signature Servs., Inc.*, No. 13-CV-3266 (JFB) (WDW), 2014 WL 672926, at *5 (E.D.N.Y. Feb. 20, 2014) (quoting *Lang v. Hanover Ins. Co*, 820 N.E.2d 855, 858 (N.Y. 2004)). "Once the statutory prerequisites are met, the injured party steps into the shoes of the tortfeasor and can assert any right of the tortfeasor-insured against the insurance company."  *Lang*, 820 N.E.2d at 858.  However, the injured party's "rights are no greater or less than those of the insured debtor, and recovery cannot exceed the policy limits."  *Cont'l Ins. Co.*, 603 F.3d at 179 (quoting *McCormick & Co., Inc. v. Empire Ins. Grp.*, 878 F.2d 27, 29 (2d Cir. 1989)); *see also, e.g.*, *id.*

---

[6] Whether or not Plaintiff engaged in "procedural maneuvering" is a factual dispute that the Court cannot resolve on a motion to dismiss.  As such, the Court does not address this argument.

(affirming district court's finding that injured party could not bring Section 3420(a)(2) claim where "the casualty that occurred was specifically excluded from coverage under th[e] policy").

>       2.       Section 3420(d)(2)

New York Insurance Law Section 3420(d)(2) provides:

> If under a liability policy issued or delivered in this state, an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within this state, it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant.

N.Y. Ins. Law § 3420(d)(2).  "If an insurance carrier does not disclaim coverage in a timely fashion, it is precluded from arguing in court that a claim is excluded from coverage." *Maxum Indem. Co. v. Oxford Interior Corp.*, 443 F. Supp. 3d 348, 351 (E.D.N.Y. 2020) (citing *NGM Ins. Co. v. Blakely Pumping, Inc.*, 593 F.3d 150, 153 (2d Cir. 2010)).  Although timely disclaimer "is required when a claim fails within the coverage terms but is denied based on a policy exclusion," "[a] disclaimer is unnecessary when a claim does not fall within the coverage terms of an insurance policy."  *Markevics v. Liberty Mut. Ins. Co.*, 761 N.E.2d 557, 559–60 (N.Y. 2001) (holding that disclaimer under Section 3420(d) was required where denial of coverage was based solely on an exclusion); *see also Worcester Ins. Co. v. Bettenhauser*, 734 N.E.2d 745, 747 (N.Y. 2000) ("Disclaimer pursuant to [S]ection 3420(d) is unnecessary when a claim falls outside the scope of the policy's coverage portion. Under those circumstances, the insurance policy does not contemplate coverage in the first instance, and requiring payment of a claim upon failure to timely disclaim would create coverage where it never existed.").

>    **B.       Whether the Arch Policy Covers the All-Boro Entities**

Defendant Arch argues that none of the three All-Boro Entities are covered by the Arch Policy.  The basis of this argument varies as to the different entities.

1.    All-Boro Group and All-Boro Construction

Defendant argues that neither All-Boro Group nor All-Boro Construction are insured under the Arch Policy. (Def.'s Br. at 6.) As such, Defendant contends that those entities are "not entitled to coverage under the Policy" and "Arch never had an obligation to disclaim as to them." (*Id.*) The Court agrees.

Although Plaintiff alleges that All-Boro Group and All-Boro Construction were insured under the Arch Policy (*see* Dkt. 1-1 at ECF 5 ¶ 4, ECF 6 ¶¶ 14–16), this is contradicted by the Policy itself as well as numerous exhibits attached to the Complaint. Neither entity is referenced in the Arch Policy. (*See generally* Dkt. 15-4.) Nor does there appear to be any endorsements or policy language that add either entity as a named or additional insured. (*Id.*) Furthermore, Arch repeatedly states that neither All-Boro Group and All-Boro Construction are insured under the Arch Policy in its communications with the parties and their respective insurers in connection with the Underlying Action, many of which are attached to the Complaint as exhibits. (Dkt. 1-1 at ECF 93 ("A review of the Arch Policy reveals that All Boro Construction is not a Named Insured and does not qualify as a Named Insured. Therefore there is no coverage for All Boro Construction under the Arch Policy."); *id.* at ECF 153 ("Please be advised that Arch has disclaimed coverage and denied liability as to the claims asserted against All Boro Group LLC on the ground that it is not an insured on the subject policy entitled to coverage thereunder.").)

