UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JUAN CARLOS INTERIANO, Individually, and
JUAN CARLOS INTERIANO, as assignee of ALL-　　Case No. 23-cv-238-PKC-AYS
BORO REHAB CONSTRUCTION CORP., ALL
BORO GROUP, LLC and ALL-BORO
CONSTRUCTION GROUP, INC.,

                                      Plaintiffs,

    - against -

ARCH SPECIALTY INSURANCE COMPANY,

                                      Defendants.
-------------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
<u>TO DISQUALIFY DEFENDANT'S CURRENT COUNSEL</u>**

                                        NICHOLAS GOODMAN & ASSOCIATES, PLLC
                                        H. Nicholas Goodman
                                        Patrick L. Selvey
                                        *Attorneys for Plaintiff*
                                        **JUAN CARLOS INTERIANO**
                                        333 Park Avenue South, Suite 3A
                                        New York, New York 10010
                                        (212) 227-9003

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................ ii

TABLE OF AUTHORITIES ......................................................................................................... iii

PRELIMINARY STATEMENT .................................................................................................... 4

FACTUAL AND PROCEDURAL HISTORY .............................................................................. 5

ARGUMENT .................................................................................................................................. 6

      I.      BEACHCROFT CANNOT CONTINUE TO REPRESENT ARCH IN THIS MATTER DUE TO THE IMPUTED CONFLICT OF INTEREST ........................ 6

           A.    Legal Standards ............................................................................................... 6

           B.    Beachcroft's Continued Representation of Arch Violates New York State's Rules of Professional Conduct ....................................................................... 8

           C.    Beachcroft's Continued Representation of Arch Violates the ABA Model Rules of Professional Conduct ............................................................................ 9

           D.    Beachcroft's Continued Representation of Arch Undermines the Integrity of the Adversarial Process ........................................................................................ 12

CONCLUSION ............................................................................................................................. 16

## **TABLE OF AUTHORITIES**

Cases

*Filippi v. Elmont Union Free School Dist. Bd. of Educ.,* 722 F.Supp. 2d 295 (E.D.N.Y. 2010) .. 14

*GSI Commerce Solutions, Inc. v. BabyCenter, L.L.C.*, 618 F.3d 204 (2d Cir. 2010) ...................... 6

*Hempstead Video, Inc. v. Incorporated Village of Valley Stream*, 409 F.3d 127 (2d Cir. 2005) .... 6, 13, 14

Other Authorities

ABA Model Rule 1.10 ................................................................................................................7, 9, 11

ABA Model Rule 1.9 ...................................................................................................................6, 11

NYRPC Rule 1.10.......................................................................................................................7, 8, 9

NYRPC Rule 1.7............................................................................................................................8, 9

NYRPC Rule 1.9............................................................................................................................6, 9

## PRELIMINARY STATEMENT

Plaintiff **JUAN CARLOS INTERIANO Individually and as assignee of ALL-BORO REHAB CONSTRUCTION CORP., ALL BORO GROUP, LLC and ALL-BORO CONSTRUCTION GROUP, INC.** ("Plaintiff"), through its attorneys Nicholas Goodman & Associates, PLLC, respectfully submits this Memorandum of Law in support of its request for an Order disqualifying the law firm DAC Beachcroft LLP ("Beachcroft") from continuing to represent Defendant **ARCH SPECIALTY INSURANCE COMPANY** ("Defendant" or "Arch") due to a conflict of interest.

On January 1, 2025, during the pendency of this coverage dispute, arising from Defendant's denial of coverage to Plaintiff's assignors, former counsel for the Plaintiff, George Vogrin, Esq. ("Vogrin"), Michael Frimet, Esq. ("Frimet") and Jamie Denenberg, Esq. ("Denenberg") formerly of the law firm Vogrin & Frimet, LLP ("V&F"), and their support staff, and counsel for the Defendant, Lawrence Klein, Esq. ("Klein"), Aaron F. Mandel, Esq. ("Mandel"), and Eric Lankton, Esq. ("Lankton"), and their support staff, formerly of the firm Robinson & Cole LLP ("R&C"), all joined the same law firm, Beachcroft.

