UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JUAN CARLOS INTERIANO, Individually, and
JUAN CARLOS INTERIANO, as assignee of ALL-
BORO REHAB CONSTRUCTION CORP., ALL     Case No. 23-cv-238-PKC-AYS
BORO GROUP, LLC and ALL-BORO
CONSTRUCTION GROUP, INC.,

                                   Plaintiffs,

            - against -

ARCH SPECIALTY INSURANCE COMPANY,

                                Defendants.
-------------------------------------------------------------------X

**MEMORANDUM OF LAW IN REPLY TO DEFENDANT'S OPPOSITION TO,
AND IN FURTHER SUPPORT OF, PLAINTIFF'S MOTION
<u>TO DISQUALIFY DEFENDANT'S CURRENT COUNSEL</u>**

                                                 NICHOLAS GOODMAN & ASSOCIATES, PLLC
                                                 H. Nicholas Goodman
                                                 Patrick L. Selvey
                                                 *Attorneys for Plaintiff*
                                                 **JUAN CARLOS INTERIANO**
                                                 333 Park Avenue South, Suite 3A
                                                 New York, New York 10010
                                                 (212) 227-9003

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................................................... ii

TABLE OF AUTHORITIES ............................................................................................................. iii

ARGUMENT ..................................................................................................................................... 1

    I.    BEACHCROFT'S SCREENING MEASURES ARE INSUFFICIENT TO REBUT THE PRESUMPTION OF CONFLICT ................................................................................ 1

        A.    DACB's Tardy "Screening" Email Fails to Satisfy, Even in the "Post-COVID World" ................................................................................................................................ 1

        B.    The Absence of Declarations from any of the Former V&F Attorneys Also Speaks to Beachcroft's Ongoing Conflict ............................................................................ 3

        C.    Beachcroft's Chronology of Events is Inaccurate and Deceptive ...................... 4

        D.    Beachcroft's Argument That The Former V&F Attorneys Have No Relevant Confidences That Might Be Disclosed Fails To Appreciate The Nature Of Attorney- Client Relations ................................................................................................. 8

        E.    Beachcroft's Notion That Plaintiff's Motion Is A Plot To Increase the Value Of This Case Makes No Sense ................................................................................... 9

CONCLUSION ................................................................................................................................. 9

## **TABLE OF AUTHORITIES**

Cases

*Hempstead Video, Inc. v. Incorporated Village of Valley Stream*, 409 F.3d 127 (2d Cir. 2005) ..... 2

# ARGUMENT

Simply put, the opposition of DAC Beachcroft ("Beachcroft"), while insistent, does not rebut the presumption of its imputed conflict of interest. Despite their effort, including five separate attorney declarations as well as the deeply unfortunate weaponization of Plaintiff's counsel's personal tragedy, Beachcroft has only underscored the need for its disqualification.

## I. BEACHCROFT'S SCREENING MEASURES ARE INSUFFICIENT TO REBUT THE PRESUMPTION OF CONFLICT

Beachcroft suggests that it undertook prompt, effective efforts to prevent the disclosure of privileged information in accordance with all applicable rules and best practices. But a close reading Beachcroft's papers demonstrates quite the opposite. Despite being fully alerted to the impending conflict that would result from the merger of Vogrin & Frimet ("V&F") and the attorneys representing Arch from Robinson, Cole (the "RC attorneys") into Beachcroft, discussed by well before the merger, by all accounts Beachcroft took no action to implement proper screening procedures until January 22, 2025, three weeks after formal completion of the merger, and even then only in response to Plaintiff's January 15, 2025, letter requesting that Beachcroft withdraw its representation of Defendant Arch. This and other facts revealed in Beachcroft's opposition demonstrate a pattern of after-the-fact damage control, a far cry from the intentional, pre-emptive screening procedures that one would expect from a purportedly sophisticated firm with full knowledge of an impending conflict.

### A. *DACB's Tardy "Screening" Email Fails to Satisfy, Even in the "Post-COVID World"*

At the outset, Beachcroft now claims that the ethical guidelines set forth in the ABA and NYRPC are "irrelevant" to the instant motion, (Beachcroft Memorandum of Law ("Beachcroft MOL", pp. 1-2), but this assertion flies in the face of the very legal precedent on which Beachcroft purports to rely. While it is true that those rules are not *binding* on this Court, they offer recognized

1

guidance and certainly warrant consideration by Courts involved in making determinations such as this. *See, Hempstead Video, Inc. v. Incorporated Village of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (noting that decisions on disqualification "often benefit from guidance offered by the American Bar Association (ABA) and state disciplinary rules"). And Plaintiff invokes those rules precisely for the guidance they provide in determining whether Beachcroft's conduct was sufficient to alleviate the taint inherent in former counsel for the Plaintiff working together with Arch's current counsel in the very same case. Even a cursory review of Beachcroft's opposition reveals that its efforts fall far short of sufficient.

