UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JUAN CARLOS INTERIANO, Individually, and
JUAN CARLOS INTERIANO, as assignee of
ALL-BORO REHAB CONSTRUCTION CORP.,
ALL BORO GROUP LLC, and
ALL-BORO CONSTRUCTION GROUP, INC.,

          Plaintiff,

          - against -

ARCH SPECIALTY INSURANCE
COMPANY,

          Defendant.
-----------------------------------------------------------------X

Case No. 2:23-cv-00238-PKC-AYS

**DECLARATION OF AARON F. MANDEL**

**AARON F. MANDEL** hereby declares as follows pursuant to 28 U.S.C. § 1746(2):

1. I am a Partner at DAC Beachcroft LLP ("DACB"), attorneys for Defendant Arch Specialty Insurance Co. ("Arch") in the above captioned action. As such, I am familiar with the facts and circumstances of this action (the "Lawsuit"). I submit this Declaration in opposition to Plaintiff's Motion for an Order Disqualifying DACB as counsel for Arch in this Lawsuit.

2. Before joining DACB, I was a Counsel at Robinson & Cole LLP ("Robinson"). I was employed by Robinson from August 29, 2023 through and including December 31, 2024. My employment with DACB began on January 1, 2025, when DACB began operating in the United States. Specifically, DACB presently has offices in New York City and Los Angeles.

3. On November 30, 2022, Plaintiff – represented by the law firm Vogrin & Frimet LLP ("V&F") – filed this Lawsuit in Nassau County Supreme Court to recover from Arch a judgment entered against All-Boro Rehab Construction Corp. ("All-Boro") in a personal injury

lawsuit (the "Underlying Lawsuit").[1] Arch retained Lawrence Klein, then at Robinson, to defend it. That defense included: (1) removing this Lawsuit from Nassau County Supreme Court to this Court; and (2) moving to dismiss Plaintiff's Complaint. *See* Dkt. 1, 13, and 15.[2]

4. By Order dated March 14, 2024, the Court granted in part and denied in part Arch's motion to dismiss. *See* Dkt. 23. Consequently, on April 12, 2024, Plaintiff filed an Amended Complaint in this Lawsuit. *See* Dkt. 26.

5. In his Amended Complaint, Plaintiff alleges that Arch is responsible to pay the judgment entered in the Underlying Lawsuit because Arch waited too long to deny coverage for the claims made against All-Boro in the Underlying Lawsuit based upon an exclusion in an insurance policy (the "Arch Policy") that Plaintiff contends does not apply to those claims. *See id*. at ¶¶ 68, 70. A true and accurate copy of the Arch Policy is attached hereto as **Exhibit A**.

6. Arch denies that it must pay the judgment entered against All-Boro in the Underlying Lawsuit. *See generally* Dkt. 35. Discovery taken in this Lawsuit also has confirmed that Arch timely reiterated its denial of coverage for the claims made against All-Boro Rehab in the Underlying Lawsuit to Plaintiff's counsel. Indeed, the insurer of All-Boro's subcontractor at the project where Plaintiff Interiano was injured, Northland, reaffirmed its denial of coverage to All-Boro by email dated January 21, 2020,[3] and Arch sent its letter to Plaintiff's counsel in the Underlying Lawsuit the following day. *See* Dkt. 26-18 at ECF 4 (envelope post-marked January 22, 2020).

7. At a December 5, 2024 hearing on various discovery motions before Magistrate Judge Shields, Plaintiff's attorneys at V&F advised the Court that V&F was merging with another

---

[1] The Underlying Lawsuit was captioned *Interiano v. All-Boro Construction Group, Inc., et al*, Queens County Supreme Court Index No. 702376/2017.
[2] "Dkt." refers to entries on the Court's docket for this Lawsuit.
[3] A true and correct copy of the January 21, 2020 email from Northland is annexed hereto as **Exhibit B**.

2

law firm and would be conflicted from further representing Plaintiff as of January 1, 2025. *See* Dec. 5, 2024 Scheduling Order. V&F was ordered to send letters to each of Magistrate Judge Shields and District Judge Chen advising how incoming counsel intended to proceed with the pending discovery motions and a then-pending request for a pre-motion conference. *See id.*

8. On December 12, V&F filed the required letters, indicating that V&F already had contacted incoming counsel. *See* Dkt. 46 and 47. And on December 19, 2024, V&F filed its motion to be relieved as counsel for Plaintiff and identified Nicholas Goodman as substitute counsel of record. *See generally* Dkt. 48. V&F's motion was granted two days later. *See* Dec. 21, 2024 Order.

9. Although DACB began operating in the United States on January 1, 2025, the construction of its office had not completed by then. Ultimately, DACB's New York office officially opened for attorneys to work on January 22.

10. Between January 1 and January 22, I primarily worked from home. However, I also worked approximately three days from a conference room operated by a co-working company in the building where DACB's New York office is located – 55 Broadway – that DACB had arranged for its New York-based attorneys to work until construction of DACB's New York office completed. I also worked two days from V&F's former office at 150 Broadway to work with DACB's IT technicians who came to New York to help set up our computers. During my two days at V&F's former office, I worked from a conference room where none of V&F's files were stored and did not do any work in connection with this Lawsuit because I did not have yet have access to our files for this matter.[4]

---

[4] I also took one call with opposing counsel on another matter from an empty office next to the conference room.

3

11. Even after DACB's New York office opened for attorneys to work on January 22, I primarily work from home and only occasionally work from DACB's New York office. For example, I worked in the office only one day in April 2025 and only five days this month.

