UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
JUAN CARLOS INTERIANO, Individually, and
JUAN CARLOS INTERIANO, as assignee of                    Case No. 2:23-cv-00238-PKC-AYS
ALL-BORO REHAB CONSTRUCTION CORP.,
ALL BORO GROUP LLC, and
ALL-BORO CONSTRUCTION GROUP, INC.,

                        Plaintiffs,

            - against -

ARCH SPECIALTY INSURANCE
COMPANY,

                        Defendant.
---------------------------------------------------------------X

**MEMORANDUM OF LAW
IN OPPOSITION TO MOTION TO DISQUALIFY**

## **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

RELEVANT BACKGROUND ............................................................................................... 2

    A.   This Lawsuit ................................................................................................................. 2

    B.   DACB Begins Providing Legal Services in the United States ...................................... 3

    C.   DACB's Efforts to Protect Plaintiff's Confidences ..................................................... 4

    D.   Plaintiff's Instant Motion .......................................................................................... 5

ARGUMENT .......................................................................................................................... 7

    A.   Whatever Confidences Plaintiff Might Have Shared with His Former Attorneys at V&F are Irrelevant to this Lawsuit's Resolution ....................................................... 9

    B.   DACB's Screening Measures Rebut Any Presumption ............................................ 11

    C.   Plaintiff's Motion Appears to be a Delay Tactic Aimed at Driving Up Plaintiff's Alleged Damages .................................................................................... 16

CONCLUSION ...................................................................................................................... 17

## TABLE OF AUTHORITIES

*Cases*

*American Int'l Grp., Inc. v. Bank of Am. Corp.*,
827 F. Supp. 2d 341 (S.D.N.Y. 2011)................................................................7, 11, 12

*American Tax Funding, LLC v. City of Schenectady*,
No. 1:12-CV-1026, 2014 WL 167464, 2014 U.S. Dist. LEXIS 167464 (N.D.N.Y. Dec. 2, 2014) ........................................................................................................................ 13

*Bd. of Ed. of City of New York v. Nyquist*,
590 F.2d 1241 (2d Cir. 1979) .................................................................................. 16

*Brown v. City of Syracuse*,
No. 5:11-CV-668 (FJS/ATB), 2013 U.S. Dist. LEXIS 78810 (N.D.N.Y. June 4, 2013) ......... 14

*Cheng v. GAF Corp.*,
631 F.2d 1052 (2d Cir. 1980) .................................................................................. 13

*D.R.T., Inc. v. Universal City Studios, Inc.*,
02 Civ. 0958 (BSJ)(JCF), 2003 U.S. Dist. LEXIS 6861 (S.D.N.Y. Apr. 24, 2003)................. 16

*Employers Ins. Co. of Wausau v. Harleysville Ins. Co. of N.Y.*,
759 F. Supp. 3d 344 (E.D.N.Y. 2024) .................................................................... 3, 9

*Filippi v. Elmont Union Free School District Board of Education*,
722 F. Supp. 2d 295 (E.D.N.Y. 2010) ...................................................................... 12

*First Fin. Ins. Co. v. Jetco Contracting Corp.*,
1 N.Y.3d 64 (2003)............................................................................................... 3, 10

*Glueck v. Jonathan Logan, Inc.*,
653 F.2d 746 (2d Cir. 1981) ..................................................................................... 2

*Hempstead Video, Inc. v. Incorporated Village of Valley Stream*,
409 F.3d 127 (2d Cir. 2003) ......................................................................... 7, 8, 13, 14

*L.D. v. Seymour*,
577 F. Supp. 3d 85 (N.D.N.Y. 2022)......................................................................... 9

*Manning v. Waring, Cox, James, Sklar & Allen*,
849 F.2d 222 (6th Cir. 1988)................................................................................... 14

*Maricultura Del Norte v. Worldbusiness Capital, Inc.*,
No. 14 Civ. 10143, 2015 U.S. Dist. LEXIS 29953 (S.D.N.Y. Mar. 9, 2015)................. 8, 12, 16

*Platek v. Town of Hamburg*, 24 N.Y.3d 688, 694 (2015) ............................................ 10

*Reilly v. Computer Assocs. Long-Term Disab. Plan*,
    423 F. Supp. 2d 5 (E.D.N.Y. 2006) ............................................................................... 2, 7, 8, 14

*S.E.C. v. Ryan*,
    747 F. Supp. 2d 355 (N.D.N.Y. 2010)........................................................................................ 13

## **INTRODUCTION**

For almost two-and-a-half years, Defendant Arch Specialty Insurance Co. ("Arch") has been represented in this lawsuit ("Lawsuit") by attorneys who formerly worked for Robinson & Cole LLP ("Robinson") and who began working for DAC Beachcroft LLP ("DACB") effective January 1, 2025. Plaintiff filed this Motion seeking to upend that representation and deprive Arch of its chosen counsel because his former attorneys at Vogrin & Frimet LLP ("V&F") – who withdrew from representing Plaintiff in this Lawsuit in December 2024 – also began working for DACB effective January 1, 2025.

