UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
JUAN CARLOS INTERIANO, Individually, and
JUAN CARLOS INTERIANO, as assignee of
ALL-BORO REHAB CONSTRUCTION CORP.,
ALL-BORO GROUP, LLC, and
ALL-BORO CONSTRUCTION GROUP, INC.,

                           Plaintiffs,                        **MEMORANDUM**
                                                        **AND OPINION**
      -against-                                       CV 23-0238 (PKC) (AYS)

ARCH SPECIALTY INSURANCE
COMPANY,

                           Defendants.
-------------------------------------------------------------X

**SHIELDS, Magistrate Judge:**

This is an insurance coverage dispute commenced by Plaintiff, Juan Carlos Interiano ("Plaintiff" or "Interiano"), individually and as assignee of All-Boro Rehab Construction Corp., All-Boro Group, LLC and All-Boro Construction Group, Inc. (collectively, "All-Boro") (together, with Interiano, "Plaintiff"), against Arch Specialty Insurance Company ("Arch" or "Defendant"). Plaintiff seeks insurance coverage that would require Arch to pay all or part of a $1.5 million personal injury award.

Presently before the Court is Plaintiff's motion to disqualify the law firm DAC Beachcroft LLP ("Beachcroft") from representing Defendant. For the reasons set forth below, the motion is granted.

BACKGROUND

I.    <u>Procedural Background</u>

Plaintiff commenced this lawsuit against Arch on or around November 30, 2022 in the Supreme Court of the State of New York. Plaintiff was then represented by George Vogrin, Esq.

("Vogrin"), who was then a partner at the firm of Vogrin & Frimer, LLP ("V&F"). On or about January 13, 2023, Arch removed the within action to this Court. (Docket Entry ("DE") [1].) At the time of removal, Arch was represented by Lawrence Klein, Esq. ("Klein") and Aaron Mandel, Esq. ("Mandel"), who were then with the law firm Robinson & Cole, LLP ("R&C"). After removal, the parties litigated Defendant's motion to dismiss, which was decided by the District Court in an Order dated March 14, 2024. (DE [22].) This Court then scheduled an initial conference to be held on May 2, 2024. (DE [24].) That conference was, upon the parties' request, adjourned to May 14, 2024. In the meantime, on April 12, 2024, Plaintiff filed an Amended Complaint. (DE [26].) After Defendant responded to that pleading, the parties sought further adjournment of the initial conference. This time, the adjournment was sought pending a decision as to Plaintiff's request to move for judgment on the pleadings. (DE [31].) That request was denied, and an initial conference was held on May 14, 2025. (DE [33].)

Prior to the initial conference, the parties submitted the required joint letter, which indicated, inter alia, that Defendant, like Plaintiff, was also contemplating interposing a motion for judgment on the pleadings. (DE [32].) A day after issuance of a discovery schedule, Plaintiff withdrew its request to move for judgment on the pleadings and Defendant filed an Amended Answer. (DE [34], [35].) The parties thereafter engaged in motion practice regarding discovery. (DE [37], [38].) During the same time period, Defendant again requested a pre-motion conference to discuss an anticipated motion for judgment on the pleadings. (DE [39].) Plaintiff opposed that request. (DE [41].) Meanwhile, the parties continued to engage in contested motion practice with respect to discovery and, in particular, the propriety of a subpoena. (DE [37], [38], [40], [42], [43], [44].)

This Court scheduled a hearing with respect to all pending discovery disputes to be held on December 5, 2024. (Order of Shields, M.J., dated Nov. 21, 2024.) At that appearance, Plaintiff's counsel advised the Court that their firm – V&F – would soon be merging with another law firm. Counsel advised that, as a result of that merger – which was scheduled to take place on January 1, 2025 – he and his firm would be conflicted from further representation of Plaintiff and would seek to withdraw. (Order of Shields, M.J., dated Dec. 5, 2024.) In light of this information, the Court declined to issue a ruling on the pending discovery motions. Plaintiff's counsel represented that he would consult with incoming counsel and submit a letter to the Court within one week advising how incoming counsel would seek to proceed. Attorney Vogrin thereafter, while still with V&F, advised the Court that incoming counsel would need extensions of time once he/she assumed representation. Neither the subsequent letter to this Court, nor that addressed to the District Court, revealed the name of the law firm that Vogrin would be joining. (DE [46], [47].)