Based on the foregoing, the Court need not accept as true the Complaint's allegations that All-Boro Construction and All-Boro Group are covered by the Arch Policy. *Allah v. City of N.Y.*, Nos. 15-CV-6852 (CBA) (LB), 16-CV-333 (CBA) (LB), 2019 WL 6875410, at *5 (E.D.N.Y. Dec. 17, 2019) (declining to accept allegations in complaint as true where allegations were contradicted by the material that the complaint was based upon); *TufAmerica, Inc. v. Diamond*, 968 F. Supp.

2d 588, 592 (S.D.N.Y. 2013) (Nathan, J.) ("If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." (quoting *Poindexter v. EMI Rec. Grp. Inc.*, No. 11-CV-559 (LTS), 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012))); *Koulkina v. City of N.Y.*, 559 F. Supp. 2d 300, 314 (S.D.N.Y. 2008) ("[T]he [c]ourt is not obliged to reconcile plaintiff's own pleadings that are contradicted by other matter asserted or relied upon or incorporated by reference by a plaintiff in drafting the complaint." (cleaned up) (quoting *Fisk v. Letterman*, 401 F. Supp. 2d 362, 368 (S.D.N.Y.2005))); *Sazerac Co., Inc. v. Falk*, 861 F. Supp. 253, 257 (S.D.N.Y.1994) ("[I]f the allegations of a complaint are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the complaint."). Despite Defendant's opening brief arguing that neither All-Boro Construction nor All-Boro Group were covered under the Arch Policy (Def.'s Br. at 6), Plaintiff fails to offer any arguments in response, let alone identify any policy language or endorsements that could apply. (*See generally* Pl.'s Br.) Indeed, Plaintiff does not meaningfully respond to *any* of Defendant's arguments concerning All-Boro Group and All-Boro Construction, which is telling. (*See generally id.*)

In short, Plaintiff has failed to plausibly allege that All-Boro Construction and All-Boro Group were covered by the Arch Policy, which means Arch had no duty to defend either entity, nor any duty to provide or disclaim coverage. *See, e.g.*, *Moleon v. Kreisler Borg Florman Gen. Const. Co.*, 758 N.Y.S.2d 621, 623 (N.Y. App. Div. 2003) ("A party that is not named an insured or additional insured on the face of the policy is not entitled to coverage[.]" (citations omitted)); *Zappone v. Home Ins. Co.*, 432 N.E.2d 783, 786 (N.Y. 1982) (concluding that timely disclaimer requirement was not intended to bring within an insurance policy a liability incurred by someone

other than the insured).   Likewise, Plaintiff does not plausibly allege that either All-Boro Construction or All-Boro Group had any rights to assign him in the first place.

As such, Plaintiff's claims must be dismissed to the extent that they relate to Arch's purported coverage of All-Boro Construction and All-Boro Group.

> 2.   All-Boro Rehab

Although All-Boro Rehab *is* named as an insured under the Arch Policy, Defendant argues that the Policy does not cover All-Boro Rehab for liability stemming from Plaintiff's injury for two reasons.   First, Defendant asserts that All-Boro Rehab's failure to satisfy the conditions precedent set forth in the New York Limitation Endorsement for obtaining coverage from its subcontractors, *see supra* at 3, rendered the February 6, 2017 incident outside the Policy's scope of coverage (*see* Def.'s Br. at 7–9).   Second, Defendant contends that All-Boro Rehab's claims regarding Plaintiff's injuries fall within the policy exclusions set forth in the New York Limitation Endorsement.   (*See id.* at 9–10); *supra* at 3–4.   In response, Plaintiff argues that Defendant is precluded from denying coverage as to All-Boro Rehab because its disclaimer failed to comply with Section 3420(d)(2).   (Pl.'s Br. at 12–17.)