Recognizing the conflict of interest inherent in attorneys in the same firm, working from the same physical office location, representing both sides in a legal dispute, V&F duly withdrew from its representation of Plaintiff. [Doc. No. 48]. [1] However, despite Plaintiff's counsel's requests, Beachcroft has refused to withdraw from representing Arch.

As set forth below, Plaintiff now requests that this Court compel Beachcroft to acknowledge the conflict of interest inherent in its continue representation of Arch and issue an Order directing Beachcroft to withdraw as counsel in this action.

---

[1] All references to "Doc. No." refer to the Document Number on the ECF Docket herein.

4

**FACTUAL AND PROCEDURAL HISTORY**

A complete recitation of the applicable factual and procedural history herein is set forth in the Affirmation of H. Nicholas Goodman dated April 30, 2025 (the "Goodman Aff."), submitted herewith. The following is a brief recitation of the most salient portions thereof.

On or about November 30, 2022, Plaintiff commenced this action by e-filing his Summons and Complaint in the Supreme Court, State of New York, County of Nassau. [Doc. No. 1-1]. Vogrin signed Plaintiff's Summons and Complaint on behalf of V&F. [Doc. No. 1-1].

On or about January 13, 2023, Arch, by R&C, removed the action to this Court by filing a Notice of Removal.[Doc. No. 1].

On or about December 19, 2024, after over two years of litigation, V&F moved to be relieved as counsel, citing the conflict arising from V&F's anticipated absorption into a new firm. [Doc. No. 48]. While not named in V&F's moving papers, the firm into which V&F merged was Beachcroft. At that time, Plaintiff retained the undersigned to represent him in this action.

Effective January 1, 2025, the entire V&F firm, including support staff, joined Beachcroft. Goodman Aff., ¶ 7.

On January 8, 2025, Klein and Mandel filed a Notice of Change of Firm, Address, and Contact Information, disclosing that they too had moved, along with Lankton, had moved Beachcroft effective January 1, 2025. [Doc. No. 49].

From January 1, 2025, on, the former V&F attorneys and staff as well as the former R&C attorneys and staff, have all worked out of the same suite at Beachcroft's only Manhattan office located at 55 Broadway, Suite 1602. [*See* Doc. Nos. 48 and 49]. Only fifteen (15) Beachcroft attorneys, including Vogrin, Frimet, Denenberg, Klein, Mandel and Lankton, work out of that office. Goodman Aff., ¶ 10. Upon information and belief they work in close proximity with each other in an open office plan and share administrative resources and support staff. *Id.*

5

On or about January 15, 2025, after consultation with Plaintiff, the undersigned wrote to Beachcroft, by letter addressed to Klein and Mandel, informing Beachcroft of the conflict of interest that is the subject of this motion and requesting that Beachcroft immediately seek leave to withdraw as counsel for Arch in light of same. Exhibit "A."

By letter dated January 22, 2025, Beachcroft via Mandel refused to withdraw as counsel for Arch. Exhibit "B." After several telephonic conferences, Beachcroft via Mandel persisted in its refusal to withdraw, thus necessitating the instant motion.

## ARGUMENT

### I. BEACHCROFT CANNOT CONTINUE TO REPRESENT ARCH IN THIS MATTER DUE TO THE IMPUTED CONFLICT OF INTEREST

#### A. Legal Standards

While "[t]he authority of federal courts to disqualify attorneys derives from their inherent power to preserve the integrity of the adversary process," state and ABA disciplinary rules provide useful guidance in deciding whether to wield that power. *See, Hempstead Video, Inc. v. Incorporated Village of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005). In wielding that power, "a district court must balance 'a client's right to freely choose his counsel' against 'the need to maintain the highest standards of the profession.'" *GSI Commerce Solutions, Inc. v. BabyCenter, L.L.C.*, 618 F.3d 204, 209 (2d Cir. 2010), *quoting Hempstead*, 409 F.3d at 132.