Contrary to Beachcroft's assertions, COVID did not alter the application of those rules, or for that matter virtually eliminate the potential for conflict among lawyers in the same office simply due to the fact that some attorneys are now free to work from home sometimes instead of working in the office five days a week. And the notion that the V&F and RC attorneys will have minimal interaction defies common sense. Even assuming lower attendance in their office, a dubious assumption at this point, surely those attorneys have and will continue to interact while working together on cases, not to mention at partner meetings, at firm outings and at client presentations. And again, all six of the V&F and RC attorneys work out of a small single office in downtown Manhattan. This is decidedly not a situation in which one set of attorneys work in the New York office while the others work in London.

Beachcroft's attempt to minimize the potential for breaching confidences flies in the face not only of common sense, but also the evidence Beachcroft itself presented that admits of some degree of interaction. *See* Klein Declaration, ¶¶ 6-7 and Mandel Declaration, ¶¶10-11 (admitting to working from V&F's office during construction and then "occasionally" from Beachcroft's New York office upon its completion).

Not only was Beachcroft's late screening email too little too late, at no point does Beachcroft address the question of compensation and fee sharing raised in Plaintiff's motion. Beachcroft's January 22, 2025, email certainly did not do so, nor do Beachcroft's opposition papers herein. Given Beachcroft's silence, this Court should assume that George Vogrin and Mike Frimet, both now partners at Beachcroft, do indeed stand to benefit from the legal fees collected from Arch in this matter. They are thus incentivized to act against their former client's interests, as the fees collected from Arch, and thus the continued success of that representation and Arch's satisfaction as a client, stand to benefit them directly. This profit incentive further underscores the significant degree to which Plaintiff's interests are at risk should Beachcroft continue to represent Arch in this specific matter.

### B. *The Absence of Declarations from any of the Former V&F Attorneys Also Speaks to Beachcroft's Ongoing Conflict*

In opposition, Beachcroft presents five Declarations from self-interested Beachcroft attorneys who clearly want their firm to retain the case. But the conspicuous absence of Declarations from the former V&F attorneys again highlights the conflict. The former V&F attorneys are no doubt in a difficult position at their new firm – the Declaration of Patrick Firebrace, Beachcroft's International Development Director, indicates that Beachcroft's upper management in London is intent on undertaking every effort to retain this case. One can fairly surmise that the former V&F attorneys are under pressure to remain silent, leaving this Court to wonder whether they have information relevant to this motion and whether that information might support Plaintiff's position herein.

Indeed, it appears that Plaintiff's former counsel may be forced to choose between supporting his former client at the risk of harming his standing at his new firm or supporting his new firm in direct opposition to the interests of his former client. Plaintiff's former counsel's

3

silence is an unsatisfying and problematic outcome of their unenviable, and entirely avoidable, position.

### C. Beachcroft's Chronology of Events is Inaccurate and Deceptive

Perhaps in an effort to distract from its own failure to promptly enact any formal screening mechanisms until after Plaintiff demanded its withdrawal, Beachcroft takes immense liberties in reciting the relevant procedural history. From conflating active investigation and good faith communication in compliance with this Court's rules with undue delay, to invoking Plaintiff's counsel's reliance on professional courtesy during a personal tragedy as supposed evidence of gamesmanship, Beachcroft has gone beyond the pale in a desperate attempt to retain this case. Several of these arguments warrant specific rebuttal.

Even were Beachcroft's screening efforts sufficient, and they were not (see above), nowhere in Beachcroft's opposition is any attempt to explain why Beachcroft undertook no effort whatsoever to enact those screens until a week after Plaintiff's formal demand to withdraw. By their own admission, Beachcroft was fully aware of the conflict well before V&F's withdrawal from the case. Indeed, per his Declaration, Lawrence Klein discussed the issue of conflict as far back as September 2024. Klein Declaration, ¶ 4. Yet Beachcroft took no action to protect against the potential taint until the email dated January 22, 2025. Klein Declaration, ¶ 8.

Meanwhile, Beachcroft's numerous efforts to paint Plaintiff as unconcerned over the conflict issue should be seen for what they are: transparent efforts to distract this Court from Beachcroft's failure to comply with industry standard screening procedures despite full knowledge of the conflict well before it came to pass.