12. Plaintiff's new counsel first raised an issue concerning DACB's representation of Arch in this lawsuit on January 15, 2025 – one week after I filed a Notice of Change of Firm and Contact Information. *See* Dkt. 49. Specifically, Plaintiff's counsel sent a letter demanding that DACB withdraw from representing Arch in this Lawsuit. *See* Br. Ex. A.[5]

13. The following day, on January 16, 2025, I responded to Plaintiff's counsel and offered to meet and confer about Plaintiff's demand. Plaintiff's counsel agreed to do so at 11:00 am ET on January 21, before a pre-motion conference with the Court scheduled for 3:00 pm ET that same day. According to Plaintiff's counsel, the meet and confer would enable the parties to "decide how to proceed vis-à-vis the scheduled conference in the afternoon." A true and correct copy of my email exchange with Plaintiff's counsel is annexed hereto as **Exhibit C**.

14. As agreed, I met and conferred with Plaintiff's counsel at 11:00 am ET on January 21. We discussed Plaintiff's concern and the DACB's efforts to protect Plaintiff's confidences, and I offered to send Plaintiff's counsel a letter memorializing those efforts. Plaintiff's counsel agreed to that proposal.

15. Also on January 21, I attended the pre-motion conference before the Court. See Jan. 21, 2025 Minute Entry. Plaintiff's counsel did not raise any issue about DACB's representation of Arch in this Lawsuit during that conference.[6]

---

[5] "Br. Ex." refers to exhibits accompanying plaintiff's Opening Brief in support of his Motion.

[6] Plaintiff's counsel also did not refuse or object to my offer, made on January 28, 2025, to take the lead on preparing a joint letter requesting an extension of the fact discovery deadline in this matter to accommodate both: (1) Plaintiff's new attorneys substituting into this matter; and (2) the unavailability of Plaintiff's lead counsel of record, Nicholas Goodman, while he attended to a personal tragedy. I filed that letter with the Court on January 29, 2025. *See* Dkt. 50. For the sake of candor, once I learned about Mr. Goodman's personal tragedy, I told former V&F partner George Vogrin about them because I understood that Mr. Vogrin and Mr. Goodman knew one another. In fact, as I

4

16. On January 22, I sent Plaintiff's counsel the letter I mentioned during the January 21 meet and confer that memorialized DACB's efforts to protect any privileged information Plaintiff shared with his former attorneys at V&F. My letter also offered to "further discuss this matter with you if you have any questions or need any additional information." *See* Br. Ex. B at 3.

17. I never received any response to that letter or any questions from Plaintiff's counsel about the efforts DACB had undertaken to protect Plaintiff's confidences. Rather, the next time I heard anything from Plaintiff's counsel about the issue was during a February 17, 2025 Scheduling Conference before Magistrate Judge Shields. During that conference, Plaintiff's counsel – for the first time – informed the Court that plaintiff might seek to disqualify DACB from representing Arch in this Lawsuit. *See* Feb. 18, 2025 Scheduling Order.

18. As a result of Plaintiff's representation, Judge Shields ordered the parties to submit a joint letter on or before March 18, 2025 containing, among other things, "a statement as to whether the parties have resolved their issues regarding any conflict of counsel or whether any party will be making a motion to disqualify counsel…." *See id*.

19. On March 14, the parties further met and conferred on whether plaintiff would be seeking to disqualify DACB. Once again, plaintiff did not substantively respond to the offer in my January 22 letter memorializing DACB's efforts to protect Plaintiff's confidences to further discuss the matter. Plaintiff's counsel instead stated only that he had been instructed by Plaintiff to file a motion to disqualify DACB from continuing to represent Arch in this matter.

20. By joint letter dated March 15, 2025, the parties informed Magistrate Judge Shields of Plaintiff's intent to move to disqualify DACB and moved for an extension of time to complete discovery as a result. *See* Dkt. 56. On March 17, Judge Shields granted the parties' motion and

---

learned from Mr. Vogrin during that conversation, he and Mr. Goodman have a very close, personal relationship. That was the only conversation I have had with Mr. Vogrin about this Lawsuit since we joined DACB.

5

ordered Plaintiff's counsel to "consult and comply with the Individual Rules of the assigned District Judge with respect to making the motion to disqualify Defendant's counsel." *See* Mar. 17, 2025 Order. Plaintiff did so almost six weeks later, on April 22, 2025, and was granted leave to file this motion the following day. *See* Dkt. 59 and Apr 23, 2025 Scheduling Order.[7]

21. As explained in my January 22 letter to Plaintiff's counsel, DACB has taken substantial efforts to protect any privileged information Plaintiff might have shared with former V&F attorneys from being shared with the DACB attorneys representing Arch in this Lawsuit. *See generally* Br. Ex. B. Additionally, on January 22, 2025, I and all other DACB employees formerly associated with Robinson received an email from Roderick Clarkson of DACB's Office of the General Counsel stating, in writing, that none of us was permitted to discuss this Lawsuit with any DACB employees formerly associated with V&F. A true and correct copy of Mr. Clarkson's email is annexed hereto as **Exhibit D**.

22. Since joining DACB, and even before I received the January 22 email from Mr. Clarkson, I have never spoken about the substance of this Lawsuit with any attorney formerly associated with V&F. I also have not stored and do not store any hard-copy documents and communications related to this Lawsuit in DACB's New York office.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: May 30, 2025

                                                            *Aaron F. Mandel*
                                                             Aaron F. Mandel

---

[7] Plaintiff attempted to obtain permission to file his motion twice before April 22, but plaintiff failed each time to comply with the Court's March 17, 2025 Order. *See* Mar. 31, 2025 Order; Apr. 21, 2025 Scheduling Order.