Plaintiff claims that DACB should be disqualified because he claims, without basis, that Arch's attorneys at DACB have access to the confidences Plaintiff shared with his former attorneys at V&F. Yet plaintiff only speculates how that might occur and ignores that: (1) nothing Plaintiff might have shared with his former attorneys at V&F is relevant to resolving the issues presented in this Lawsuit; (2) Arch's counsel and Plaintiff's former attorneys at V&F have never substantively discussed this Lawsuit since joining DACB; and (3) DACB has taken measures to prevent Arch's attorneys from accessing anything Plaintiff might have shared with his former attorneys at V&F – measures Plaintiff's current counsel knew about and never questioned for almost three months before filing this Motion.

Because Plaintiff failed to ever inquire about DACB's efforts to protect against the disclosure of privileged information as between attorneys formerly associated with Robinson and V&F, Plaintiff's Motion is woefully light on facts. Instead, Plaintiff's Motion is heavy on citations to the ABA Model and New York Rules of Professional Conduct (the "Rules") that Plaintiff claims DACB violated. Setting aside that DACB vehemently disagrees that it has violated the Rules in continuing to represent Arch, Plaintiff's focus on the Rules is misplaced because they are irrelevant

to the Court's resolution of plaintiff's Motion. Indeed, resolving Plaintiff's Motion rests on whether allowing DACB to continue representing Arch "would pose a 'significant risk of trial taint.'" *Reilly v. Computer Assocs. Long-Term Disab. Plan*, 423 F. Supp. 2d 5, 9 (E.D.N.Y. 2006) (citing *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981)). As explained below, DACB continuing to represent Arch in this Lawsuit does not create any risk of trial taint, let alone a substantial one.

For these reasons, Arch respectfully requests that the Court deny Plaintiff's Motion so that the parties can proceed with resolving this Lawsuit.

## RELEVANT BACKGROUND

### A.    This Lawsuit

On November 30, 2022, Plaintiff – represented by attorneys at V&F – filed this Lawsuit in New York state court to recover from Arch a judgment entered against All-Boro Rehab Construction Corp. ("All-Boro") in a personal injury lawsuit (the "Underlying Lawsuit").[1] *See* Dkt.[2] 1. Arch retained Lawrence Klein at Robinson to defend it,[3] which defense included removing this Lawsuit to this Court and moving to dismiss Plaintiff's Complaint. *See id.*; *see also* Dkt. 13 and 15.

Plaintiff's attempt to recover from Arch is based upon his claim that Arch waited too long to deny coverage for the claims made against All-Boro in the Underlying Lawsuit based upon an exclusion in an insurance policy (the "Arch Policy") that Plaintiff contends does not apply to those claims. *See generally* Dkt. 26. Resolving this Lawsuit therefore turns primarily on: (1) whether the

---

[1] The Underlying Lawsuit was captioned *Interiano v. All-Boro Construction Group, Inc., et al*, Queens County Supreme Court Index No. 702376/2017.

[2] "Dkt." refers to entries on the Court's docket for this Lawsuit.

[3] *See* Declaration of Lawrence Klein ("Klein Decl.") at ¶ 3.

exclusion applies, which is a question of policy interpretation and, therefore, a question of law;[4] and (2) if Arch's disclaimer is determined to have been untimely (which it was not),[5] whether Arch proves its delay was justified. *See* Dkt. 23 at 21; *First Fin. Ins. Co. v. Jetco Contracting Corp.*, 1 N.Y.3d 64, 69 (2003).

**B.    DACB Begins Providing Legal Services in the United States**

In December 2024, attorneys then at V&F and attorneys then at Robinson independently agreed to join DACB – a law firm based in the United Kingdom that would begin providing legal services in the United States effective January 1, 2025. *See* Firebrace Decl. at ¶ 4.[6] During talks held in September 2024 between representatives of Robinson, V&F, and DACB which preceded that agreement, Mr. Klein had a conversation with Mr. Vogrin during which Mr. Vogrin advised that he knew V&F would have to withdraw as Plaintiff's counsel once V&F attorneys agreed to join DACB because DACB, as a firm, serves as Arch's counsel in other matters. *See* Klein Decl. at ¶ 4. Mr. Vogrin further informed Mr. Klein at that September meeting that he informed Plaintiff about the need to withdraw as Plaintiff's counsel once V&F agreed to join DACB. *Id.*

In connection with their agreement to join DACB, V&F's attorneys advised the Court during a December 5, 2024 conference that V&F would seek to withdraw as Plaintiff's counsel in this Lawsuit. *See* Dec. 5, 2024 Scheduling Order. V&F filed a motion to that effect on December 19, 2024, which was granted just two days later. *See* Dkt. 48 and Dec. 21, 2024 Order.