On December 19, 2024, V&F, by Vogrin, formally sought leave to withdraw from further representation of Plaintiff. (DE [48].) As previewed at the November appearance, the motion to withdraw was supported by a stated conflict of interest that would arise out of V&F's anticipated absorption into a new firm. In connection with their motion, V&F disclosed that all of its attorneys and support staff were scheduled to become a part of a previously existing firm – which has now been identified as Beachcroft – on January 1, 2025. Counsel stated that the identity of its new law firm was not yet a matter of public record but asserted that continuing representation of Plaintiff by that firm would present a conflict of interest. (DE [48-1] at 2 n.1.) The identity of Plaintiff's incoming counsel was revealed in the motion to withdraw, and a proposed substitution of counsel, signed by Plaintiff, was submitted as part of the motion. (DE

3

[48-3].) Vogrin's request to be relieved as counsel indicated that he would be asserting a charging lien under Section 475 of the New York Judiciary Law against any ultimate recovery. (DE [48-1] at 3.) Thus, Vogrin would participate in any award recovered by incoming counsel. (Id.). After this Court granted V&F's motion to withdraw, the law firm of Nicholas Goodman & Associates, PLLC (the "Goodman Firm"), by H. Nicholas Goodman ("Goodman"), was substituted, as discussed in the motion to withdraw, as Plaintiff's counsel.

On January 8, 2025, counsel for Arch – lawyers from R&C – submitted a notice of change of firm, address and contact information on the docket herein. That notice indicated that Klein and other lawyers from R&C were now associated with Beachcroft. (DE [49].) So too, it now has become clear, were all of the attorneys and support staff from V&F, including Vogrin, who is now a partner at Beachcroft.

On February 18, 2025, this Court held oral argument on the pending discovery motions. (Order of Shields, M.J., dated Feb. 18, 2025.) It was at that hearing that attorney Goodman, Plaintiff's current counsel, raised the issue of moving to disqualify Beachcroft as defense counsel. The parties stated that they would confer as to this issue, as well as other matters. Accordingly, this Court entered an Order requiring counsel to submit a joint status letter on or before March 18, 2025, containing, inter alia, a statement as to whether the parties resolved their issues regarding any conflict of counsel, or whether any party would be making a motion to disqualify counsel, and a statement by Defendant as to whether Arch still intended to interpose a Rule 12(c) motion. Counsel were also reminded that they had a letter due to the District Court on or before February 20, 2025. (Order of Shields, M.J., dated Feb. 18, 2025.) In a letter dated February 20, 2025, attorney Mandel – once with R&C, now with Beachcroft – indicated that Arch would not be moving for judgment on the pleadings. (DE [53].)

4

II.     Plaintiff's Motion and the Parties' Positions

Following the February 18, 2025 conference, it became clear to Goodman – Plaintiff's current counsel – that at the same time that V&F was moving its practice to Beachcroft, so too were lawyers from R&C – the lawyers who have always represented Defendant Arch herein. Thus, the lawyers from V&F – and, it appears, the entire firm – and the R&C lawyers representing Arch both joined Beachcroft on January 1, 2025. As it now stands, V&F and R&C – the attorneys representing both sides of this litigation from its inception in 2022 until December 2024 – comprise the New York office of Beachcroft. Plaintiff alleges, and Defendant does not contest, that this branch of Beachcroft consists of only fifteen attorneys. (DE [62-1] at 10.) Upon learning these facts, Goodman contacted Arch's attorneys at Beachcroft, asking that the firm withdraw from further representation of Arch herein. (DE [62-1] ¶¶ 11-12.) Beachcroft refused to withdraw and this motion followed.