Regarding Defendant's first argument, "[a] condition precedent is an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises." *Oppenheimer & Co., Inc. v. Oppenheim, Appel, Dixon & Co.*, 660 N.E.2d 415, 418 (N.Y. 1995) (internal quotation marks omitted).   In some instances, courts have found that an insured's failure to perform a condition precedent under an insurance policy renders coverage under that policy unavailable.   For example, in *Sena v. Nationwide Mutual Fire Insurance Co.*, the insurance policy at issue required the plaintiffs to insure their property to 100 percent of its actual replacement value.   637 N.Y.S.2d 485, 486–87 (N.Y. App. Div. 1996).

Because the plaintiffs failed to offer any evidence that they complied with this condition precedent, the court affirmed the entry of summary judgment in the insurer's favor. *Id.* In reaching this decision, the court noted that the plaintiffs "impermissibly [sought] to create coverage by estoppel" by arguing that the insurer should be precluded from raising this defense for procedural reasons. *Id.*; *see also, e.g.*, *Sulner v. G.A. Ins. Co. of N.Y.*, 637 N.Y.S.2d 144, 145 (N.Y. App. Div. 1996) (citing *Oppenheimer & Co., Inc.*, 660 N.E.2d at 418) ("Since plaintiff has conceded that she failed to perform a condition precedent under the insurance policy, she is not entitled to collect for any loss to the valuable documents . . . ."); *Charney v. Commonwealth Land Title Ins. Co.*, 625 N.Y.S.2d 911, 911 (N.Y. App. Div. 1995) ("Plaintiff mortgagee may not recover damages under a mortgage insurance policy where the conditions precedent to coverage have not been met.").

The Court cannot find that All-Boro Rehab failed to satisfy the conditions precedent set forth in the New York Limitation Endorsement based on the allegations in the Complaint.   As noted, the Endorsement's conditions required All-Boro Rehab to: (1) "obtain agreements, in writing, from all 'subcontractors' . . . , pursuant to which the 'subcontractor(s)' will be required to defend, indemnify and hold [All-Boro Rehab] harmless . . . for any claim or 'suit' for 'bodily injury' . . . arising out of the work performed by the 'subcontractor'"; (2) obtain "from all 'subcontractors' prior to commencement of any work performed" "Certificates of Insurance for Commercial General Liability coverage . . . with limits equal to or greater than $1,000,000";  and (3) "be named as additional insured on all of the 'subcontractors' Commercial General Liability policy(ies)." (Dkt. 15-4 at ECF 58.)  Defendant argues that Northland's denial of coverage is proof of All-Boro Rehab's failure to satisfy these conditions, but the Court does not agree. (*See* Def.'s Br. at 7–9.)  Just because Drexler's insurance did not cover Plaintiff's injuries does not mean that Drexler did not *agree* to defend, indemnify, and hold All-Boro Rehab harmless for such injuries.

At most, the Northland denial merely gives rise to the inference that Drexler might not have had the necessary insurance for it to perform its obligations under such an agreement with All-Boro Rehab.  While this fact might ultimately support the conclusion that All-Boro Rehab failed to comply with the Endorsement conditions, without other allegations or evidence, the Court cannot reach this conclusion at this stage of the proceeding.  Moreover, Northland's denial suggests that the third condition—that All-Boro Rehab be named as an additional insured—was satisfied.  (Dkt. 1-1 at ECF 54–63 (explaining that All-Boro Rehab would qualify as an additional insured under the Northland Policy).)  As such, Defendant's motion to dismiss on the basis that All-Boro Rehab failed to satisfy the conditions precedent in the New York Limitation Endorsement must be denied.  *See LM Ins. Corp.*, 2023 WL 5509264, at *4 (denying motion to dismiss that invoked the same endorsement because the allegations did not support defendant's contention that the terms of the endorsement were not satisfied and, as such, the court could not find "as a matter of law that the Arch Policy provide[d] no coverage").