Rule 1.9 of the ABA Model Rules of Professional Conduct ("ABA Model Rules"), Duties to Former Clients, provides, in pertinent part, as follows:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Rule 1.9 of the New York Rules of Professional Conduct ("NYRPC"), tracks the ABA Model Rule nearly word for word, and the language of section 1.9(a) is identical.

6

ABA Model Rule 1.10: Imputation of Conflicts of Interest, provides, in relevant part, as follows:

(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, unless

(1) the prohibition is based on a personal interest of the disqualified lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm; or

(2) the prohibition is based upon Rule 1.9(a) or (b) and arises out of the disqualified lawyer's association with a prior firm, and

(i) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom;

(ii) written notice is promptly given to any affected former client to enable the former client to ascertain compliance with the provisions of this Rule, which shall include a description of the screening procedures employed; a statement of the firm's and of the screened lawyer's compliance with these Rules; a statement that review may be available before a tribunal; and an agreement by the firm to respond promptly to any written inquiries or objections by the former client about the screening procedures; and

(iii) certifications of compliance with these Rules and with the screening procedures are provided to the former client by the screened lawyer and by a partner of the firm, at reasonable intervals upon the former client's written request and upon termination of the screening procedures.

Meanwhile, NYRPC Rule 1.10, Imputation of Conflicts of Interest, takes a more protective approach to attorney-client privilege, and provides in relevant part as follows:

(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule 1.7, 1.8 or 1.9, except as otherwise provided therein.

\*\*\*

(c) When a lawyer becomes associated with a firm, the firm may not knowingly represent a client in a matter that is the same as or substantially related to a matter in which the newly associated lawyer, or a firm with which that lawyer was associated, formerly represented a client whose interests are materially adverse to the prospective or current client unless the newly associated lawyer did not acquire any information protected by Rule 1.6 or Rule 1.9(c) that is material to the current matter.

(d) A disqualification prescribed by this Rule may be waived by the affected client or former client under the conditions stated in Rule 1.7.

NYRPC Rule 1.7(b) provides that an attorney that would otherwise be barred from representation due to a conflict of interest may nonetheless represent a client if:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law;

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent, confirmed in writing.

Thus, a firm subject to an imputed conflict of interest pursuant to NYRPC Rule 1.10 may not undertake or continue representation of a client in the same matter in which a newly associated lawyer represented a former client whose interests are material averse to the firm's new or prospective client unless the affected client gives informed consent, confirmed in writing.

### B. Beachcroft's Continued Representation of Arch Violates New York State's Rules of Professional Conduct

As set forth above, the NYRCP prohibits an attorney, or the law firm with which an attorney is associated, from representing a client in the same matter in which the attorney or firm represented a former client whose interests are materially adverse to the new client unless, among other things, the former client gives informed, written consent. Under this framework, there can be no question that Beachcroft should be disqualified from continuing its representation of Arch in this matter.

Attorneys Vogrin and Frimet, now Beachcroft partners, and Denenberg, now a Beachcroft associate, (Goodman Aff., ¶¶ 7-8), formerly represented the Plaintiff in this matter for some two years. Goodman Aff. ¶ 9. Obviously Arch, the lone Defendant herein, has interests materially

adverse to Plaintiff. Just as clearly, NYRPC Rule 1.9 prohibits the former V&F attorneys, now Beachcroft attorneys, from representing Arch in this matter. And critically, NYRPC Rule 1.10 imputes that conflict to Beachcroft. As stated in NYRPC Rule 1.10(d), the only way to overcome this prohibition is through compliance with the conditions stated in NYRPC Rule 1.7, that require, among other things, informed, written consent from the affected party.

Plaintiff herein does not consent to Beachcroft's continued representation. Goodman Aff., ¶ 14. Thus, under the NYRPC, neither the former V&F attorneys nor any other current Beachcroft attorney, particularly those practicing the same Manhattan office suite as the former V&F attorneys, may represent Arch in this matter. No further inquiry is necessary under the New York Rule that mandates Beachcroft's withdrawal.