To begin, Beachcroft suggests that Plaintiff could not have been overly concerned with the issue of conflict because it was not raised at the January 21, 2025, pre-motion conference regarding Defendants' proposed motion to dismiss. Beachcroft MOL, p. 6. But, as Beachcroft goes on to

4

admit, the parties were in the midst of a meet and confer period at the time, and Beachcroft had not even provided a formal response to Plaintiff's initial demand letter of January 15 at the time of that virtual appearance. *Id.*

That Plaintiff refrained from raising an issue unrelated to the pre-motion conference[1], an issue that, so far as Plaintiff was aware, the parties were actively hoping to resolve on consent, does not remotely indicate disinterest in the conflict. And Plaintiff *did* raise the issue at the following conference, even though the parties were still in good faith communication and it was not yet clear whether motion practice would be necessary. To call Plaintiff's adherence to this Court's Individual Rules and the general practice of engaging in good faith communication before resorting to Court involvement or motion practice is disingenuous at best.

More concerning, and quite troubling, is Beachcroft's attempt to use a personal tragedy as a cudgel in these proceedings. Beachcroft proposes that it is further evidence of inconsistency that, after the January 15, 2025, letter demanding that Beachcroft withdraw from representation "Plaintiff's counsel was happy for DACB to prepare and file a joint letter requesting an extension of discovery…" Beachcroft MOL, p. 6. But even setting aside the odious exploitation of counsel's personal tragedy, it doesn't logically follow that permitting Beachcroft to draft a simple letter to the Court regarding scheduling is tantamount to an abandonment of Plaintiff's concerns about its conflicted representation. The argument is as empty as it is offensive, and another example of Beachcroft's willingness to say virtually anything in its desperate attempt to maintain its conflicted representation of Arch. *See* Affirmation of H. Nicholas Goodman ("Goodman Aff."), ¶¶ 3-4.

---

[1] After its motion to dismiss was denied as to All-Boro Rehab Construction Corp., (Dkt. # 23), Arch sought permission to move to dismiss Plaintiff's Third Cause of Action breach of the covenant of good faith and fair dealing. The conference apparently convinced defense counsel to abandon that dubious effort. *See* Dkt. # 53.

5

Beachcroft goes on to argue that Plaintiff's delay in filing the instant motion is evidence that Plaintiff does not care about the conflict is still more misguided distraction. But in doing so Beachcroft again egregiously misrepresents the timeline of events, asserting the following:

> Plaintiff also failed to diligently seek to protect his interests. Specifically, Plaintiff: (1) waited more than one month – from January 15 to February 17 – to inform the Court he **_might_** seek to disqualify DACB; (2) waited another 25 days – from February 10 to March 15 – to confirm he would; and then (3) took yet another 39 days – from March 15 to April 23 – to formally request permission to do so.

Beachcroft MOL, p. 20, (emphasis in original).

The true timeline is as follows:

- On January 15, 2025, having learned that the former RC attorneys, now at Beachcroft, intended to continue representing Arch herein despite the obvious conflict, Plaintiff timely demanded Beachcroft's withdrawal. Exhibit "A."

- On January 22, 2025, Beachcroft responded to Plaintiff's letter. Exhibit "B."

- On January 25, 2025, Plaintiff's handling attorney suffered a sudden, unexpected, and immense personal loss, resulting in significant delays across all matters in which this two attorney firm has appeared as counsel. Goodman Aff., ¶ 3.

- On February 18, 2025, Plaintiff informed the Court of the ongoing conflict dispute, and the fact that motion practice might be necessary.

- From February 18 through March 15, 2025, the undersigned undertook to analyzed Beachcroft's response to Plaintiff's demand to withdraw, conducted research, and met with Plaintiff himself to discuss how he would like to proceed. Goodman Aff., ¶ 8.

- On March 15, 2025, having confirmed Plaintiff's strong desire to pursue the relief requested herein, the parties filed a joint letter to the Court advising that, having met and conferred in good faith, the parties were unable to resolve the conflict issue and that Plaintiff intended to move for the relief requested herein. Dkt. # 56.

- On March 27, 2025, Plaintiff's counsel requested a pre-motion conference.[2] Dkt. # 57.

---

[2] This request was made in error due to counsel's unintentional conflation of the Individual Rules of Judge Chen and Magistrate Judge Shields.

6

- On March 31, 2025, Magistrate Judge Shields denied Plaintiff's request for a pre-motion conference and directed Plaintiff to seek leave to move in compliance with Judge Chen's Individual Rules.

- On April 1, 2025, Plaintiff's counsel reached out to Beachcroft and began to negotiated a proposed briefing schedule for Plaintiff's anticipated motion in compliance with Judge Chen's Individual Practices and Rules, Section 3(C).

- On April 15, 2025, having met and conferred with Beachcroft and arrived at a mutually agreeable briefing schedule, Plaintiff filed a Proposed Scheduling Order regarding same, (Dkt. # 58), which proposed order was again rejected as procedurally improper by Magistrate Judge Shields by Order dated April 21, 2025.