---

[4] *Employers Ins. Co. of Wausau v. Harleysville Ins. Co. of N.Y.*, 759 F. Supp. 3d 344 (E.D.N.Y. 2024).

[5] The operative complaint in this Lawsuit alleges that Arch received notice of plaintiff's 2019 lawsuit against All-Boro Rehab on October 17, 2019, but that Arch waited 95 days, on January 20, 2020, to respond. *See* Dkt. 26 at ¶¶ 68, 70. As it turns out, Arch reiterated its denial of coverage to plaintiff's attorney in the Underlying Lawsuit just one day after reconfirming that the basis for its original denial of coverage in July 2017 remained valid. *Compare* Dkt. 26-14 at ECF 4 (reflecting a January 22, 2020 postmark) *with* Exhibit B to the Declaration of Aaron F. Mandel ("Mandel Decl."). As used herein, exhibits to the Mandel Decl. are referred to as "Opp. Ex."

[6] "Firebrace Decl." refers to the Declaration of Patrick Firebrace.

DACB began providing legal services in the United States on January 1, 2025, establishing offices in both New York City and Los Angeles. Firebrace Decl. at ¶ 5. By that date, however, construction on DACB's New York office had not yet finished. *Id*. at ¶ 6. Consequently, the attorneys based out of DACB's New York office were asked to work elsewhere until at least January 22. *Id*. at ¶ 7.

Between January 1 and January 22, the former V&F attorneys who joined DACB primarily worked out of V&F's former office space, located at 150 Broadway in Manhattan. *Id*. Former Robinson attorneys, meanwhile, primarily worked remotely from their homes, although a few occasionally ventured into New York City to work in a conference room operated by a co-working company with space in the same building as DACB's current office, located at 55 Broadway in Manhattan.[7] *See* Klein Decl. at ¶ 6; Mandel Decl. at ¶ 10; Lankton Decl. at ¶ 3; Gandhi Decl. at ¶ 3.[8] Since former Robinson attorneys joined DACB, none of them have ever substantively discussed this Lawsuit with any former V&F attorneys. *See*, *e.g.*, Klein Decl. at ¶ 9; Mandel Decl. at ¶ 22; Lankton Decl. at ¶ 5; Gandhi Decl. at ¶ 5.

## C.    DACB's Efforts to Protect Plaintiff's Confidences

It is not surprising that the employees formerly associated with Robinson did not discuss this Lawsuit with attorneys formerly associated with V&F during the few times they met or found themselves in the same workspace: they always were aware that they could not do so. Nevertheless, recognizing that former V&F and Robinson employees would more frequently interact with each

---

[7] Messrs. Klein and Mandel also worked two days from V&F's former office at 150 Broadway during the week of January 6, 2025, but that was to work on their new computers with DACB's IT technicians. *See* Klein Decl. at ¶ 6; Mandel Decl. at ¶ 10; *see also* Firebrace Decl. at ¶ 7. At that time, neither Mr. Klein nor Mr. Mandel performed any work in connection with this Lawsuit because they did not yet have access to their files for this matter, did not have any conversation about this matter with anyone formerly associated with V&F, and worked out of a conference room where none of V&F's files were stored. Klein Decl. at ¶ 6; Mandel Decl. at ¶ 10.

[8] "Lankton Decl." refers to the Declaration of Eric S. Lankton. "Gandhi Decl." refers to the Declaration of Shivang S. Gandhi.

other while physically working in DACB's New York office, the DACB's Office of the General Counsel ("OGC"), on January 22 (the day DACB's New York office became available for all of DACB's attorney to work), emailed all former Robinson employees memorializing the prohibition on discussing this Lawsuit with DACB employees formerly associated with V&F. *See* Opp. Ex. D; Klein Decl. at ¶ 8; Mandel Decl. at ¶ 21; Lankton Decl. at ¶ 4; Gandhi Decl. at ¶ 4.

In addition to this formal notification, Arch's attorneys at DACB have never accessed any documents and/or communications of V&F's related to its work in connection with this Lawsuit. Klein Decl. at ¶ 9; Mandel Decl. at ¶ 22; Lankton Decl. at ¶ 5; Gandhi Decl. at ¶ 5. V&F also was instructed not to transfer any of its physical or electronic documents and/or communications related to this Lawsuit to DACB. Firebrace Decl. at ¶ 10. DACB's employees formerly associated with Robinson similarly do not store any hard-copy documents and/or communications related to this Lawsuit in DACB's New York office,[9] and DACB has ensured that that none of its employees formerly associated with V&F can access any electronic files, documents, or communications related to this Lawsuit. *See id.*

**D.    Plaintiff's Instant Motion**

On January 8, 2025, Arch's attorneys filed a Notice of Change of Firm and Change of Contact Information. *See* Dkt. 49. One week later, on January 15, Plaintiff's counsel wrote to Messrs. Klein and Mandel to demand that DACB immediately withdraw from representing Arch in this Lawsuit. Br. Ex.[10] A. The following day, Mr. Mandel responded by offering to meet and confer. *See* Mandel Decl. at ¶ 13; Opp. Ex. C.