In support of its motion, Plaintiff states what is clear – lawyers who previously represented two sides of a pending lawsuit have now become partners in a new law firm. Plaintiff states that this presents a clear conflict of interest for continued representation by either set of lawyers. Plaintiff notes that while his lawyers – V&F – had the ethical foresight to seek withdrawal, the former R&C lawyers have not, and continue to represent Arch herein, at their new firm where they are partners with their previous adversaries. Plaintiff cites and relies on what he states are clear violations of several ethics rules governing the conduct of attorneys that prohibit Beachcroft attorneys from continuing to represent Arch in this matter.

Arch acknowledges that the lawyers from V&F and R&C who were former adversaries in this lawsuit have now joined Beachcroft. Beachcroft nonetheless resists the motion to disqualify and seeks to continue to have the former R&C lawyers represent Arch here – in connection with

5

the same lawsuit where its now-partners previously represented its adversary. Arch argues that the ethics rules relied upon by Plaintiff are not binding on this Court in connection with the present motion. Instead, it relies on Second Circuit law focusing on the question of whether an attorney's continued representation of a client will taint the eventual trial. Arch argues that it has taken steps that are sufficient to wall off the former V&F lawyers and support staff from those who joined Beachcroft from R&C. It states that the former adversaries have not shared confidences regarding the Plaintiff, and that they will not do so. It also argues that the issues raised in this declaratory judgment action are legal, so any confidences shared with the former V&F lawyers are irrelevant.

With the parties' positions in mind, the Court turns to discuss the legal principles that apply and the merits of the motion.

III.  Disposition of the Motion

   A.  Legal Standard

An attorney may not reveal a confidence of his client or use any such confidence to the disadvantage of the client. See Evans v. Artek Sys. Corp., 715 F.2d 788, 791 (2d Cir. 1983) (citation omitted). Thus, a lawyer may not represent a client in a dispute and then change sides in that same dispute by joining forces with his client's adversary's law firm. See id.; see also In re Mercury, 280 B.R. 35, 60 (Bankr. S.D.N.Y. 2002) (noting that a lawyer may not "switch sides by abandoning a client during controversy and representing his adversary against the client in the very same controversy"). This is precisely the set of circumstances here, where Plaintiff's former lawyers have joined the same law firm as the attorneys who have been representing Arch in this matter. Yet, Arch's lawyers – who are now in law partnerships and

6

otherwise associated with Plaintiff's former counsel – insist that they may ethically continue to represent Plaintiff's adversary. As discussed below, the Court disagrees.

Decisions regarding motions to disqualify are within the sound discretion of the trial court. See Purgess v. Sharrock, 33 F.3d 134, 144 (2d Cir. 1994). When deciding such motions, courts must be "solicitous of a client's right freely to choose his counsel – a right which of course must be balanced against the need to maintain the highest standards of the profession." Evans, 715 F.2d at 791 (quoting Government of India v. Cook Indus., Inc., 569 F.2d 737, 739 (2d Cir. 1978)); see also Hempstead Video, Inc. v. Inc. Vill. of Valley Stream, 409 F.3d 127, 132 (2d Cir. 2005). Despite depriving a client of their choice of counsel, disqualification is sometimes necessary to "preserve the integrity of the adversary process." Board of Educ. v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979). The Second Circuit has held that an attorney may be disqualified from representing a client if:

> (1) the moving party is a former client of the adverse party's counsel;
>
> (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and
>
> (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

Evans, 715 F.2d at 791.