Defendant's argument that All-Boro Rehab's claims fall within the exclusions set forth in the New York Limitation Endorsement fails for another reason.  Assuming without deciding that All-Boro Rehab's conduct triggered the exclusionary language set forth in Part B of the New York Limitation Endorsement, Defendant was still required to timely disclaim coverage in a manner consistent with Section 3420(d)(2).  *See supra* at 15; *see also, e.g.*, *Markevics*, 761 N.E.2d at 559–60.   While Defendant contends that its July 20, 2017 letter unequivocally denied defense and indemnification to *both* All-Boro Rehab and All-Boro Construction (*see* Def.'s Br. at 10; *see also* Def.'s Reply in Supp. of Mot. to Dismiss, Dkt. 17, at 9), Plaintiff argues that the July 20, 2017 letter "failed to comply with the specificity requirements under Section 3420" because it "left open the clear possibility coverage would be available if a lawsuit was filed against [All-Boro] Rehab[.]"

(Pl.'s Br. at 12–15.)  Plaintiff further argues that the only disclaimer as to All-Boro Rehab—the January 20, 2020 letter—was untimely, since it arrived nearly 95 days after Plaintiff's tender, and was also improper in that it did not notify All-Boro Rehab of the disclaimer.  (*Id.* at 16.)

Whether a disclaimer is timely "almost always presents a factual question, requiring an assessment of all relevant circumstances surrounding a particular disclaimer, and those cases in which the reasonableness of an insurer's delay may be decided as a matter of law are exceptions and present extreme circumstances." *Century Sur. Co. v. EM Windsor Constr. Inc.*, No. 16-CV-4196 (PAE), 2017 WL 5952706, at *9 (S.D.N.Y. Nov. 29, 2017) (internal quotation marks and citation omitted).   Under New York law, "the timeliness of an insurer's disclaimer is measured *from the point in time when the insurer first learns of the grounds* for disclaimer of liability or denial of coverage." *Pearson Cap. Partners LLC*, 151 F. Supp. 3d at 406–07 (quoting *George Campbell Painting v. Nat'l Union Fire Ins. Co.*, 937 N.Y.S.2d 164, 172 (N.Y. App. Div. 2012)). Moreover, pursuant to Section 3420(d)(2), "any notice disclaiming coverage must be unequivocal, unambiguous, and properly served." *Phila. Indem. Ins. Co. v. Intrepid Grp., LLC*, No. 16-CV-7928 (JGK), 2018 WL 1517199, at *6 (S.D.N.Y. Mar. 26, 2018) (citing *U.S. Fid. & Guar. Co. v. Treadwell Corp.*, 58 F. Supp. 2d 77, 90 (S.D.N.Y. 1999)).   A reservation of rights letter is insufficient to satisfy the disclaimer requirement.  *Id.*

"Drawing all reasonable inferences in favor of Plaintiff at this stage," the Court cannot find, as a matter of law, that the July 2017 letter disclaimed coverage as to All-Boro Rehab "with a high degree of specificity, as required under New York law." *Travelers Indem. Co. v. U.S. Fire Ins. Co.*, No. 22-CV-6440 (MKV), 2024 WL 295355, at *4 (S.D.N.Y. Jan. 25, 2024) (internal quotation marks omitted) (quoting *Gen. Acc. Ins. Group v. Cirucci*, 387 N.E.2d 223, 225 (N.Y. 1979)).  Although courts have found disclaimers effective despite the inclusion of reservation-of-