### C. Beachcroft's Continued Representation of Arch Violates the ABA Model Rules of Professional Conduct

The ABA Model Rule takes a slightly more lenient approach to imputed conflict, and provides exceptions to imputed conflict when a law firm is able to take careful steps to screen the potentially disqualified lawyer(s) and provide timely, detailed notice to the affected party. But even accepting, for the sake of this motion only, the truth of the representations set forth in Beachcroft's January 22, 2025, letter, (Exhibit "B"), Beachcroft has not met and cannot meet this standard.

<u>Fee Sharing</u>

ABA Model Rule 1.10(a)(2)(i), requires that the disqualified attorneys, here Vogrin, Frimet, and Denenberg are "timely screened from any participation in the matter and [are] apportioned no part of the fee therefrom." While Mandel represented that Beachcroft has made efforts made to ensure that V&F's physical and digital documents and records regarding this action are not accessible to the attorneys previously associated with R&C, he made no representation that Beachcroft took or will take any measures to ensure that any of the former V&F attorneys have

not already received any portion of the legal fees earned by Beachcroft through its representation of Arch in this matter and will not receive any portion of those fees were this Court to allow Beachcroft to continue to represent Arch. Exhibit "B." Plaintiff is not aware of Beachcroft's profit sharing policies, but there is a very real possibility that the former V&F attorneys, in particular Vogrin and Frimet, who are now Beachcroft Partners together with Klein, stand to benefit directly from Beachcroft's representation of Arch in this case and other Beachcroft work for Arch, resulting in divided loyalty.

Sufficiency of Screening

But setting aside the very real risk that the former V&F attorneys will benefit from legal fees Beachcroft earns from Arch, Beachcroft has not demonstrated the timeliness nor the sufficiency of its screening process. While segregation of digital and physical records is of course a necessary aspect of effective screening, Beachcroft has not conveyed what, if any, efforts it has made to prevent the inadvertent disclosure of confidential information, for example through intra-office conversations or eavesdropping in the limited space now occupied by all six of the attorneys and their staff who worked on this case for two years before their arrival at Beachcroft.

Moreover, Beachcroft's vague assertion that "an ethical wall is established prohibiting all attorneys and staff formerly associated with [V&F and R&C] to speak about any aspect of this Lawsuit," (Exhibit "B," p. 2), is patently insufficient as it fails to address many critical questions.

To wit, when was the "ethical wall" established? Specifically, was it erected before or after the January 1, 2025, merger? How did Beachcroft identify and communicate the need for the "ethical wall" to the attorneys and staff in question? Did Beachcroft take any measure to incentivize the attorneys and support staff to take special care to avoid inadvertent disclosure in light of their close proximity, or were they simply instructed to refrain from conversing with one another directly regarding the details of this litigation?

Further, does Beachcroft provide facilities to enable the former V&F attorneys to engage in private communications with their former client and his new counsel regarding his former representation as may be needed to facilitate the effective transfer of representation? Or were such conversations were simply left to occur in an open floor plan within earshot of Arch's counsel? These unanswered questions and more demonstrate Beachcroft's failure to meet its burden under the ABA Model Rules.

Lack of Notice

Even if Beachcroft were to demonstrate that it enacted timely and effective screening methods to this Court's satisfaction – and there is no evidence that it did – Beachcroft failed to comply with its obligation to provide notice of those methods to Plaintiff in a timely manner or at all. ABA Model Rule 1.10(a)(2)(ii) requires that a firm seeking to avoid an imputed conflict to provide prompt written notice to any affected former client "to enable the former client to ascertain compliance with the provisions of this Rule…" Such a notice must include a description of the screening procedures employed, a statement that the firm and screened lawyer have complied with the rules, a statement that review of the screening procedures and the firm's compliance may be available before a tribunal, and an agreement by the firm to respond promptly to any written inquiries or objections. *Id.*

Comment [9] to ABA Model Rule 1.10 clarifies that the required screening notice should be given "as soon as practicable after the need for screening becomes apparent." That certainly did not occur in this case. Given the rather unusual circumstances giving rise to the conflict here, in which counsel representing adverse parties in the same action simultaneously joined the same firm, the need for screening would have been apparent to the incoming Beachcroft attorneys long before the merger's effective date.