- On April 22, 2025, Plaintiff's counsel filed a letter application for leave to file its motion to disqualify Defendant's counsel and a proposed briefing schedule, which motion was granted with modifications by Order dated April 23, 2025.

Based on the foregoing, Beachcroft's claim that "Plaintiff took more than 90 days" from learning of the conflict to seeking permission to move" is not only inaccurate, it is intentionally deceptive. Of those 90 days, at least one month was spent meeting and conferring with opposing counsel in good faith, including written correspondence and telephone conferences. Approximately two weeks were spent in research and communication between counsel and Plaintiff regarding the need for, and viability of, motion practice in light of Beachcroft's refusal to voluntarily withdraw. And of the "39 days" Plaintiff took to formally request leave to move, 27 of those days are attributable to counsel's honest mistake and procedural errors in attempting to obtain leave to move, albeit from Magistrate Shields instead of Your Honor, and decidedly not, as Beachcroft would have this Court believe, as part of some insidious effort to delay proceedings.

As to Beachcroft's final and equally disingenuous argument that "Plaintiff apparently knew as far back as September 2024 that V&F would have to withdraw from representing him because V&F's attorneys were joining DACB," and thus was even more unreasonable in his delay in moving to protect his interests, the explanation is obvious: until Beachcroft served its Notice of Change of Firm, Address, and Contact Information on January 8, 2025, Plaintiff's counsel

7

reasonably believed that Arch would also retain new counsel in light of the mutual conflict of interest arising from the Beachcroft merger. Goodman Aff., ¶ 8. The fallacy of this expectation was only revealed on January 8, 2025, at which point Plaintiff promptly demanded that Beachcroft withdraw by letter dated only one week later. Exhibit "A." After all, Plaintiff could not have moved to disqualify Beachcroft until Beachcroft officially became Arch's counsel of record.

Thus, when accurately viewed through an undistorted lens, Plaintiff obviously took diligent efforts to protect his interests regarding the conflict at issue, and any delay in moving to safeguard those rights is attributable not to ill intent but to the good faith belief that such motion practice would not be required, or to the unfortunate timing of counsel's own bereavement in the midst of proceedings.

### D. *Beachcroft's Argument That The Former V&F Attorneys Have No Relevant Confidences That Might Be Disclosed Fails To Appreciate The Nature Of Attorney-Client Relations*

Beachcroft argues that "any confidences Plaintiff might have shared with his former attorneys at V&F have no bearing" on the dispositive issues involved in this litigation. Beachcroft MOL, p. 9. As a first, and very obvious, point, Beachcroft does not and cannot know what confidences were exchanged between V&F and Plaintiff himself, or between V&F and this firm as incoming counsel, and is thus in no position to opine as to whether those confidences might bear on dispositive issues. But more to the point, this case, like any other, involves more than just the legal issues at play – there are procedural and strategic aspects, not to mention valuation, counsel's estimation of the likelihood of success and Plaintiff's desire or need to settle. All of those elements were certainly part of V&F's representation of Plaintiff that is now at risk of disclosure by virtue of Beachcroft's continued conflicted representation of Arch. Beachcroft's failure to recognize same, if not intentional, reveals a jaundiced view of attorney-client relations, perhaps borne of careers representing large institution/insurance clients.

8

### E. Beachcroft's Notion That Plaintiff's Motion Is A Plot To Increase the Value Of This Case Makes No Sense

Beachcroft's argument that the instant motion "appears to have been filed simply to delay the resolution of this lawsuit" and as a tactic "aimed at driving up Plaintiff's alleged damages" defies logic and common sense. Beachcroft MOL, p. 16. Just how delay would work to Plaintiff's advantage by increasing the value of the case is a mystery. While Plaintiff is glad to hear that Defendant recognizes the case has a value and that that value is increasing, he is at a loss to explain how that could be so. But this addition to Beachcroft's kitchen sink approach only underscores its lack of substantive argument.

### CONCLUSION

For all the reasons set forth above, in the Affirmation of H. Nicholas Goodman dated June 16, 2025, submitted herewith, and in Plaintiff's motion papers in chief, Plaintiff respectfully requests that this Court issue an Order disqualifying DAC Beachcroft LLP from continuing to represent Defendant Arch Specialty Insurance Company in this matter and staying proceedings herein for thirty (30) days to permit Defendant to retain new counsel, together with such other and further relief as to this Court seems just and proper.

Dated: New York, New York
       June 16, 2025

NICHOLAS GOODMAN & ASSOCIATES, PLLC

BY: _____
H. Nicholas Goodman
Patrick L. Selvey
*Attorneys for Plaintiff*
**JUAN CARLOS INTERIANO**
333 Park Avenue South, Suite 3A
New York, New York 10010
(212) 227-9003
ngoodman@ngoodmanlaw.com
pselvey@ngoodmanlaw.com

9