---

[9] Klein Decl. at ¶ 9; Mandel Decl. at ¶ 22; Lankton Decl. at ¶ 5; Gandhi Decl. at ¶ 5.

[10] "Br. Ex." refers to exhibits accompanying plaintiff's Opening Brief in support of his Motion.

The meet and confer took place on January 21, just before the Court was to hold its pre-motion conference on Arch's request to file a Motion for Judgment on the Pleadings, and resulted in Mr. Mandel offering to send a letter setting forth the measures DACB had taken and was taking to protect any privileged information between Plaintiff and his former attorneys at V&F. Mandel Decl. at ¶ 14. The pre-motion conference proceeded, and Plaintiff's counsel did not raise any issue about DACB's representation of Arch during the pre-motion conference. *Id*. at ¶ 15.

As promised, on January 22, Mr. Mandel sent Plaintiff's counsel a letter following up on the parties' January 21 meet and confer. Br. Ex. B. In addition to setting forth the measures DACB had taken to protect Plaintiff's privileged information, the letter offered to "further discuss this matter with you if you have any questions or need any additional information." *See id*. at 3. Plaintiff's counsel never took Mr. Mandel up on his offer. *See* Mandel Decl. at ¶¶ 17, 19.

Plaintiff's counsel's silence during the January 21 pre-motion conference was not the only inconsistency with Plaintiff's instant Motion. Although Plaintiff's counsel had previously demanded that DACB immediately withdraw on January 15, Plaintiff's counsel was happy for DACB to prepare and file a joint letter requesting an extension of discovery to accommodate both the substitution of Plaintiff's new counsel into this Lawsuit, and a personal tragedy affecting Plaintiff's current lead attorney, Nicholas Goodman, that occurred earlier this year. *See* Dkt. 50. The parties' joint request for an extension of discovery resulted in a February 17, 2025 Scheduling Conference at which Plaintiff's counsel first informed the Court that Plaintiff might seek to disqualify DACB from representing Arch in this Lawsuit.[11] The Court ordered Plaintiff's counsel to advise of Plaintiff's intent to do so by March 18, 2025, which Plaintiff did in the joint letter the

---

[11] The Court actually had scheduled a Scheduling Conference for February 10, 2025, but Plaintiff's counsel never appeared. *See* Feb. 10, 2025 Scheduling Order.

6

parties filed on March 15. *See* Dkt. 56. Almost six weeks later, on April 23, Plaintiff requested and obtained permission to file this motion.[12] *See* Dkt. 57 and Apr. 23, 2025 Scheduling Order.

## **ARGUMENT**

Disqualification motions are disfavored in the Second Circuit, and the Court's concern is the integrity of the adversarial process. *See American Int'l Grp., Inc. v. Bank of Am. Corp.*, 827 F. Supp. 2d 341, 345 (S.D.N.Y. 2011) ("*AIG*"). Even in cases where violations of disciplinary rules are at issue (which DACB disputes exist here), "not every violation … will lead to disqualification." *Id*. (quoting *Hempstead Video, Inc. v. Incorporated Village of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2003)). Disqualification instead is appropriate only where "allowing the representation to continue would pose a 'significant risk of trial taint.'" *Reilly*, 423 F. Supp. 2d at 9 (citation omitted). Prevailing on a motion to disqualify requires a movant to satisfy a "high standard of proof," and "[m]ere speculation will not suffice." *See id*. Ultimately, motions to disqualify "are left to the discretion of the district court." *Id*.

Plaintiff contends this matter involves successive representation – that is, where a firm represents a party adverse to a former client in a subsequent litigation. *See* Br. at 12. Assuming, *arguendo*, that Plaintiff is correct, whether to disqualify DACB requires Plaintiff to prove all of the following:

> (1) the moving party is a former client of the adverse party's counsel;
>
> (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and

---

[12] Plaintiff attempted to obtain permission to file his motion twice before April 23, but Plaintiff failed each time to comply with Judge Shields' March 17, 2025 Order directing him how to seek leave to do so. *See* Mar. 31, 2025 Order; Apr. 21, 2025 Scheduling Order.

(3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

*Hempstead Video*, 409 F.3d at 132-33.

"When an attorney associated with a firm is disqualified from representing a party due to a prior representation a presumption is created that the full firm was privy to the disqualified attorney's privileged information and the full firm's continued representation would taint the trial process." *Reilly*, 423 F. Supp. 2d at 10. That presumption, however is rebuttable "through a showing that privileged information was not passed to other members of the firm." *Id*.; *see also Hempstead Video*, 409 F.3d at 138. As the court noted in *Hempstead Video*: "[w]e see no reason why, in appropriate cases and on convincing facts, isolation – whether it results from the intentional construction of a 'Chinese Wall,' or from *de facto* separation that effectively protects against any sharing of confidential information – cannot adequately protect against taint." *Id*. (emphasis in original).