The Second Circuit recognizes that motions to disqualify "are often interposed for tactical reasons," and that "even when made in the best of faith, such motions inevitably cause delay." Nyquist, 590 F.2d at 1246); see also Streichart v. Town of Chester, No.19-CV-7133, 2021 WL 735475, at *5 (S.D.N.Y. Feb. 25, 2021); Gabayzadeh v. Taylor, 639 F. Supp. 2d 298, 300 (E.D.N.Y. 2009). Therefore, motions to disqualify are disfavored and a high standard of proof is required to sustain a motion to disqualify. See L.D. v. Seymour, 577 F. Supp. 3d 85, 88

7

(N.D.N.Y. 2022). Additionally, it is the party seeking disqualification who bears a heavy burden and who is responsible for establishment of "specific facts warranting the disqualification." White v. County of Suffolk, No. 20-CV-1501, 2023 WL 8788914, at *5 (E.D.N.Y. Dec. 19, 2023) (citing Evans, 715 F.2d at 794). Ultimately, motions to disqualify are properly granted only where there is a clear violation of the Code of Professional Responsibility leading to a "significant risk of trial taint." Colandrea v. Town of Orangetown, 490 F. Supp. 2d 342, 352 (S.D.N.Y. 2007) (quoting Glueck v. Johnathan Logan Inc., 653 F.2d 746, 748 (2d Cir. 1981)).

B. The Motion is Granted

Application of the standards above leads to the conclusion that Beachcroft must be disqualified. The first two Evans factors are obviously met. The moving party here – Plaintiff – is a former client of V&F, which is now merged into Beachcroft. These lawyers are now partners, counsel and associates at the same firm as lawyers who have long represented Arch. As to the second factor, there is undoubtedly "a substantial relationship" between the subject matter of V&F's prior representation of Plaintiff and the issues here. Indeed, it is the same lawsuit. Where, as here, such a relationship exists, a rebuttable presumption is created that the attorney sought to be disqualified "had, or likely had, access to relevant privileged information." Cablevision Lightpath, Inc. v. Verizon New York Inc., No. 11-CV-2457, 2011 WL 3845504, at *2 (E.D.N.Y. Aug. 30, 2011) (quoting Cook Indus., 569 F.2d at 741).

The final Evans factor – whether Beachcroft attorneys, which now includes attorneys from V&F, had access to, or were likely to have had access to, relevant privileged information in the course of their representation of the client – also weighs unquestionably in favor of disqualification. Obviously, V&F lawyers came into possession of Plaintiff's confidential information during the course of their representation. Thus, no one questions that attorneys from

8

V&F could not ethically continue to represent Plaintiff after joining Beachcroft. Continued representation at a firm that includes their former rival lawyers would violate Rule 1.9 of both the American Bar Association ("ABA") Model Rules of Professional Conduct and the New York Rules of Professional Conduct, which set forth a lawyer's duties to a former client. See N.Y. R. Prof'l Conduct 1.9. Once V&F lawyers joined Beachcroft, they became law partners and/or associated with the R&C lawyers who represented Arch. V&F's conflict is, under applicable rules, imputed to all lawyers at Beachcroft, including, importantly, the R&C lawyers who have joined the firm and represent Arch in the lawsuit. This imputed disqualification applies to all lawyers at the Beachcroft firm. See N.Y R. Prof'l Conduct 1.7, 1.10; ABA Model Rule 1.10. Absent consent, these lawyers could not represent Plaintiff after becoming associated with lawyers representing Arch. Plaintiff's current lawyer points out this clear conflict and asserts further that Plaintiff has not consented to Beachcroft's representation. Thus, there is no exception that applies.

Further, as noted above, V&F has asserted a lien against any damages that Plaintiff may recover herein. As V&F partners who have joined Beachcroft are now partners with Arch's R&C counsel who have joined Beachcroft, it is entirely likely that Beachcroft, via its V&F partners will now share in the fees that V&F may recover in this lawsuit. This likely fee sharing violates ABA Model Rule 1.10(a)(2)(i) and also presents a further conflict of interest in allowing these former adversary lawyers to continue representation in this matter.