rights language, *see, e.g.*, *QBE Ins. Corp. v. Jinx-Proof Inc.*, 6 N.E.3d 583, 584 (N.Y. 2014), here, the Court finds that this language introduces ambiguity with respect to the sufficiency of the July 2017 letter as a disclaimer.  Similarly, although there is no "requirement that a disclaimer of coverage be preceded by a tender for the disclaimer to be valid," *Maxum Indem. Co.*, 443 F. Supp. 3d at 352, the Court finds that the fact that no suit was pending against All-Boro Rehab adds to the uncertainty of whether the July 2017 letter was a disclaimer.  In combination, these facts prevent the Court from concluding that Defendant's July 2017 letter satisfied Section 3420(d)(2)'s requirement that "any notice disclaiming coverage . . . be unequivocal, unambiguous, and properly served."  *Phila. Indem. Ins. Co.*, 2018 WL 1517199, at *6.  The Court further notes that the Arch Policy requires the insured to notify Defendant of any "'occurrence' or [] offense which may result in a claim," and separately requires the insured to notify Defendant if "a claim is made or 'suit' is brought against any insured."  (Dkt. 15-4 at ECF 77–78.)  Given that the insured is required to notify Defendant of both "occurrences" and "suits," it would make sense that Defendant would have the corresponding duty to disclaim in both scenarios.  *See Spoleta Const., LLC v. Aspen Ins. UK Ltd.*, 991 N.Y.S.2d 183, 185 (N.Y. App. Div. 2014) (concluding that because the terms "occurrence," "claim," and "suit" were "separately used in the policy," "each term must be deemed to have some meaning" and distinguishing between notice of "occurrence" versus notice of a "claim" or "suit" (internal quotation marks and citation omitted)), *aff'd*, 50 N.E.3d 222 (N.Y. 2016).

Additionally, given that Defendant allegedly knew the grounds for its disclaimer as to All-Boro Rehab as early as July 2017, the Court cannot find that the January 20, 2020 letter, which was not received until 95 days after Plaintiff's tender, satisfied the timeliness requirement under Section 3420(d)(2).  *Century Sur. Co.*, 2017 WL 5952706, at *9 (explaining that whether a

disclaimer is timely "almost always presents a factual question"), *Pearson Cap. Partners LLC*, 151 F. Supp. 3d at 406–07 ("[T]he timeliness of an insurer's disclaimer is measured *from the point in time when the insurer first learns of the grounds* for disclaimer of liability or denial of coverage." (quoting *George Campbell Painting*, 937 N.Y.S.2d at 172)).   There is nothing before the Court that explains why Defendant waited so long to respond to Plaintiff's October 2019 tender.   Here, because the allegations before the Court are insufficient to assess the timeliness of Defendant's January 20, 2020 disclaimer, the Court cannot dismiss Plaintiff's claims based on Defendant's January 20, 2020 disclaimer of coverage.[7]   Furthermore, the fact that Defendant had Armour send a disclaimer notice to All-Boro Rehab in January 2020 suggests that Defendant itself did not believe that it had disclaimed coverage through its January 2017 letter.

As such, Plaintiff's claims related to Defendant's coverage of All-Boro Rehab will proceed.

## CONCLUSION

For the reasons set forth above, Defendant Arch's motion to dismiss is granted in part and denied in part.   The Court dismisses all claims as they relate to Defendant's purported coverage of All-Boro Group and All-Boro Construction.   Plaintiff's claims based on Arch's coverage of All-

---

[7] Plaintiff also argues that the New York Limitation Endorsement is ambiguous, unconscionable, and renders the policy illusory. (Pl.'s Br. at 17–22); *see also Lighton Indus., Inc. v. Allied World Nat'l Assurance Co.*, 348 F. Supp. 3d 167, 184 (E.D.N.Y. 2018) ("Under New York law, an insurer has a duty to defend so long as there is any possibility of coverage under the relevant insurance policy, . . . and the duty to defend is exceedingly broad." (cleaned up) (internal quotation marks and citation omitted)).   Because the Court denies Defendant's motion without deciding that the New York Limitation Endorsement applies, the Court finds that Plaintiff's arguments concerning the propriety of enforcing the Endorsement are premature. Moreover, no such allegations appear in the Complaint.   *See Clean Coal Techs., Inc. v. Leidos, Inc.*, 377 F. Supp. 3d 303, 321 (S.D.N.Y. 2019) ("It is axiomatic that a complaint cannot be amended by the briefs in opposition to a motion to dismiss." (citation omitted)).

Boro Rehab may proceed to discovery.  Within thirty (30) days of the issuance of the Order,

Plaintiff shall file a Second Amended Complaint ("SAC"), striking and modifying the pleadings

consistent with this Order.  Finally, Plaintiff's request for oral argument is denied as unnecessary.

(*See* Dkt. 18.)

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 14, 2024
    Brooklyn, New York