Indeed, that V&F moved for leave to withdraw from his representation of Plaintiff on December 19, 2024, in anticipation of the conflict that would arise upon his joining Beachcroft only underscores the need for Beachcroft to have implemented screening pre-merger and most certainly immediately post-merger. Yet Beachcroft did not provide Plaintiff with any notice, nor apparently did it undertake any screening precautions at all until after Plaintiff independently identified the conflict and demanded that Beachcroft withdraw.

What's more, even when Beachcroft did reply to Plaintiff's withdrawal request, over three weeks after the merger occurred, that response failed to include the mandatory criteria outlined above. As discussed above, Beachcroft's description of the screening procedures employed does not inform Plaintiff of the availability of a review of those procedures before a tribunal, and it contains no agreement by the firm to response to Plaintiff's written inquiries or objections regarding same.

Thus, Beachcroft's continued representation of Arch in this matter is prohibited by the ABA Model Rules as well.

### D. Beachcroft's Continued Representation of Arch Undermines the Integrity of the Adversarial Process

Again, the New York State and ABA Model Rules, while not binding, provide valuable guidance, and this Court should not ignore the reality that Beachcroft would be barred from representing Arch in this matter under those Rules. But beyond a rigid application of those Rules, Beachcroft's continued representation of Arch in this matter would taint the adversarial trial process and result in a benefit Arch at Plaintiff's detriment.

When considering matters of successive representation, the Second Circuit holds that an attorney may be disqualified if the following three factors are met:

(1) the moving party is a former client of the adverse party's counsel;

12

> (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and
>
> (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

*Hempstead Video, Inc.*, 409 F.3d at 133. Each of these factors obviously applies to the former V&F attorneys herein. It is undisputed that Plaintiff was formerly, and very recently, V&F's client. The relationship between V&F's representation and the issues in the present lawsuit could not be more substantial as it is the very same lawsuit.

Finally, there is no question that V&F had access to privileged information in the course of his representation of Plaintiff that would be relevant to this action. Indeed, since it is the same action, any privileged information V&F attorneys obtained in their representation would by definition be relevant to this case as it continues.[2] Thus, the former V&F attorneys would certainly be subject to disqualification, a fact properly recognized and underscored by Vogrin who withdrew his firm from Plaintiff's representation before V&F's merger into Beachcroft.

The question then turns to Beachcroft, and whether the presumption of confidence sharing within a firm can be rebutted so as to cleanse the taint of the V&F attorneys' status as partners and associate at a firm representing the adverse party in the very action in which V&F represented the Plaintiff until mere days before that firm merged into Beachcroft. While the presumption of shared confidences between members of a firm may be rebutted "in appropriate cases and on convincing facts," (*Hempstead Video, Inc.*, 409 F.3d at 138), this is not such a case; Beachcroft's representations are simply not convincing. Unlike *Hempstead*, where the holding relied heavily on

---

[2] While Beachcroft has suggested that any confidences Plaintiff may have shared with Vogrin are irrelevant because the resolution of this matter will turn exclusively on the application of New York law to actions taken by Arch, (Exhibit "B," p. 2), that argument fails to acknowledge that confidential information regarding litigation strategy, appetite (or lack thereof) for protracted litigation or intrusive discovery, or Plaintiff's current financial and medical conditions, might impact Plaintiff's settlement posture throughout the litigation, potentially giving Arch an unfair advantage in determining its settlement posture (or whether to make a settlement offer at all).

13

the fact that the conflicted attorney had only an attenuated "of counsel" relationship with the firm whose disqualification was sought, (*Id.* at 133-136), the relationship of the former V&F attorneys and staff to Beachcroft is quite obviously much more intimate.