Plaintiff fails to prove all the requisite elements set forth in *Hempstead Video*. Specifically, as explained below, any confidences Plaintiff might have shared with his former attorneys at V&F is not relevant to resolving the issues presented in this Lawsuit. But even if it were, not only have Arch's attorneys at DACB never substantively discussed this Lawsuit with former V&F attorneys since joining DACB, DACB has implemented effective screening measures to prevent any of Plaintiff's confidences from being shared with Arch's counsel. Plaintiff's Motion independently should be denied because it needlessly further delays the resolution of this Lawsuit – the very reason motions to disqualify disfavored in the first place. *See Maricultura Del Norte v. Worldbusiness Capital, Inc.*, No. 14-cv- 10143(CM)(KNF), 2015 U.S. Dist. LEXIS 29953, at *40 (S.D.N.Y. Mar. 9, 2015) (noting that the reluctance of motions to disqualify results from, among

8

other things, the fact that disqualification motions "are often imposed for tactical reasons") (citation omitted).

**A.**   **Whatever Confidences Plaintiff Might Have Shared with His Former Attorneys at V&F are Irrelevant to this Lawsuit's Resolution**

As noted above, disqualification may be appropriate only if plaintiff's privileged information is relevant to the claims made in this Lawsuit. *See L.D. v. Seymour*, 577 F. Supp. 3d 85, 92 (N.D.N.Y. 2022). That is not the case here because this Lawsuit's resolution primarily turns on two issues – one legal and one factual – that any confidences Plaintiff might have shared with his former attorneys at V&F have no bearing.

The first issue is whether an exclusion in the Arch Policy applies to the claims made against All-Boro Rehab in the Underlying Lawsuit. As noted above, that is a pure question of law. *See Employers*, 759 F. Supp. 3d 344.

The exclusion at issue provides, in pertinent part, as follows:

> This insurance does not apply to any claim, "suit", demand or loss that alleges "bodily injury", including injury to any "worker" … that in any way, in whole or in part, arises out of, relates to or results from operations or work performed on [All-Boro Rehab's] behalf by a "subcontractor", unless such "subcontractor":
>
> 1. Has in force at the time of such injury or damage a Commercial General Liability insurance policy that:
>
>    a.   names [All-Boro Rehab] and any other Named Insured as an additional insured;
>
>    b.   provides an each-occurrence limit of liability equal to or greater than $1,000,000; and
>
>    c.   provides coverage for [All-Boro Rehab] for such claim, "suit", demand or loss[.]

*See* Opp. Ex. A at ARCH_ALLBORO_0000272. Arch respectfully submits this exclusion applies to the claims made against All-Boro Rehab in the Underlying Lawsuit.

The Underlying Lawsuit was a "suit" alleging "bodily injury" that "in any way, in whole or in part, arises out of, relates to or results from operations or work performed on [All-Boro Rehab's] behalf by a 'subcontractor.'" Indeed, Mr. Interiano was injured while working for a subcontractor of All-Boro Rehab on a construction project. Plaintiff also cannot meet his burden to prove that the exception to that exclusion found at Paragraph 1. applies. *See Platek v. Town of Hamburg*, 24 N.Y.3d 688, 694 (2015). That is because although All-Boro Rehab was named as an "additional insured" on the subcontractor's CGL policy, and although that CGL policy provided coverage in the amount of at least $1 million each occurrence, the insurer that issued that policy – Northland – denied coverage to All-Boro Rehab based upon an exclusion. *See* Opp. Ex. B.

The second issue is whether Arch timely denied coverage to All-Boro Rehab with respect to the Underlying Lawsuit.

Although Arch submits it did so in July 2017, after the first complaint in the Underlying Lawsuit was filed, Plaintiff alleges that Arch waited 95 days to respond after being notified about the second complaint filed in the Underlying Lawsuit. *See* Dkt. 26 at ¶¶ 68, 70. In fact, Arch reiterated its denial of coverage for the claims made against All-Boro Rehab in the Underlying Lawsuit to Plaintiff's counsel ***only one day*** after Northland reaffirmed its own denial of coverage to All-Boro Rehab. *Compare* Opp. Ex. B (January 21, 2020 email) *with* Dkt. 26-18 at ECF 4 (envelope post-marked January 22, 2020). But even if the Court determines that Arch's January 2020 reiteration of its denial of coverage to All-Boro Rehab was untimely, Arch has the burden to justify its delay,[13] and whether Arch can meet that burden will depend entirely upon facts that are agnostic to any privileged information that V&F may have received from Plaintiff.

---

[13] *See* Dkt. 23 at 21; *Jetco*, 1 N.Y.3d at 69.