Arch cannot dispute these clear conflicts. Instead, it argues that their lawyers have not, in fact, gained any confidential information about Plaintiff or his case from anyone at V&F, and that there are safeguards in place to avoid gaining such information going forward. Arch has submitted detailed affidavits from attorneys Klein and Mandel (now Beachcroft partners), as

9

well as those of Eric Lankton ("Lankton") (now counsel at Beachcroft) and Shivang Gandhi ("Ghandi") (now an associate at Beachcroft). Arch also submits the affidavit of Patrick Firebrace ("Firebrace"), International development Director at Beachcroft.

Firebrace describes Beachcroft as a multinational law firm that employs over 3,000 people in twenty-four countries. Beachcroft began considering expanding its practice to the United States in 2023. That exploration culminated in Beachcroft's establishment of, inter alia, its New York office. That New York office, formally established in January 2025, is comprised only of the attorneys formerly associated with V&F and R&C. The New York office of Beachcroft is located at 55 Broadway, Suite 1602 ("55 Broadway"). It was first opened on January 22, 2025.

The affidavits of Klein, Mandel, Lankton and Gandhi describe their workplaces. Between January 1, 2025 and January 22, 2025, these lawyers – presumably, along with all new Beachcroft New York employees – worked either from their homes or from a shared co-workspace at 55 Broadway. Klein states that he also worked out of V&F's former office in a conference room. He states that while at the offices of V&F, he was in a conference room where no confidential files were located. It was not until January 22, 2025 that Beachcroft employees received an email from its Office of General Counsel stating that no employees were to discuss this case with any of the employees formerly associated with V&F (the "January 22nd Email"). (DE [63].) The affidavits of Mandel, Lankton and Gandhi attest to similar facts. (DE [63-1], [63-6], [63-7].) While no lawyer formerly with V&F has submitted an affidavit, it is clear that as new Beachcroft employees, they too worked either from home, from Beachcroft's co-working space, or its new offices at 55 Broadway.

10

Under the present set of facts, the Court holds that there are no safeguards that might be imposed to cure the conflict. To be sure, the mere appearance of impropriety is insufficient to require disqualification. Nonetheless, if there were ever a set of circumstances where disqualification was required, such facts are present here. Even if safeguards are in place going forward, it is not clear that any such safeguards were in place prior to the merger and/or prior to the January 22nd Email. This is a case where adversaries in a lawsuit have joined a small local office of a larger international firm. While Plaintiff's counsel recognized the obvious conflict and properly sought to withdraw, defense counsel did not. It is clear that they should have.

Finally, Arch's argument that any confidences shared by Plaintiff with lawyers from V&F are irrelevant is perhaps the least convincing of its arguments in support of retaining this litigation. According to Arch, resolution of this matter turns on the application of New York law to Arch's actions, making the sharing of any of Plaintiff's confidences with lawyers from V&F irrelevant. As properly asserted by Plaintiff's current counsel, Arch takes an unnecessarily restrictive approach to the definition of client confidences. Such confidences include matters that would only be known to V&F through their representation of Plaintiff. This broadly includes the impact of Plaintiff's medical and/or financial situation on his litigation strategy including, importantly, whether he is willing to entertain any offers of settlement. Such information is at the core of the attorney-client relationship and was undoubtedly acquired by V&F lawyers solely as a result of their representation of Plaintiff.

In sum, Beachcroft's continuing representation of Arch presents a clear conflict of interest that necessarily leads to trial taint. Such representation violates several codes of professional responsibility and the most basic rules of maintaining client confidences. Under these circumstances, Beachcroft may not represent Arch in this lawsuit.

CONCLUSION

For the foregoing reasons, Plaintiff's motion to disqualify Defendant Arch's counsel from further representation of Defendant in this matter is granted. Defendant is hereby afforded thirty (30) days in which to retain new counsel.

**SO ORDERED:**

Dated: Central Islip, New York
       August 20, 2025

                                               /s/ Anne Y. Shields
                                               Anne Y. Shields
                                               United States Magistrate Judge