Beachcroft maintains only one office in New York, located at 55 Broadway, Suite 1602, in Manhattan. Goodman Aff., ¶ 9. Only approximately fifteen attorneys work out of that office, including partners Vogrin and Frimet, and associate Denenberg who actively worked on this case for two years, along with partner Klein and Counsel Mandel and Lankton, who were adverse to Vogrin, Frimet and Denenberg in the very same case. Goodman Aff., ¶ 10. The close physical proximity of those six attorneys, all of whom share an office suite, as well as their staff, raises a strong presumption that confidences and separation cannot be adequately maintained there. *See Filippi v. Elmont Union Free School Dist. Bd. of Educ.,* 722 F.Supp. 2d 295 (E.D.N.Y. 2010).

For all the undersigned knows, Vogrin might sit directly adjacent to one or more of attorneys representing his former adversary in this matter in which Vogrin represented Plaintiff until mid-December last year. The possibility that confidences have already been or could inadvertently be disclosed, such as during a telephone conversation between any of the former V&F attorneys and Plaintiff's current counsel within earshot of Klein, Mandel, or other Beachcroft staff assigned to this matter, is very real, and of great concern to Plaintiff.

Further, this Court is bound to consider the injustice that the denial of this motion would work upon Plaintiff, an individual who suffered severe personal injury and is now embroiled in a complex and time-consuming coverage dispute in the hope of recovering at least some of the $1.5 million the court below awarded him. Due to V&F's ethically sound withdrawal, the conflict here at issue has already deprived Plaintiff of his chosen counsel. To permit Arch, a multinational corporation with the business acumen and financial wherewithal to easily and efficiently obtain

14

replacement counsel, to retain its chosen counsel in this case in which the very same conflict deprived Plaintiff of his chosen counsel, would constitute a grave injustice. That would tend to underscore the public perception that the American judicial system allows preferential treatment for litigants with money and power.

In effect, permitting Beachcroft's continued representation of Arch in this matter would unfairly deprive Plaintiff of his choice of counsel for no reason other than that his attorney had the ethical fortitude to withdraw voluntarily while the insurance carrier's counsel did not.

To be clear, Plaintiff is not suggesting that Beachcroft be prohibited from representing Arch in other matters. Indeed, Beachcroft does represent Arch in matters not involving Plaintiff and the dispute at issue herein,[3] and the fact that V&F previously represented the Plaintiff in a materially adverse position to Arch does not prevent Beachcroft's representation or Arch now or in the future.

But this Court should consider a hypothetical scenario in which Arch sought to retain Beachcroft to represent it *in this matter* for the first time in January or February of this year, with the former V&F attorneys, now partners and associates in its New York office, having previously represented the Plaintiff in the same matter. While Plaintiff is not privy to Beachcroft's conflict screening policies for new clients, one must assume that, but for the unusual circumstance of V&F merging into Beachcroft simultaneously with Klein and Mandel and Lankton, Beachcroft would not agree to represent Arch *in this specific matter* given the clear conflict of interest.

Ultimately, the former V&F attorneys' conflict herein is imputed to Beachcroft, and the facts and circumstances of their relationship with Beachcroft make the threat that confidences cannot be adequately maintained functionally insurmountable. Accordingly, Beachcroft must be disqualified from continuing to represent Arch in this matter.

---

[3] *See, e.g.*, *U.S. Specialty Insurance Company v. Arch Specialty Insurance Company*, E.D.N.Y. Case No. 1:23-cv-7368.

## **CONCLUSION**

For all the reasons set forth above, and in the Affirmation of H. Nicholas Goodman submitted herewith, Plaintiff respectfully requests that this Court issue an Order disqualifying DAC Beachcroft LLP from continuing to represent Defendant Arch Specialty Insurance Company in this matter and staying proceedings herein for thirty (30) days to permit Defendant to retain new counsel, together with such other and further relief as to this Court seems just and proper.

Dated: New York, New York
April 30, 2025

NICHOLAS GOODMAN & ASSOCIATES, PLLC

BY: _____
H. Nicholas Goodman
Patrick L. Selvey
*Attorneys for Plaintiff*
**JUAN CARLOS INTERIANO**
333 Park Avenue South, Suite 3A
New York, New York 10010
(212) 227-9003
ngoodman@ngoodmanlaw.com
pselvey@ngoodmanlaw.com