For these reasons, Arch respectfully requests that: (1) the Court find any confidences Plaintiff may have shared with his former attorneys at V&F is not relevant to resolving the issues in this Lawsuit; and (2) plaintiff therefore cannot meet his burden to prove the third of the *Hempstead* factors.

**B.    DACB's Screening Measures Rebut Any Presumption**

Setting aside the irrelevance of any privileged information that V&F may have received from Plaintiff, Arch's attorneys have never spoken with them about the substance of this Lawsuit since joining DACB. *See* Klein Decl. at ¶ 9; Mandel Decl. at ¶ 22; Lankton Decl. at ¶ 5; Gandhi Decl. at ¶ 5. DACB also has implemented "a timely and effective ethical screen 'that fences the disqualified attorney from the other attorneys in the firm' in connection with the case for which the conflict is alleged." *AIG*, 827 F. Supp. 2d at 346.

As explained in the accompanying affidavits, DACB has taken multiple steps to prevent the exchange of information about this Lawsuit between the attorneys formerly at V&F and Robinson. For one, DACB's OGC sent written correspondence to all employees formerly associated with Robinson advising they were not to discuss this Lawsuit with their colleagues formerly associated with V&F. *See* Klein Decl. at ¶ 8; Mandel Decl. at ¶ 21; Lankton Decl. at ¶ 4; Gandhi Decl. at ¶ 4. DACB also implemented measures to prevent any employee formerly associated with V&F from accessing the file related to this Lawsuit on DACB's electronic filing system. Firebrace Decl. at ¶ 10. Arch's attorneys at DACB also have never accessed any documents and/or communications of V&F's related to its work in connection with this Lawsuit,[14] and V&F was specifically instructed not to transfer any of its physical or electronic documents and/or communications related to this Lawsuit to DACB. *Id*.

---

[14] Klein Decl. at ¶ 9; Mandel Decl. at ¶ 22; Lankton Decl. at ¶ 5; Gandhi Decl. at ¶ 5.

Respectfully, DACB's measures to prevent the disclosure of Plaintiff's privileged information to Arch's attorneys is precisely the type of ethical screen that courts in this Circuit find sufficient to survive disqualification. *See Maricultura*, 2015 U.S. Dist. LEXIS 29953 at *40 ("In every other post-*Hempstead* case I have located within this circuit, the district court, after considering whether an ethical screen was sufficient, has found the presumption rebutted and denied a motion to disqualify."). Even "flawed screens," including "late screens" (which DACB's was not), "are not fatal." *See AIG*, 827 F. Supp. 2d at 346. Arch respectfully submits that DACB's actions rebut any presumption that Plaintiff's confidences might have been shared between former V&F and Robinson attorneys.

Despite having been informed of the measures DACB took to protect his confidences and never raising any issues with those measures until he filed this motion, Plaintiff contends that DACB's screen cannot possibly suffice because of the size of DACB's New York office. Specifically, citing to *Filippi v. Elmont Union Free School District Board of Education*,[15] Plaintiff claims that "[t]he close physical proximity of [DACB's] attorneys, all of whom share an office suite, as well as their staff, raises a strong presumption that confidences and separation cannot be adequately maintained there." Br. at 14; *see also id*. at 10 (complaining that DACB "has not conveyed what, if any, efforts it has made to prevent the inadvertent disclosure of confidential information, for example, through intra-office conversations or eavesdropping in the limited space now occupied by all six of the attorneys and their staff who worked on this case for almost two years before their arrival at [DACB]"). Plaintiff's argument fails for multiple reasons.

***First***, Plaintiff misrepresents that DACB has not conveyed the efforts it has made to protect any privileged information Plaintiff shared with former V&F attorneys. DACB expressly did so in

---

[15] 722 F. Supp. 2d 295 (E.D.N.Y. 2010).

the January 22 letter Mr. Mandel sent to Plaintiff's counsel. Br. Ex. B. That letter additionally offered to "further discuss this matter with you if you have any questions or need any additional information." *See id.* at 3. If Plaintiff's counsel truly had questions about measures DACB had taken to prevent the inadvertent disclosure of Plaintiff's confidences, Plaintiff's counsel could have simply asked Mr. Mandel. Plaintiff's counsel, however, never did. *See* Mandel Decl. at ¶¶ 17, 19.

**Second**, Plaintiff's suggestion that DACB's ethical screen is insufficient given the size of DACB's New York office is based on outdated case law that harkens back to how law firms operated before the COVID-19 pandemic. *Filippi*, for example, dates from 2010. And the opinion on which the *Filippi* court based its decision – the Second Circuit's decision in *Cheng v. GAF Corp.*[16] – was issued almost 45 years ago (and was later overruled). The discussion in *Cheng* referenced in *Filippi* also was mere dicta. *See American Tax Funding, LLC v. City of Schenectady*, No. 1:12-cv-1026(MAD)(RFT), 2014 WL 167464, 2014 U.S. Dist. LEXIS 167464, at *13-15 (N.D.N.Y. Dec. 2, 2014). If there was valid case law to support *Cheng*'s seemingly *per se* rule against the effectiveness of screens in smaller law firm offices, one would have expected *Filippi* and later courts to cite it.

It makes sense that courts have not followed *Cheng*, considering that, 23 years later, the Second Circuit in *Hempstead Video* established its current mandate that courts evaluating disqualification motions must "inquire on the facts of the case before them whether the practices and structures in place are sufficient to avoid disqualifying taint." 409 F.3d at 137. What matters now is that a suitable and satisfactory quarantine or isolation of an attorney is established to protect the sharing of confidential information – regardless of the size of a firm's office. *S.E.C. v. Ryan*, 747 F. Supp. 2d 355, 373 (N.D.N.Y. 2010); *Brown v. City of Syracuse*, No. 5:11-cv--668

---

[16] 631 F.2d 1052 (2d Cir. 1980).

(FJS/ATB), 2013 U.S. Dist. LEXIS 78810 (N.D.N.Y. June 4, 2013) (refusing to disqualify a four-person law firm). As explained above, DACB has established precisely those types of protections. Accordingly, the mere fact that DACB's New York office does not occupy a commercial real estate footprint of similarly-sized firms does not undermine the effectiveness of the screen DACB has erected to protect Plaintiff's confidences.[17]

*Third*, law firm practice has changed dramatically since the courts in *Cheng* and *Filippi* issued their obsolete opinions.

Following the COVID-19 pandemic, many law firms – DACB included – have implemented flexible work arrangements. Those arrangements include hybrid and remote work options that have become more prevalent for some than working in the office. *See* Klein Decl. at ¶ 7; Mandel. Dec. at ¶ 11; Lankton Decl. at ¶ 3; Gandhi Decl. at ¶ 3. This prevalence naturally serves as a limitation on the possibility that client confidences might be shared among attorneys no matter the size of their office. *See Reilly*, 423 F. Supp. 2d at 12 (discussing the impact of "clear physical distance" between a conflicted attorney and others at his firm to protect client confidences even before the implementation of formal screening measures). As the Sixth Circuit recognized almost 40 years ago in an opinion that, unlike *Cheng*, remains good law, "these new realities must be at the core of the balancing of interests necessarily undertaken why courts consider motions for vicarious disqualification of counsel." *Manning v. Waring, Cox, James, Sklar & Allen*, 849 F.2d 222, 225 (6th Cir. 1988). That pronouncement fully comports with the Second Circuit's admonition in *Hempstead Video* to "inquire on the facts of the case." *See* 409 F.3d at 137.

---

[17] To be clear, DACB is hardly a small firm. DACB employs more than 3,000 people worldwide and maintains 24 offices on four continents. *See* Firebrace Decl. at ¶ 3.

Even when Arch's attorneys at DACB work from DACB's New York office, there are adequate protections against any potential inadvertent disclosures of Plaintiff's confidences. For example, although Plaintiff is correct that DACB's New York office generally operates as an open floor plan, the office includes six individual, enclosed offices and an enclosed conference room that are available for DACB attorneys to hold private meetings and take calls, thereby effectively shielding other attorneys in the firm from the types of communications at issue here. *See* Firebrace Decl. at ¶ 8. The office additionally includes a "pink noise" machine that depresses sound so that attorneys' voices do not carry throughout the office when at any of the office's cubicles. *Id.* To the extent Plaintiff's Opening Brief suggests that his counsel's continued communications with former V&F attorneys about this Lawsuit somehow should infringe upon Arch's relationship with its chosen attorneys at DACB,[18] all the measures DACB has taken to protect Plaintiff's confidences shared with his former attorneys at V&F (such as providing private spaces for DACB attorneys to conduct business) work so well that Arch's counsel at DACB did not know Plaintiff or his counsel remained in contact with former V&F attorneys about this Lawsuit until they read Plaintiff's Opening Brief.[19]

---

[18] *See* Br. at 11 (questioning whether DACB "provide[s] facilities to enable the former V&F attorneys to engage in private communications with their former client and his new counsel regarding his former representation as may be needed to facilitate the effective transfer of representation").

[19] Of course, if Plaintiff's counsel is communicating about this case with former V&F attorneys with whom Plaintiff's counsel maintains a relationship solely to try and support Plaintiff's instant Motion, that type of gamesmanship is particularly troublesome. But that gamesmanship actually undermines Plaintiff's Motion. If Plaintiff's counsel remains in communication with former V&F attorneys about this matter even after first claiming to be concerned about DACB continuing to represent Arch in this Lawsuit, that conduct indicates a lack of concern that any such conversations might find their way to Arch's attorneys, particularly considering Plaintiff's professed concerns about the efficacy of DACB's screens.

C.    **Plaintiff's Motion Appears to be a Delay Tactic Aimed at Driving Up Plaintiff's Alleged Damages**

The substantive deficiencies in Plaintiff's Motion aside, the Motion should be denied because it appears to have been filed simply to delay the resolution of this Lawsuit. *See Maricultura*, 2015 U.S. Dist. LEXIS 29953 at 20 (quoting *Bd. of Ed. of City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)) (reiterating that motions to disqualify are disfavored because they "are often interposed for tactical reasons"); *see also D.R.T., Inc. v. Universal City Studios, Inc.*, 02 Civ. 0958 (BSJ)(JCF), 2003 U.S. Dist. LEXIS 6861, *7 (S.D.N.Y. Apr. 24, 2003) (noting that motions to disqualify "cause undue delay [and] add expense").

In his Opening Brief, Plaintiff decries how long it is taking to prosecute this Lawsuit. *See* Br. at 14 (complaining about being "embroiled in a complex and time-consuming coverage dispute"). Yet, it was Plaintiff who chose to grind this Lawsuit to a halt after the fact discovery deadline already had been extended 100 days – from February 27, 2025 to June 6, 2025. *See* Feb. 18, 2025 Scheduling Order (granting requested extension of time to complete discovery to June 6); Mar. 17, 2025 Order ("As Plaintiff intends to make a motion to disqualify Defendant's counsel, this Court's February 18, 2025 Order is held in abeyance."). Plaintiff also failed to diligently seek to protect his interests. Specifically, Plaintiff: (1) waited more than one month – from January 15 to February 17 – to inform the Court he ***might*** seek to disqualify DACB; (2) waited another 25 days – from February 10 to March 15 – to confirm he would; and then (3) took yet another 39 days – from March 15 to April 23 – to formally request permission to do so.

At an absolute minimum, Plaintiff took more than 90 days from the date he claims that his counsel first learned about the alleged conflict forming the basis for this Motion to seeking permission to file this Motion. But the time period actually may be much longer considering that

16

Plaintiff apparently knew as far back as September 2024 that V&F would have to withdraw from representing him because V&F's attorneys were joining DACB. *See* Klein Decl. at ¶ 4.

Plaintiff's conduct also does not align with his professed complaint about how long it is taking to resolve this Lawsuit. If the Court denies Plaintiff's Motion (which DACB respectfully submits it should), the resolution of this case will be delayed by at least the amount of time required to reset discovery and related deadlines. If the Court grants Plaintiff's Motion (which DACB respectfully submits it should not), that timeframe will be further extended depending on how long it takes Arch to find counsel to replace DACB, whose attorneys have been representing Arch in this Lawsuit for approximately two-and-a-half years, and for those attorneys to get up to speed.

Considering that fact discovery would have been completed just one week from the date of this brief had Plaintiff not filed this Motion, Arch cannot help but wonder whether Plaintiff filed this Motion to: (1) secure his new counsel even more time to "come up to speed" beyond the 100 days to which the parties and the Court already agreed; or (2) try and increase the amount Plaintiff might recover in the unlikely even he prevails in this lawsuit by delaying this Lawsuit's resolution to increase the amount of interest Plaintiff is claiming.

## **CONCLUSION**

For the reasons discussed above, DACB should not be disqualified from continuing to represent Arch in this matter. Arch therefore respectfully requests that this Court issue an Order denying Plaintiff's Motion.

Dated: May 30, 2025                             DAC BEACHCROFT LLP
       New York, New York

                      By:     /s/ Aaron F. Mandel
                             Lawrence Klein
                             Aaron F. Mandel
                             55 Broadway, Suite 1602
                             New York, New York 10006
                             Tel: 212-513-1975
                             Fax: 212-364-9063
                             Email: lklein@dacbeachcroft.com
                             Email: amandel@dacbeachcroft.com

                             *Attorneys for Defendant*
                             *Arch Specialty Insurance Co.*

## **LOCAL CIVIL RULE 7.1(c)CERTIFICATION**

I, Aaron F. Mandel, hereby certify that the foregoing Memorandum of Law in Opposition to Plaintiff's Motion to Disqualify Counsel was prepared on a computer using Microsoft Word.

*Type:* A proportionally spaced typeface was used, as follows:

*Name:* Times New Roman
*Point Size:* 12 Point
*Line Spacing:* Double

*Word Count:* The total number of words in this brief, inclusive of point headings, footnotes and endnotes, and exclusive of the caption, any index, table of contents, table of authorities, signature blocs, or any required certificates is 5,487 words.

Dated: May 30, 2025                          DAC BEACHCROFT LLP
      New York, New York

                    By:   /s/ Aaron F. Mandel
                           Lawrence Klein
                           Aaron F. Mandel
                           55 Broadway, Suite 1602
                           New York, New York 10006
                           Tel: 212-513-1975
                           Fax: 212-364-9063
                           Email: lklein@dacbeachcroft.com
                           Email: amandel@dacbeachcroft.com

                           *Attorneys for Defendant*
                           *Arch Specialty Insurance Co.*

19